**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SHOSHANA HEBSHI,

       Plaintiff,

v.                                                                   Hon.

UNITED STATES OF AMERICA;                     Case No.
FRONTIER AIRLINES, INC.; JOHN BRAND,
in his individual capacity; UNKNOWN FBI
AGENT 1, in his individual capacity;
UNKNOWN FBI AGENT 2, in his individual
capacity; JOHN ETLING, in his individual
capacity; MARK DEBEAU, in his individual
capacity; JEREMY BOHN, in his individual capacity;          COMPLAINT AND
CAPTAIN PATRICK DRISCOLL, in his individual               JURY DEMAND
capacity; OFFICER GRANT, in his individual
capacity; LT. M. WASIUKANIS, in his individual
capacity; TOYA PARKER, in her individual
capacity; DT. CARMONA, in his or her individual
capacity; OFFICER JOHNSON, in his or her
individual capacity;  CORPORAL BRADLEY, in
his or her individual capacity; UNKNOWN CBP
OFFICER, in his individual capacity; THOMAS
PIPIS, in his individual capacity; DAVID
LAKATOS, in his individual capacity;
NATHANIEL DEVINS, in his individual capacity;
UNKNOWN TSA AGENT 1, in his individual
capacity; UNKNOWN TSA AGENT 2, in her
individual capacity; ROBERT BALL, in his
individual capacity; UNKNOWN ICE OFFICER,
in his individual capacity; and PAUL BRUMLEY,
in his individual capacity,

       Defendants.

_____/

**<u>COMPLAINT</u>**

## INTRODUCTORY STATEMENT

1.      On September 11, 2011, Plaintiff Shoshana Hebshi flew on Frontier Airlines flight 623 from San Francisco, California, to Detroit, Michigan.  Upon landing, heavily armed agents forcibly removed Ms. Hebshi from the airplane; handcuffed, pat searched, and strip searched her; and locked her in a cell at Detroit Metropolitan Wayne County Airport before interrogating her.  Ms. Hebshi was detained for approximately four hours before being released with no charges.

2.      An American citizen born in California, Ms. Hebshi was arrested and detained because of her ethnicity and her seat assignment: she has an Arab last name and was seated next to two men of South Asian origin, who each allegedly used the lavatory for ten to twenty minutes during the flight.  Ms. Hebshi did not know these men, nor did she speak with them or leave her seat at any time before landing in Detroit.

3.      Although Frontier Airlines never suggested that Ms. Hebshi had engaged in any suspicious behavior, Frontier Airlines staff provided her name to federal and state authorities when reporting the allegedly suspicious conduct of the men seated next to her on the plane.

4.      Based solely on the information received from Frontier Airlines staff, agents of the Federal Bureau of Investigation ("FBI"), the Transportation Security Administration ("TSA"), Wayne County Airport Authority Police, Immigration and Customs Enforcement ("ICE"), and Customs and Border Patrol ("CBP"), working together, arrested and detained Ms. Hebshi for approximately four hours with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  The FBI has publically stated that Ms. Hebshi was not involved in any suspicious activity.

5.      During her several hours in detention, Ms. Hebshi was subjected to an invasive and humiliating strip search, which required her to strip naked, bend over, and cough.

6.      Ms. Hebshi, by her attorneys, now challenges the discriminatory conduct of Frontier Airlines, which identified her as a "suspicious" passenger based on her ethnicity, race or national origin, resulting in her arrest and detention, as a violation of 42 U.S.C. § 1981; Title VI of the Civil Rights Act of 1964; and 49 U.S.C. § 40127(a).

7.      Ms. Hebshi also brings this action to challenge the unlawful arrest, detention, and strip search she endured at the hands of agents of Wayne County Airport Authority Police, the FBI, the TSA, ICE, and CBP, who violated her right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution.  In arresting and detaining Ms. Hebshi because of her perceived ethnicity, race, or national origin, agents of Wayne County Airport Authority Police, the FBI, the TSA, ICE, and CBP further violated Ms. Hebshi's right to equal protection of the laws under the Fifth and Fourteenth Amendments to the United States Constitution.

8.      In addition, Ms. Hebshi brings claims under the Federal Tort Claims Act against the United States of America for false arrest and false imprisonment.

## JURISDICTION AND VENUE

9.      This civil rights action is brought pursuant to 42 U.S.C. § 1981; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; 49 U.S.C. § 40127(a); the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983 and *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680.  This Court has jurisdiction over Ms. Hebshi's claims as an action arising under federal law, 28 U.S.C. § 1331; as a suit to redress deprivations

3

of rights, privileges, and immunities secured by the United States Constitution and by federal law, 28 U.S.C. § 1343(3), (4); and as an action against the United States, 28 U.S.C. § 1346.

10.    On January 25, 2012, Ms. Hebshi submitted an administrative claim for damages to the TSA, the FBI, CBP and ICE.  In a letter dated July 23, 2012, the TSA replied for all named agencies and denied the administrative tort claim.  This Complaint is filed within six months of that denial and is therefore timely under 28 U.S.C. § 2401(b).

11.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district.  The events complained of herein happened as Ms. Hebshi was flying to, arrested at, and detained at the Detroit Metropolitan Wayne County Airport, in Romulus, Michigan, within the Eastern District of Michigan.

## PARTIES

*Plaintiff*

12.    Plaintiff Shoshana Hebshi is a U.S. citizen and a freelance journalist.  Ms. Hebshi's first name is of Hebrew origin, as her mother is Jewish.  Ms. Hebshi has the same last name as her father, now deceased, who immigrated to the U.S. from Saudi Arabia.  Ms. Hebshi lives in Sylvania, Ohio, with her husband and two young sons.  She was traveling home after visiting her sister in California when she was arrested, detained, and strip searched at the Detroit Metropolitan Wayne County Airport.

*Defendant United States of America*

13.    Defendant United States of America ("United States") is the proper defendant for Ms. Hebshi's claims brought under the FTCA.

*Defendant Frontier Airlines, Inc.*

14.     Defendant Frontier Airlines, Inc. is incorporated and headquartered in Colorado and operates throughout the United States, including in the State of Michigan.  Employees of Frontier Airlines, acting within the scope of their employment, identified Ms. Hebshi as a suspect to state and federal law enforcement agencies based on her perceived ethnicity, race, or national origin, resulting in her arrest and detention.  Upon information and belief, Frontier Airlines receives federal funding including, and not limited to, subsidies under the Essential Air Service program.

*FBI Defendants*

15.     Defendant John Brand was, at all times relevant to this action, a Special Agent with the FBI.  Defendant Brand participated in the decisions to arrest, detain, strip search, and interrogate Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

16.     Defendant Unknown FBI Officer 1 was, at all times relevant in this action, an agent of the FBI.  At this time, his identity is not known to Ms. Hebshi.  Upon information and belief, Defendant Unknown FBI Officer 1 ordered FBI agents in Detroit to arrest, detain, and interrogate Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

17.     Defendant Unknown FBI Officer 2 was, at all times relevant in this action, an agent of the FBI.  At this time, his identity is not known to Ms. Hebshi.  Defendant Unknown FBI Officer 2 participated in both the decision to arrest and detain Ms. Hebshi, as well as the actual arrest and detention, with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

5

18.     Defendant John Etling was, at all times relevant in this action, an agent with the Joint Terrorism Task Force, a multi-agency law enforcement unit under the direction of the FBI. At this time, his identity is not known to Ms. Hebshi.  Defendant Etling participated in both the decision to arrest and detain Ms. Hebshi and her actual arrest and detention, all without articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

***Wayne County Airport Authority Defendants***

19.     Defendant Mark DeBeau was, at all times relevant to this action, Vice President of Public Safety at Wayne County Airport Authority.  Defendant DeBeau participated in the decision to arrest Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

20.     Defendant Jeremy Bohn was, at all times relevant to this action, employed by the Wayne County Airport Authority Police.  Defendant Bohn was the Officer-in-Charge for the Wayne County Airport Authority Police during and the events described in this complaint.  He participated in Ms. Hebshi's arrest and transportation to the detention site with no articulable facts connecting her to criminal activity or providing probable cause.  He is sued in his individual capacity.

21.     Defendant Captain Patrick Driscoll was, at all times relevant to this action, a member of the Special Response Unit for the Wayne County Airport Authority Police. Defendant Driscoll participated in the decision to arrest, handcuff, and detain Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

22.      Defendant Lieutenant M. Wasiukanis was, at all times relevant to this action, an officer of the Wayne County Airport Authority Police.  Defendant Wasiukanis participated in the arrest, detention, and decision to strip search Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

23.      Defendant Toya Parker, at all times relevant to this action, was an officer with the Wayne County Airport Authority Police.  Officer Parker performed the strip search on Ms. Hebshi during her detention with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  She is sued in her individual capacity.

24.      Defendant Officer Grant was, at all times relevant to this action, a member of the Special Response Unit for the Wayne County Airport Authority Police.  Defendant Grant was part of the team that planned and executed the arrest of Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

25.      Defendant Detective Carmona was, at all times relevant to this action, an officer with the Wayne County Airport Authority Police.  Detective Carmona arrested and handcuffed Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He or she is sued in his or her individual capacity.

26.      Defendant K9 Officer Johnson was, at all times relevant to this action, employed by the Wayne County Airport Authority Police.  Defendant Johnson participated in Ms. Hebshi's arrest with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He or she is sued in his or her individual capacity.

27.      Defendant Corporal Bradley was, at all times relevant to this action, employed by the Wayne County Airport Authority Police.  Defendant Bradley arrested and transported Ms.

7

Hebshi to a detention facility at Detroit Metropolitan Wayne County Airport with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause. He is sued in his individual capacity.

***CBP Defendants***

28.     Defendant Unknown CBP Officer was, at all times relevant to this action, an officer of CBP. At this time, his identity is not known to Ms. Hebshi. Upon information and belief, Defendant Unknown CBP Officer ordered CBP agents at the Detroit Metropolitan Wayne County Airport to arrest and detain Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause. He is sued in his individual capacity

29.     Defendant Thomas Pipis was, at all times relevant to this action, an officer with CBP. Upon information and belief, he participated in the decision to arrest and detain Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause. He is sued in his individual capacity.

30.     Defendant David Lakatos was, at all times relevant to this action, an officer with CBP. Upon information and belief, he participated in the decision to arrest and detain Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause. He is sued in his individual capacity.

31.     Defendant Nathaniel Devins was, at all times relevant to this action, an officer with CBP. Upon information and belief, he participated in the decision to arrest and detain Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause. He is sued in his individual capacity.

*TSA Defendants*

32.    Defendant Unknown TSA Officer 1 was, at all times relevant to this action, an employee of the TSA.  At this time, his identity is not known to Ms. Hebshi.  Upon information and belief, Defendant Unknown TSA Officer 1 ordered TSA agents at Detroit Metropolitan Wayne County Airport to arrest and detain Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

33.    Defendant Robert Ball was, at all times relevant to this action, the Federal Security Director in Detroit for the TSA.  Defendant Ball participated in the decision to arrest and detain Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

34.    Defendant Unknown TSA Officer 2 was, at all times relevant to this action, an employee of the TSA.  At this time, her identity is not known to Ms. Hebshi.  Upon information and belief, Defendant Unknown TSA Officer 2 participated in the detention and interrogation of Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  She is sued in her individual capacity.

*ICE Defendants*

35.    Defendant Unknown ICE Officer was, at all times, relevant to this action, an employee of ICE.  At this time, his identity is not known to Ms. Hebshi.  Defendant Unknown ICE Officer instructed ICE officers at Detroit Metropolitan Wayne County Airport to arrest and detain Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  He is sued in his individual capacity.

36.    Defendant Paul Brumley was, at all times relevant to this action, a Special Agent with ICE.  Defendant Brumley participated in Ms. Hebshi's arrest with no articulable facts

connecting Ms. Hebshi to criminal activity or providing probable cause. He is sued in his individual capacity.

## STATEMENT OF FACTS

### *Frontier Airlines' Identification of Ms. Hebshi As A Suspect*

37.    Shoshana Hebshi is a 36-year-old freelance journalist who lives in Sylvania, Ohio, near Toledo, Ohio, with her husband and sons.

38.    Ms. Hebshi was born and raised in California. She studied journalism at California Polytechnic State University-San Luis Obispo and later as a graduate student at Iowa State University. She wrote for several newspapers and then worked for the faculty union at California State University. Since moving to Ohio in June 2011 for her husband's medical residency, she has been working at home as a freelance journalist so she can help care for their young sons.

39.    In September 2011, Ms. Hebshi spent Labor Day weekend with her sister in San Francisco, California. On September 11, 2011, Ms. Hebshi flew home unaccompanied to her family in Sylvania, Ohio. Ms. Hebshi's destination airport was Detroit Metropolitan Wayne County Airport, which is approximately 60 miles from Sylvania. Her car was parked in a lot at the airport in Detroit.

40.    Ms. Hebshi cleared airport security at San Francisco International Airport, where she boarded a Frontier Airlines flight to Denver, Colorado.

41.    At Denver International Airport, without ever leaving the airport or security zone, Ms. Hebshi boarded a connecting flight, Frontier Airlines flight 623 to Detroit, Michigan.

42.    On the flight from Denver to Detroit, Ms. Hebshi sat in seat 12A, a window seat in a row with three seats. At no point during the flight did she leave her seat.

43.     The aisle and middle seats, 12B and 12C, were occupied by two men of South Asian descent.

44.     Ms. Hebshi did not know the two men seated beside her, nor did she speak to them before the plane landed in Detroit.

45.     During the flight, some flight attendants and passengers noticed that the two men seated in Ms. Hebshi's row were acting in a way that they considered to be suspicious. Specifically, these flight attendants and passengers alleged that the men went to the restroom around the same time and each spent ten, fifteen or twenty minutes there.  Some passengers and flight attendants also reported that the men were standing in the aisle for long periods.

46.     None of the passengers or flight attendants either observed or reported anything suspicious about Ms. Hebshi or her conduct during or after the flight.

47.     Shortly before 3:00 p.m., flight attendants alerted the pilot, Captain Laurence Pucci, that two men of "possibly Arab descent" had been observed repeatedly going to the bathroom and standing in the aisle for long periods of time.

48.     Captain Pucci sent a message to Frontier Airlines dispatch through the Aircraft Communications Addressing and Reporting System ("ACARS"), asking for information about the passengers seated in 12B and 12C, whom he and the flight attendants believed were acting strangely and who were repeatedly using the restroom.

49.     Upon receiving Captain Pucci's message, Mark Fraley, Frontier Airlines Sector Operations Control Shift Manager, forwarded it to several individuals including Frontier staff. He provided the names of the passengers in 12B and 12C, added the name of the passenger in seat 12A (Ms. Hebshi), and commented that she might also be with the two men.

11

50.     Mr. Fraley's email suggesting that Ms. Hebshi might be with the two men was not based on any actual facts or credible information.  Upon information and belief, Ms. Hebshi's name and seat assignment were the only facts available to Mr. Fraley.  Based on this information, Mr. Fraley assumed Ms. Hebshi knew the two men and might be involved in suspicious activity.

51.     Frontier Airlines Manager Tammara Faforke passed along Mr. Fraley's email to a TSA air marshal and to Officer Duncan, a Wayne County Airport Authority Police Officer, who in turn passed it along to Defendant Grant, a Wayne County Airport Authority Police Officer.

52.     Defendant Grant relayed to Defendants Driscoll and Carmona, also officers with Wayne County Airport Authority Police, the information contained in Mr. Fraley's email, including that Ms. Hebshi may have been traveling with the two men.

53.     The TSA also contacted Wayne County Airport Authority and reported suspicious passenger behavior on Frontier Airlines flight 623.

54.     At approximately 3:00 p.m., Defendant Jeremy Bohn, the Officer-in-Charge for Wayne County Airport Authority Police during these events, went to wait for the airplane at the designated inspection site, along with Defendants Thomas Pipis, David Lakatos and Nathaniel Devins, all agents with CBP; Defendant Robert Ball of the TSA; Defendant John Etling of the Joint Terrorism Task Force (a multi-agency law enforcement unit under the direction of the FBI); an air marshal; and other Wayne County Airport Authority Police Officers and employees of the TSA, the FBI.

55.     At the inspection site, Defendant Officer Johnson of the Wayne County Airport Authority Police spoke via cell phone with Frontier Airlines Captain Pucci, who told Defendant Johnson that a male passenger from row 12 had entered the airplane restroom for a long period

of time, while the other man from row 12 stood outside.  According to Defendant Johnson: "The Captain stated that a third passenger seated in 12A may also be involved in the incident but is seated and compliant at this time."

56.    Upon information and belief, none of the state or federal officers who received information about these passengers requested further information or evidence regarding Ms. Hebshi's alleged involvement in suspicious activities.  Accordingly, they acted based on the perceived ethnicity, national origin, or race of Ms. Hebshi's name, as they had no articulable facts connecting Ms. Hebshi to suspicion of criminal activity.

***The Unlawful Arrest, Detention and Strip Search of Ms. Hebshi***

57.    Agents and employees of the FBI, the TSA, CBP, and Wayne County Airport Authority Police collaborated and put into place a plan to divert and board the aircraft, arrest Ms. Hebshi and the two men sitting next to her, and remove them to a detention facility at the airport for questioning.

58.    Defendant Grant organized the tactical entry of the flight with the assistance and participation of Defendant Johnson and CBP officers.

59.    Defendant Driscoll determined that a tactical entry was needed and recommended to Defendant Mark DeBeau, Vice President of Public Safety for the Wayne County Airport Authority, that all three passengers in row 12 be removed from the plane and taken to Building 358, a detention facility at the airport, for further investigation.

60.    Defendant DeBeau, also present at the inspection site, authorized this plan of action.

61.    Defendant Driscoll then told the agents on site that the suspects, including Ms. Hebshi, were to be handcuffed upon contact.

13

62.    Based on the information these state and federal officers had at the time, there were no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause to arrest or detain her.

63.    When the plane landed, Captain Pucci announced on the loudspeaker that the plane would be diverted to another area of the airport. He warned the passengers that there would be consequences if they left their seats.

64.    Ms. Hebshi noticed that there were numerous law enforcement vehicles around the plane and wondered if there was a fugitive on the airplane.

65.    She called her husband to let him know the flight would be delayed but that she did not know why or for how long.

66.    The aircraft taxied to the inspection site and a van with stairs approached the aircraft.

67.    Ms. Hebshi was relieved because she thought this meant that she and the other passengers would be allowed to leave.

68.    Instead, at approximately 4:25 p.m., Defendants Carmona, Bohn, Johnson and Defendant ICE Special Agent Brumley, along with other officers, boarded the plane, heavily armed, and ran down the aisle where Ms. Hebshi and the other two men in her row were seated.

69.    Several officers shouted at the passengers to keep their heads down and put their hands on the seat in front of them.

70.    Ms. Hebshi was stunned when the officers stopped at her row and yelled at her and the two men seated beside her to get up.

71.    Ms. Hebshi asked what was happening but received no reply. She asked if she could take her cell phone and was told no.

72.    Defendant Carmona put Ms. Hebshi in handcuffs and put flex-cuffs on the passenger in 12B.

73.    Ms. Hebshi and the two men in her row were then forcefully rushed down the aisle and stairs and out of the plane.

74.    Ms. Hebshi was shocked, frightened, and humiliated as she was taken off the plane, in front of the other passengers.

75.    Once outside the airplane, Ms. Hebshi was pushed roughly against a police car and made to spread her legs while she was pat searched.

76.    The officer asked Ms. Hebshi if she was wearing any explosives, to which she said no.

77.    Ms. Hebshi asked what was happening but no one would reply.

78.    Defendant Bradley of the Wayne County Airport Authority Police then put Ms. Hebshi in the back of a police car with one of the men from her row and drove them to Building 358.

79.    This was Ms. Hebshi's first experience in the back of a police car and she felt deeply embarrassed and scared.

80.    Upon arriving at Building 358, Ms. Hebshi, still handcuffed, was taken out of the car and to a cell.

81.    The cell was approximately six by ten feet and had a metal cot.  A video camera hung above the toilet.

82.    A male officer came to the door and asked if she spoke English.  Ms. Hebshi said yes, she speaks English and is a U.S. citizen.

83.     The officer told her he would stand by the door to make sure she did not "flush anything" down the toilet.

84.     Ms. Hebshi badly needed to use the toilet, but given that she was handcuffed, a male guard was standing at her door, and a video camera hung above the toilet, she did not.

85.     At approximately 4:40 p.m., Defendant Wasiukanis of Wayne County Airport Authority Police conferred with Defendant FBI Special Agent John Brand, and they decided that the three passengers, including Ms. Hebshi, should be strip searched.

86.     According to the standard operating procedures in effect for the Wayne County Airport Authority, "A person shall not be strip searched unless the person is being lodged into a detention facility, by order of a court or there is reasonable cause to believe that the person is concealing a weapon, controlled substance, or evidence of a crime."

87.     There were no facts suggesting that Ms. Hebshi was concealing a weapon, a controlled substance, or any other evidence of a crime that might justify a strip search.  The decision to strip search Ms. Hebshi was made with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.

88.     One hour passed before a female officer came to perform the strip search.  During the hour, no evidence emerged to suggest that Ms. Hebshi was involved in criminal activity, carrying contraband, or otherwise had done anything that would provide reasonable suspicion or probable cause justifying a strip search.

89.     Once on the scene, Defendant Toya Parker of the Wayne County Airport Authority Police came into Ms. Hebshi's cell and told her she was going to be strip searched.

90.     Ms. Hebshi was afraid and began to cry.

91.     Defendant Parker took off Ms. Hebshi's handcuffs and told her to remove all clothing, including her underwear and bra, so that she was completely naked.  Defendant Parker instructed Ms. Hebshi to stand facing the wall, away from the video camera, so that at least part of her body would be concealed.

92.     Ms. Hebshi was instructed to bend over, spread her buttocks, and cough while Officer Parker stood a couple of feet away and watched.

93.     Defendant Parker then instructed Ms. Hebshi to take her hair down from its ponytail so Defendant Parker could feel through Ms. Hebshi's hair.

94.     Defendant Parker lifted Ms. Hebshi's eyelids and looked in her mouth.

95.     Finally, Defendant Parker told Ms. Hebshi to put her clothes back on.

96.     Ms. Hebshi was shocked and humiliated as a result of this search.

97.     Before leaving the cell, Officer Parker put the handcuffs back on Ms. Hebshi's wrists.

98.     Ms. Hebshi asked the male officer at the door to her cell if she could call her husband, who did not know where she was.  The officer told her she could use the phone later.

99.     After approximately two more hours, an officer came to get Ms. Hebshi and brought her to an interview room where an FBI agent and, upon information and belief, a TSA agent awaited her.

100.     Defendant Unknown FBI Officer 2 and Defendant Unknown TSA Officer 2 then proceeded to question Ms. Hebshi about her family, her previous travel, and the two men sitting next to her on the flight.

101.     Unknown FBI Officer 2 told Ms. Hebshi that someone had reported her and the two men in her row as being engaged in suspicious activity during the flight.

17

102.    The interview lasted approximately half an hour.

103.    At the close of the interview, Ms. Hebshi, who had been detained for over three hours, asked if she could use a toilet.  The agents allowed her to use the officers' restroom.

104.    Before Ms. Hebshi was returned to her cell, her handcuffs were removed, and she was fingerprinted and asked her date and place of birth, weight, and height.

105.    Defendant Unknown TSA Officer 2 then came into Ms. Hebshi's cell with Ms. Hebshi's phone and required that Ms. Hebshi show the Twitter messages she had sent out from the airplane upon landing, as well as her Facebook profile.

106.    At approximately 7:30 p.m., Defendant Brand authorized the release of all three suspects.

107.    Ms. Hebshi was finally allowed to call her husband and let him know that she was okay and could leave soon.  As soon as she started to speak to her husband, Ms. Hebshi cried.

108.    When Ms. Hebshi was finally allowed to leave the detention facility at approximately 8:00 p.m., she saw the two other detained passengers, who had also been released, as they reclaimed their bags.

109.    As a result of being arrested, detained, and strip searched, Ms. Hebshi continues to experience anxiety when traveling.  She also continues to feel distress and humiliation based on this experience of being singled-out because of her ethnicity, race or national origin.

18

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF 42 U.S.C. § 1981
### Discrimination Based on Race or Ethnicity
### (Defendant Frontier Airlines, Inc.)

110.    Ms. Hebshi re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

111.    Intentional race discrimination in the formation and enforcement of contracts is prohibited under 42 U.S.C. § 1981.

112.    Mark Fraley, Sector Operations Control Shift Manager for Frontier Airlines, was an employee of Defendant Frontier Airlines acting within the scope of his employment at all times relevant to this complaint.

113.    Mr. Fraley identified Ms. Hebshi as a suspect because of her perceived ethnicity or race.

114.    Defendant Frontier Airlines is liable for the unlawful acts of its agents and employees directly and/or under the doctrine of *respondeat superior*.

115.    In reporting Ms. Hebshi to state and federal law enforcement agencies as a security threat, Defendant Frontier Airlines engaged in intentional discrimination on the basis of Ms. Hebshi's perceived race, color, alienage, or ethnicity.  In so doing, Defendant Frontier Airlines discriminated against Ms. Hebshi in the making and enforcement of her contract with Defendant Frontier Airlines, namely the ticket she purchased to travel on Frontier Airlines Flight 623 on September 11, 2011.

116.    Defendant acted with reckless or callous indifference to Ms. Hebshi's right to be free from discrimination in the making and enforcement of her contract with Frontier Airlines, entitling her to punitive damages.

19

117.    Defendant Frontier Airline's actions deprived Ms. Hebshi of the right to make and enforce contracts regardless of her race or ethnicity, in violation of 42 U.S.C. § 1981.

118.    Ms. Hebshi suffered intentional discrimination from Frontier Airlines, which singled her out as a suspect because of her name.  Ms. Hebshi is a member of a protected class under § 1981 who, while receiving Frontier Airlines services as a passenger, was deprived of her right to receive and enjoy those services and treated in a hostile and objectively discriminatory manner.

**COUNT II**
**VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964**
**Discrimination Based on Race, Ethnicity or National Origin**
**(Defendant Frontier Airlines, Inc.)**

119.    Ms. Hebshi re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

120.    Title VI and its implementing regulations prohibit recipients of federal financial assistance from discriminating on the basis of, *inter alia,* race, color, or national origin.

121.    Mark Fraley, Sector Operations Control Shift Manager for Frontier Airlines, was an employee of Defendant Frontier Airlines, acting within the scope of his employment at all times relevant to this complaint.

122.    Mr. Fraley referred Ms. Hebshi to state and federal law enforcement to be arrested, detained, and investigated because her perceived ethnicity, race or national origin based on her name.

123.    Defendant Frontier Airlines is liable for the unlawful acts of its agents and employees directly and/or under the doctrine of *respondeat superior*.

124.    Defendant Frontier Airlines is the recipient of federal funding and is therefore subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

125.    In reporting Ms. Hebshi to state and federal law enforcement agencies as a security threat based on her ethnicity, race or national origin, Defendant Frontier Airlines discriminated against Ms. Hebshi in violation of Title VI and its implementing regulations.

## COUNT III
## VIOLATION OF 49 U.S.C. § 40127(A)
### Discrimination Based on Race, Ethnicity or National Origin in Air Travel
### (Defendant Frontier Airlines, Inc.)

126.    Ms. Hebshi re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

127.    Title 49 U.S.C. § 40127(a) prohibits an airline from subjecting a passenger to "discrimination on the basis of race, color, national origin, religion, sex, or ancestry."

128.    Mark Fraley, Sector Operations Control Shift Manager for Frontier Airlines, was an employee of Defendant Frontier Airlines acting within the scope of his employment at all times relevant to this complaint.

129.    Mr. Fraley identified Ms. Hebshi as a suspect, and so caused her to be referred to state and federal law enforcement to be arrested, detained, and investigated because of her perceived ethnicity, race, or national origin based on her name.

130.    Defendant Frontier Airlines is liable for the unlawful acts of its agents and employees directly and/or under the doctrine of *respondeat superior*.

131.    In reporting Ms. Hebshi to state and federal law enforcement agencies as a security threat based on her ethnicity, race, or national origin, Defendant Frontier Airlines discriminated against Ms. Hebshi in violation of 49 U.S.C. § 40127(a).

**COUNT IV**
**VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS—**
**EQUAL PROTECTION**
**Claim Under 42 U.S.C. § 1983 and**
*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*
**(All Defendants Except United States of America, Toya Parker, and Frontier Airlines, Inc.)**

132.    Ms. Hebshi re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

133.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which is applicable to the federal government under the Fifth Amendment, guarantees all persons equal protection of the laws.

134.    Defendants, who are employees of the Wayne County Airport Authority, the FBI, the TSA, CBP, and ICE, arrested and detained Ms. Hebshi because of her perceived ethnicity, race, or national origin based on her name and/or appearance.  Defendants acted intentionally and unlawfully in discriminating against Ms. Hebshi on account of her perceived ethnicity, race, or national origin.

135.    Defendants acted under color of law and in the performance of their official duties under federal, state, county, or municipal laws, ordinances, or regulations in arresting and detaining Ms. Hebshi.

136.    Defendants' conduct violated Ms. Hebshi's clearly established constitutional right to equal protection of the laws of the United States.

137.    Defendants acted with reckless indifference or callous disregard for Ms. Hebshi's right to equal protection of the laws, thus entitling her to punitive damages.

138.    These violations, as committed by employees of Wayne County Airport Authority, are redressable under 42 U.S.C. § 1983.  These violations, as committed by

employees of the FBI, the TSA, CBP, and ICE, are redressable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

**COUNT V**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS—**
**UNREASONABLE SEIZURE**
**Claim Under 42 U.S.C. § 1983 and**
***Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics***
**(All Defendants Except United States of America, Toya Parker, and Frontier Airlines, Inc.)**

139.    Ms. Hebshi re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

140.    The Fourth Amendment to the United States Constitution, which is applicable to the States under the Fourteenth Amendment, prohibits unreasonable searches and seizures.

141.    Defendants, who are employees of the Wayne County Airport Authority, the FBI, the TSA, CBP, and ICE collaborated to order and effectuate Ms. Hebshi's arrest and detention. Defendants acted intentionally and unlawfully in arresting and detaining Ms. Hebshi with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.

142.    Defendants acted under color of law and in the performance of their official duties under federal, state, county, or municipal laws, ordinances, or regulations in arresting and detaining Ms. Hebshi.

143.    Defendants' conduct violated Ms. Hebshi's clearly established constitutional right to be free from unreasonable seizures.

144.    Defendants acted with reckless indifference or callous disregard for Ms. Hebshi's right to be free from unreasonable seizures, thus entitling her to punitive damages.

145.    These violations, as committed by employees of Wayne County Airport Authority, are redressable under 42 U.S.C. § 1983.  These violations, as committed by

employees of the FBI, the TSA, CBP, and ICE, are redressable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

**COUNT VI**
**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS—**
**UNREASONABLE SEARCH**
**Claim Under 42 U.S.C. § 1983 and**
***Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics***
**(Defendants Parker, Wasiukanis and Brand)**

146.    Ms. Hebshi re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

147.    The Fourth Amendment to the United States Constitution, which is applicable to the States under the Fourteenth Amendment, prohibits unreasonable searches and seizures.

148.    With no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause, Defendants Wasiukanis and Brand intentionally and unlawfully ordered, and Defendant Parker intentionally and unlawfully performed, a strip search of Ms. Hebshi in violation of her right to be free from unreasonable searches.

149.    Defendants acted under color of law and in the performance of their official duties under federal, state, county, or municipal laws, ordinances, or regulations in subjecting Ms. Hebshi to a strip search.

150.    Defendants' conduct violated Ms. Hebshi's clearly established constitutional right to be free from unreasonable searches and seizures.

151.    Defendants acted with reckless indifference or callous disregard for Ms. Hebshi's right to be free from unreasonable searches, thereby entitling her to punitive damages.

152.    These violations, as committed by Defendants Parker and Wasiukanis of the Wayne County Airport Authority, are redressable under 42 U.S.C. § 1983.  These violations, as

committed by Defendant Brand of the FBI, are redressable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

## COUNT VII
## CLAIMS UNDER THE FEDERAL TORT CLAIMS ACT
### False Arrest and False Imprisonment
### (United States of America)

153.    Ms. Hebshi re-alleges and incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.  At all times relevant to the complaint, Defendants Brand, Brumley, Pipis, Lakatos, and Devins and unknown agents of the FBI, TSA, CBP, and ICE, were employees of the United States, acting in the scope of their employment through their own actions and their directions to employees and agents, under circumstances that would render the United States, if a private person, liable for the damages that their actions caused Ms. Hebshi under Michigan law.

154.    Defendants Brand, Brumley, Pipis, Lakatos, and Devins and unknown agents of the FBI, the TSA, CBP, and ICE, individually and as agents of the United States of America, intentionally and unlawfully deprived Ms. Hebshi of her liberty by arresting and detaining her for several hours with no articulable facts connecting Ms. Hebshi to criminal activity or providing probable cause.  These actions constitute the torts of false arrest and false imprisonment under Michigan law because defendants acted with the intention of confining Ms. Hebshi; the agents' actions directly resulted in such confinement; and Ms. Hebshi was conscious of her confinement.

155.    Under the Federal Tort Claims Act, the United States of America is liable for these actions pursuant to 28 U.S.C. §§ 1346(b) and 2674.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Shoshana Hebshi respectfully requests that this Court:

1.   Declare that Defendant Frontier Airlines violated Ms. Hebshi's rights to be free from discrimination as a passenger under 42 U.S.C. § 1981, Title VI of the Civil Rights Act of 1964, and 49 U.S.C. § 40127(a);

2.   Declare that Ms. Hebshi's constitutional rights to equal protection of the law under the Fifth and Fourteenth Amendment have been violated;

3.   Declare that Ms. Hebshi's constitutional rights to be free of unreasonable searches and seizures under the Fourth and Fourteenth Amendment have been violated;

4.   Award Ms. Hebshi compensatory damages for the injury and distress she endured and continues to endure as a result of Defendants' unlawful conduct;

5.   Award Ms. Hebshi punitive damages against the individual Defendants and Frontier Airlines for their unlawful conduct;

6.   Award Ms. Hebshi reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

7.   Grant any other relief the Court deems appropriate.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues triable to a jury.

Respectfully submitted,

/s/ Sarah Mehta
Sarah Mehta (P76024)
Michael J. Steinberg (P43085)
Kary L. Moss (P49759)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6823
smehta@aclumich.org
msteinberg@aclumich.org
kmoss@aclumich.org


/s/ Dennis D. Parker*
Dennis D. Parker
Rachel E. Goodman*
Ayirini Fonseca-Sabune*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
(212) 549-2651
dparker@aclu.org
rgoodman@aclu.org
afonseca-sabune@aclu.org

/s/ William H. Goodman
William H. Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
Goodman & Hurwitz, P.C.
Cooperating Attorneys, American Civil
    Liberties Union Fund of Michigan
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com
kjames@goodmanhurwitz.com


/s/ Anna Engh
Anna Engh
Shelli Calland*
Arjun Sethi*
Sarah Tremont (P73809)
Covington & Burling LLP
1201 Pennsylvania Ave., N.W.
Washington D.C. 20004
(202) 662-6000
aengh@cov.com
scalland@cov.com
asethi@cov.com
stremont@cov.com

*Attorneys for Plaintiff*

*\* Application for admission pending*


Dated: January 22, 2013

27