**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SHOSHANA HEBSHI,                     )
                                     )
        Plaintiff,                   )        Hon. Terrence G. Berg
                                     )        Magistrate Judge Laurie J. Michelson
 v.                                  )
                                     )        Case No. 4:13-cv-10253
UNITED STATES OF AMERICA, et al.,    )
                                     )
        Defendants.                  )
_____)

**DEFENDANTS JOHN BRAND, DAVID LAKATOS,
NATHANAEL DEVINS, ROBERT BALL AND PAUL BRUMLEY'S
PARTIAL[1] MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants John Brand, David

Lakatos, Nathanael Devins, Robert Ball and Paul Brumley, as sued in their individual capacities,

move to dismiss Count IV of Plaintiff Shoshana Hebshi's Complaint based on the doctrine of

qualified immunity because the Complaint fails to adequately allege the commission of acts by

any one of them that violated clearly established law.  The grounds for this motion are set forth

with more specificity in the attached supporting brief.

Pursuant to E.D. Mich. L.R. 7.1, the undersigned contacted counsel for Plaintiff by

telephone on May 16, 2013, and explained the nature and legal basis of the motion and requested

concurrence in this motion.  Plaintiff's counsel did not concur, thus necessitating the filing of

this motion.

WHEREFORE, Defendants John Brand, David Lakatos, Nathanael Devins, Robert Ball

and Paul Brumley respectfully request that this Court dismiss Count IV against them.

---

[1] John Brand, David Lakatos, Nathanael Devins, Robert Ball, and Paul Brumley do not seek dismissal of Count V (and Count VI for John Brand) and will file partial Answers in response to those counts of the Complaint.

Dated: May 20, 2013

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General
Civil Division

RUPA BHATTACHARYYA
Director, Torts Branch

C. SALVATORE D'ALESSIO
Assistant Director, Torts Branch

/s/Sarah E. Whitman
SARAH E. WHITMAN
MA Bar No. 657726
Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0089
Facsimile: (202) 616-4314
Email: Sarah.Whitman@usdoj.gov

BARBARA L. MCQUADE
United States Attorney

LYNN M. DODGE (P38136)
Assistant United States Attorney
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0205
Email: Lynn.Dodge@usdoj.gov

*Counsel for Defendants John Brand, David Lakatos, Nathanael Devins, Robert Ball, and Paul Brumley*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHOSHANA HEBSHI,            )
                              )
       Plaintiff,         )     Hon. Terrence G. Berg
                              )     Magistrate Judge Laurie J. Michelson
  v.                     )
                              )     Case No. 4:13-cv-10253
UNITED STATES OF AMERICA, et al.,  )
                              )
       Defendants.     )
_____)

**<u>BRIEF IN SUPPORT OF DEFENDANTS JOHN BRAND, DAVID LAKATOS,
NATHANAEL DEVINS, ROBERT BALL AND PAUL BRUMLEY'S
PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## <u>ISSUE PRESENTED</u>

Has Plaintiff pleaded sufficient factual matter to overcome Defendants John Brand, David Lakatos, Nathanael Devins, Robert Ball and Paul Brumley's entitlement to qualified immunity when she has failed to allege that any one of these defendants by his own actions violated clearly established law under the equal protection component of the Fifth Amendment?

Answer: No.

## <u>CONTROLLING AUTHORITIES</u>

1. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011)
2. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
3. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)
4. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)
5. *Marcilis v. Township of Redford*, 693 F.3d 589 (6th Cir. 2012)
6. *Rondigo v. Township of Richmond*, 641 F.3d 673 (6th Cir. 2011)

## <u>TABLE OF CONTENTS</u>

ISSUE PRESENTED ............................................................................................. i

CONTROLLING AUTHORITIES ........................................................................ ii

TABLE OF AUTHORITIES ............................................................................... iv

INTRODUCTION ................................................................................................ 1

PLAINTIFF'S COMPLAINT ............................................................................. 2

STANDARD OF REVIEW ................................................................................. 5

DISCUSSION ...................................................................................................... 6

      Qualified Immunity Bars Plaintiff's Individual Capacity Claims Against the
      Individual Federal Defendants. ........................................................................ 6

  A.   The Framework for the Qualified Immunity Defense. .................................. 6

  B.   Plaintiff Has Failed to Plead Facts Stating An Equal Protection Claim Against the
      Individual Federal Defendants. ................................................................... 8

      1.   Plaintiff Fails to Identify What Each Defendant Did to Violate the Equal
        Protection Clause. ............................................................................... 9

      2.   Plaintiff's Only Allegation of Discrimination is Conclusory ........................... 11

      3.   Plaintiff's Claim of Discriminatory Animus by These Defendants is Not
        Plausible. ......................................................................................... 13

  C.   To the Extent Plaintiff Has Alleged the Violation of a Constitutional Right by
      Each of These Defendants, the Right Was Not Clearly Established. ...................... 16

CONCLUSION .................................................................................................... 18

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ................................................................................................ 16

*Ashcroft v. al-Kidd*,
    131 S. Ct. 2074 (2011) ..................................................................................... 6, 7, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... passim

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................... 5, 14, 15

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) ................................................................................................ 1

*Brosseau v. Haugen*,
    543 U.S. 194 (2004) ........................................................................................ 16, 17

*Clemente v. Vaslo*,
    679 F.3d 482 (6th Cir. 2012) ............................................................................... 16

*Cruz-Salazar v. Pugh*,
    No. 12cv917, 2012 WL 3112406 (N.D. Ohio July 31, 2012) ................................. 8

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ............................................................................. 5, 8

*Cunningham v. Sisk*,
    136 F. App'x 771 (6th Cir. 2005) .......................................................................... 9

*Davis v. Passman*,
    442 U.S. 228 (1979) ............................................................................................... 8

*Harajli v. Huron Twp.*,
    365 F.3d 501 (6th Cir. 2004) ................................................................................. 9

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) ............................................................................................... 6

*Heyne v. Metro. Nashville Pub. Sch.*,
    655 F.3d 556 (6th Cir. 2011) ............................................................................... 10

*Hunter v. Bryant*,
    502 U.S. 224 (1991) ........................................................................................... 6, 7

*Malley v. Briggs*,
    475 U.S. 335 (1986) ............................................................................................... 6

*Marcilis v. Twp. of Redford*,
    693 F.3d 589 (6th Cir. 2012) ......................................................................... 6, 10

iv

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985).................................................................................. 6, 7

*Nali v. Ekman,*
    355 F. App'x 909 (6th Cir. 2009) ........................................................... 9, 11

*Olympic Arms v. Magaw*,
    91 F. Supp. 2d 1061 (E.D. Mich. 2000) ....................................................... 8

*Pearson v. Callahan*,
    555 U.S. 223 (2009)..................................................................................... 7

*Reilly v. Vadlamudi*,
    680 F.3d 617 (6th Cir. 2012) .......................................................... 7, 10, 15

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ................................................................ 11

*Rondigo v. Twp. of Richmond*,
    641 F.3d 673 (6th Cir. 2011) ............................................................. passim

*Saucier v. Katz*,
    533 U.S. 194 (2001)................................................................................... 15

*United States v. Avery*,
    137 F.3d 343 (6th Cir. 1997) .................................................................... 17

*United States v. Hughes*,
    632 F.3d 956 (6th Cir. 2011) ...................................................................... 8

*V.R. Entm't v. City of Ann Arbor*,
    No. 12cv10203, 2012 WL 2476783 (E.D. Mich. June 22, 2012).......................... 11, 15

## **Rules**

Fed. R. Civ. P. 8(a)(2)..................................................................................... 5

Fed. R. Civ. P. 12(b)(6)........................................................................... passim

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and the doctrine of qualified immunity, Defendants John Brand, David Lakatos, Nathanael Devins, Robert Ball, and Paul Brumley, as sued in their individual capacities ("individual federal defendants"),[2] move to dismiss Count IV of Plaintiff's Complaint. They submit this Brief in support of their Motion.

## INTRODUCTION

Plaintiff Shoshana Hebshi seeks to recover monetary damages from the Federal Security Director of the Detroit Metropolitan Wayne County Airport and federal law enforcement officers from the Federal Bureau of Investigation, U.S. Customs and Border Protection and U.S. Immigration and Customs Enforcement for their alleged responses to a report of suspicious activity on a Frontier Airlines flight on September 11, 2011. Plaintiff brings her claims against these federal officials directly under the Constitution pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that they discriminated against her on account of her perceived ethnicity, race or national origin in violation of the equal protection component of the Fifth Amendment (Count IV).[3] This court should dismiss the equal protection claim against these individual federal defendants because Plaintiff has failed to provide anything but conclusory assertions that these defendants discriminated against her. Where, as here, Plaintiff seeks to recover from the personal assets of federal employees, she must plead that "*they themselves* acted on account of a constitutionally protected characteristic." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (emphasis added). This she has failed to do. These defendants are similarly entitled to qualified immunity on this claim because Plaintiff has not

---

[2] Any unnamed federal defendants are not parties or represented herein.
[3] This Motion only pertains to Count IV. The individual federal defendants do not move to dismiss any other count in the Complaint at this time and will file partial Answers to respond to the remainder of the Complaint.

adequately alleged that any of them violated a clearly established right.  Count IV should be dismissed against all of the individual federal defendants because Plaintiff has not met the applicable pleading standards and thus Plaintiff cannot overcome the qualified immunity bar.

## PLAINTIFF'S COMPLAINT[4]

Plaintiff is a United States citizen.  She states that her first name is of Hebrew origin and her surname is of Saudi Arabian origin.  Complaint (Compl.) ¶ 12, ECF No. 1.  Plaintiff flew on Frontier Airlines 623 from Denver to Detroit on September 11, 2011.  *Id*. at ¶¶ 39, 41-42. Plaintiff was traveling alone.  *Id*. ¶ 39.  During the flight, some flight attendants and passengers reported that the two men in Plaintiff's row visited the restroom around the same time, each spent ten to twenty minutes there and were standing in the aisle for long periods of time.  *Id*. ¶ 45.  Shortly before 3:00p.m., flight attendants alerted the pilot that two men of possible Arab descent had been observed standing in the aisle for long periods of time and going to the restroom repeatedly.  *Id*. ¶ 47.  The pilot sent a message through the Aircraft Communications Addressing and Reporting System asking for information about the passengers seated in 12B and 12C.  *Id*. ¶ 48.  Mark Fraley, a Frontier Airlines employee, forwarded the message to Frontier staff by email, providing the names of the passengers in 12B and 12C.  In that same email, Fraley also provided the name of the passenger in seat 12A (Plaintiff), commenting that she might also be with the two men.  *Id*. ¶ 49.

Tammara Faforke, a Frontier Airlines Manager, passed along Mr. Fraley's email to a Transportation Security Administration ("TSA") air marshal and Officer Duncan, a Wayne County Airport Authority Police ("WCAP") Officer.  *Id*. ¶ 51.  Officer Duncan, in turn, passed the email along to another WCAP officer, Defendant Officer Grant.  Officer Grant relayed the

---

[4]  The facts in this section are taken from the Complaint and are assumed to be true for the purposes of this motion only.  *See Rondigo v. Twp. of Richmond*, 641 F.3d 673, 676 n.1 (6th Cir. 2011).

information from the email, including that Plaintiff may be traveling with the two men, to additional WCAP officers. The TSA also contacted Wayne County Airport Authority and reported suspicious passenger behavior on flight 623. *Id*. ¶¶ 51-53.

At 3:00p.m., Defendant Jeremy Bohn, the Officer-in-Charge for WCAP, went to a designated inspection site to wait for the airplane to arrive along with Defendants Thomas Pipis, David Lakatos and Nathanael Devins, all of whom are CBP Officers; Defendant Robert Ball, the Federal Security Director for the airport; Defendant John Etling, a Task Force Officer for the FBI's Joint Terrorism Task Force; an air marshal; and other employees of WCAP, TSA and FBI.[5] *Id*. ¶ 54. At the inspection site, Defendant WCAP Officer Johnson spoke via cell phone to the Frontier Airlines captain, who told Officer Johnson that a male passenger from row 12 had entered the restroom for a long period of time while the other man from row 12 stood outside. According to Officer Johnson, the captain stated that a third passenger seated in 12A may also be involved in the incident but is seated and compliant at this time. *Id*. ¶ 55. None of the officers requested further evidence regarding Plaintiff's involvement in suspicious activities. *Id*. ¶ 56.

Employees of WCAP, TSA, FBI and CBP collaborated and put in place a plan to divert and board the aircraft, arrest all three passengers and remove them to a detention facility for questioning. *Id*. ¶ 57. Defendant WCAP Officer Grant organized the tactical entry of the flight with the assistance of Defendant WCAP Officer Johnson and CBP officers. *Id*. ¶ 58. Defendant WCAP Officer Driscoll recommended to the Vice President of Public Safety for the Wayne County Airport Authority Defendant Mark DeBeau that all three passengers be removed and taken to a detention facility for further investigation. Vice President DeBeau authorized the plan. *Id*. ¶¶ 59-60. At 4:25p.m., Defendant WCAP Officers Carmona, Bohn and Johnson, Defendant

---

[5] Plaintiff dismissed Defendants John Etling and Thomas Pipis from this suit. ECF Nos. 54, 55.

Paul Brumley, a Special Agent for U.S. Immigration and Customs Enforcement, along with other officers, boarded the plane, heavily armed, ran down the aisle, shouting at passengers to put their hands on the seat in front of them.  Officers stopped at Plaintiff's row and yelled at all three passengers to get up.  *Id*. ¶¶ 68-70.  WCAP Officer Carmona put Plaintiff in handcuffs.  All three passengers were rushed down the aisle and off the plane.  *Id*.  ¶¶ 72, 73.

Once outside the plane, an officer spread Plaintiff's legs, pat searched her and asked her if she was wearing explosives.  *Id*. ¶¶ 75-76.  Defendant WCAP Officer Bradley put Plaintiff in a police car, drove her to Building 358, and placed her in a cell.  *Id*. ¶¶ 78, 80.  At approximately 4:40p.m., Defendant WCAP Officer Wasiukanis conferred with Defendant FBI Special Agent John Brand and they decided that all three suspects should be strip searched.  *Id*. ¶ 85.  An hour later, Defendant WCAP Officer Parker performed the strip search of Plaintiff.  *Id*. ¶¶ 88-89.  Approximately two hours later, Plaintiff was taken to an interview room where two federal agents questioned her for 30 minutes.  One of the agents told Plaintiff that someone had reported that she and the two men engaged in suspicious activity on the flight.  *Id*. ¶¶ 99, 101.  At 7:30p.m., Special Agent Brand authorized the release of the three suspects.  *Id*. ¶ 106.

Plaintiff filed her Complaint on January 22, 2013.  ECF No. 1.  Plaintiff names as Defendants Frontier Airlines, nine officers of the WCAP and Wayne County Airport Authority, and five federal defendants: FBI Special Agent John Brand; CBP Officers David Lakatos and Nathanael Devins; Federal Security Director Robert Ball and ICE Special Agent Paul Brumley.  Plaintiff asserts Counts I-III against Frontier Airlines.  In Count IV, Plaintiff contends that all of the federal defendants and WCAP defendants (except Officer Toya Parker) arrested and detained Plaintiff because of her perceived ethnicity, race or national origin based on her name and/or

appearance in violation of the Equal Protection Clause.[6]   In Count V, Plaintiff claims that all of

the individual federal defendants and WCAP defendants "collaborated to order and effectuate"

Plaintiff's arrest and detention in violation of the Fourth Amendment.   In Count VI, Plaintiff

asserts that a WCAP Officer and Defendant Brand ordered, and a WCAP officer performed, an

unreasonable search in violation of the Fourth Amendment.   Finally, Plaintiff includes a claim

for false arrest against the United States in Count VII.

## **STANDARD OF REVIEW**

To survive a motion to dismiss, a complaint must contain sufficient factual matter to

"state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).   In reviewing the sufficiency of a complaint under Rule 12(b)(6), courts should be

guided by two "working principles."   *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d

365, 369 (6th Cir. 2011).   First, the "general rule that the court must accept as true all allegations

in the complaint 'is inapplicable to legal conclusions'" such that "conclusory recitals of the

elements of a claim, including legal conclusions couched as factual allegations, 'do not suffice.'"

*Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Second, "only a complaint that states a

plausible claim for relief survives a motion to dismiss." *Id*. (quoting *Iqbal*, 556 U.S. at 679.)

Therefore, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's

liability," it has failed to state a claim.   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

557)).   If the facts presented by the plaintiff do not "permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged–but not 'show[n]'–'that the pleader is

entitled to relief,'" and dismissal should be granted.   *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

In applying these principles, the Court in *Iqbal* emphasized that in a complaint asserting a

*Bivens* claim, a plaintiff "must plead that each Government-official defendant, through the

---

[6] Count IV is the only Count upon which the individual federal defendants move to dismiss.

official's own individual actions, has violated the Constitution."  *Id*. at 676; *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012) (explaining that plaintiff must allege "with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.").  That is because a government official is only personally liable for "his or her own misconduct."  *Iqbal*, 556 U.S. at 677; *see also Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (emphasis added) (explaining that a plaintiff must "plead[] facts showing" that "*the official violated a … constitutional right*.").

## DISCUSSION

### Qualified Immunity Bars Plaintiff's Individual Capacity Claim Against the Individual Federal Defendants.

The individual federal defendants are entitled to qualified immunity on Count IV because Plaintiff has not pleaded facts showing that any one of them violated a clearly established constitutional right and, as such, Plaintiff cannot overcome the qualified immunity bar.

A.  The Framework for the Qualified Immunity Defense.

The doctrine of qualified immunity ensures that only conduct that unquestionably violates the Constitution will subject officials to personal liability.  *Harlow v. Fitzgerald*, 457 U.S. 800, 814-19 (1982).  Qualified immunity shields public officials from the necessity of defending against tort liability so long as their conduct does not violate clearly established rights of which a reasonable official would have known.  *See id*. at 818.  Thus, when properly applied, the doctrine provides "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court "repeatedly ha[s]

6

stressed" that courts should resolve the issue "at the earliest possible stage in litigation."  *Hunter*, 502 U.S. at 227; *Rondigo v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (explaining that the purpose of qualified immunity is to "ensure that insubstantial claims against government officials are resolved at the earliest possible stage of litigation").  Thus, if a plaintiff fails to state a claim sufficient to overcome immunity, the court should dismiss the action at the outset without allowing discovery.  *Mitchell,* 472 U.S. at 526; *Iqbal,* 556 U.S. at 672, 686; *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009); *Reilly v. Vadlamudi,* 680 F.3d 617, 628 (6th Cir. 2012).

When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to its protection.  *Reilly,* 680 F.3d at 623. Qualified immunity shields federal officials from money damages unless a plaintiff "*pleads facts showing*:" (1) that the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct.  *al-Kidd*, 131 S. Ct. at 2080 (emphasis added); *Rondigo*, 641 F.3d at 681 (explaining that when the qualified immunity defense is raised at the pleading stage, the court must determine whether the complaint adequately alleges the commission of acts that violate clearly established law).  As part of the first prong of qualified immunity, a plaintiff must allege specific acts by which a particular individual defendant personally violated a plaintiff's constitutional rights.  *See Iqbal*, 556 U.S. at 676.  In evaluating the second prong, "[t]he contours of a right [must be] sufficiently clear that every reasonable official would have understood that what he [was] doing violate[d] that right." *al-Kidd*, 131 S. Ct. at 2083 (internal quotation marks omitted).  A court may decide which of the two prongs of the analysis to address first.  *Id*. at 2080; *Reilly,* 680 F.3d at 623.

B. Plaintiff Has Failed to Plead Facts Stating An Equal Protection Claim Against the Individual Federal Defendants.

The individual federal defendants are entitled to qualified immunity on Count IV because Plaintiff has not pleaded sufficient facts to state an equal protection claim under the Fifth Amendment against any one of them.  As such, she cannot overcome the first prong of the qualified immunity analysis.  In Count IV, Plaintiff asserts that all of the individual federal defendants (along with all of the WCAP defendants) arrested and detained Plaintiff because of her "perceived ethnicity, race, or national origin based on her name and/or appearance" in violation of the Equal Protection Clause of the Fourteenth Amendment and, as applicable to the federal government, the Fifth Amendment.[7]  Compl. ¶¶ 132-138.  The Equal Protection Clause prohibits discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo*, 641 F.3d at 681-82.  As the Supreme Court has noted, in order to state Fifth Amendment *Bivens* claim, a plaintiff "must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676, 682.

---

[7] In Count IV, Plaintiff alleges violations of both the Fifth and Fourteenth Amendments against federal and airport authority defendants.  The Supreme Court has concluded that the Due Process Clause of the Fifth Amendment contains an equal protection component that applies to the federal government.  *Davis v. Passman*, 442 U.S. 228, 234 (1979); *United States v. Hughes*, 632 F.3d 956, 960 (6th Cir. 2011).  As it relates to the individual federal defendants, because Plaintiff is challenging the actions of federal officials acting under color of federal law, the relevant equal protection analysis is under the Fifth Amendment only and she has no separate cause of action against them under the Fourteenth Amendment.  *E.g.*, *Cruz-Salazar v. Pugh*, No. 12cv917, 2012 WL 3112406, at *6 (N.D. Ohio July 31, 2012); *Olympic Arms v. Magaw*, 91 F. Supp. 2d 1061, 1069-70 (E.D. Mich. 2000).  Nevertheless, the Sixth Circuit has explained that it analyzes "equal protection claims against the federal government under the Fifth Amendment just as [it] would evaluate equal protection claims against state and local governments under the Fourteenth Amendment." *Ctr. for Bio-Ethical Reform*, 648 F.3d at 379.

Plaintiff identifies no facts that that would suggest that any of the individual federal defendants acted with discriminatory animus.[8]  Rather, in support of her claim, Plaintiff simply concludes that:

> Upon information and belief, none of the state or federal officers who received information about these passengers requested further information or evidence regarding Ms. Hebshi's alleged involvement in suspicious activities.  Accordingly, they acted based on the perceived ethnicity, national origin, or race of Ms. Hebshi's name, as they had no articulable facts connecting Ms. Hebshi to suspicion of criminal activity.

Compl. ¶ 56.  This lone allegation of discriminatory motive asserted against thirteen defendants fails to meet the applicable pleading standards for three reasons, each described in detail below.

### 1. Plaintiff Fails to Identify What Each Defendant Did to Violate the Equal Protection Clause.

Plaintiff's equal protection claim against the individual federal defendants cannot overcome the first prong of the qualified immunity analysis because she has not alleged facts showing that each personally engaged in conduct that violated her Fifth Amendment rights.  Plaintiff's solitary allegation of discrimination, Compl. ¶ 56, lumps all of the defendants together without specifying what any individual defendant did.  As the Supreme Court has made clear, however, "a plaintiff must plead that *each* Government-official defendant, through the official's

---

[8] Nor does the Complaint contain any allegation that Plaintiff was treated differently than similarly situated individuals of a different race, ethnicity or national origin.  Courts within this Circuit have required plaintiffs alleging that police action was taken because of a protected characteristic to plead facts that similarly situated individuals of another group were treated differently.  *E.g.*, *Harajli v. Huron Twp.*, 365 F.3d 501, 508 (6th Cir. 2004) (explaining that summary judgment was warranted when plaintiff failed to show police treated him differently than similarly situated individuals of another national origin or gender); *Cunningham v. Sisk*, 136 F. App'x 771, 774-75 (6th Cir. 2005) (concluding that dismissal was warranted for damages claim in which plaintiff asserted he was targeted for arrest because of his race where plaintiff proffered nothing to suggest similarly situated people were treated differently); *cf.*, *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009)  (affirming dismissal of Section 1985 claim in which plaintiff averred he was punished because of his race because he did not allege facts to show that people not disciplined were similarly situated and of a different race).

*own individual actions*, has violated the Constitution."  *Iqbal*, 556 U.S. at 676 (emphasis added);

*Reilly v. Vadlamudi,* 680 F.3d 617, 624, 626 (6th Cir. 2012) (noting "[b]ecause it is well-settled

that qualified immunity must be assessed in the context of each individual's specific conduct,

this Court analyzes separately the allegations concerning the conduct of each Defendant.").

 Given *Iqbal's* clear directive, the Sixth Circuit has rejected references to groups of

defendants that do not contain specific allegations tying the individual defendants to the alleged

unlawful conduct.  For example, in *Marcilis v. Township of Redford*, the Sixth Circuit affirmed

the dismissal of two federal law enforcement officers against whom individual capacity *Bivens*

claims were alleged.  693 F.3d 589, 595-97 (6th Cir. 2012).  The Sixth Circuit observed that in

personal capacity suits, plaintiffs must allege that particular defendants performed the acts that

resulted in the deprivation of plaintiff's constitutional rights.  *Id*. at 596 (collecting cases); *see*

*also Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (explaining that on a

motion to dismiss an individual capacity damages claim, courts "must analyze separately

whether [plaintiff] has stated a plausible constitutional violation by each individual defendant,

and we cannot ascribe the acts of all Individual Defendants to each individual defendant").  The

*Marcilis* Court held that by making categorical references to "Defendants" plaintiffs failed to

"allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted

constitutional right." *Marcilis,* 693 F.3d at 596 (internal quotation marks omitted).  The Sixth

Circuit therefore upheld the dismissal of all claims against the federal officials.  *Id*.  Here, when

Plaintiff's Complaint is combed for particularized factual allegations evidencing discriminatory

animus by any one of the individual federal defendants, it comes up short.[9]  Plaintiff's assertion

---

[9] Plaintiff's allegation is troubling because Plaintiff has grouped together government officials
from separate agencies, at different levels of service, with differing responsibilities. Faced with a
similar plaintiff-assembled grouping of defendants employed by different entities, the Tenth

that all thirteen individual defendants engaged in discrimination, collectively and without individual distinction, is unquestionably inadequate in this personal capacity suit.  For this reason alone, the discrimination claim against the individual federal defendants should be dismissed.

**2.  Plaintiff's Only Allegation of Discrimination is Conclusory.**

Plaintiff's equal protection claim should also be dismissed because the Complaint's lone allegation of discrimination is wholly conclusory.  As *Iqbal* teaches, conclusory assertions are not entitled to any presumption of truth.  *Iqbal*, 556 U.S. at 678-79.  Since the Supreme Court's decision in *Iqbal*, courts in this Circuit have dismissed equal protection claims supported only by conclusory allegations of discriminatory intent.  *See, e.g.*, *Rondigo*, 641 F.3d at 682, 684 (criticizing district court for "casual[ly]" accepting plaintiff's conclusory allegations of unlawful discrimination and its failure to identify "a single fact allegation of ... discriminatory animus by any of the five state defendants"); *V.R. Entm't v. City of Ann Arbor*, No. 12cv10203, 2012 WL 2476783, at *4,6 (E.D. Mich. June 22, 2012) (dismissing equal protection claim because plaintiff's conclusory allegations of racial animus were not entitled to be assumed true); *cf., Nali*, 355 F. App'x at 913 (affirming dismissal of equal protection claim brought under § 1985, concluding that plaintiff failed to offer anything more than conclusory allegations of discriminatory intent).

Other than her recitation of the elements of the cause of action in Count IV, Plaintiff supports her conclusion of discrimination with one purely speculative supposition which, without some subsidiary factual support, is not entitled to the presumption of truth.  Plaintiff postulates

---

Circuit observed, "[p]resumably, the allegedly tortious acts committed by [the Director of DHS, the operator of a daycare, and individual social workers] are entirely different in character and therefore are mistakenly grouped in a single allegation." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).  The grouping in this case is even more troubling because all thirteen defendants are alleged to have had the exact same discriminatory motive for the actions they purportedly took.

that because "[u]pon information and belief" none of the responding personnel requested further information about her involvement, all of them must have "acted based on the perceived ethnicity, national origin, or race of Ms. Hebshi's name…."  Compl. ¶ 56.  Plaintiff's assertion is indistinguishable from plaintiff's declaration in *Iqbal* that officials subjected him to harsh conditions "solely on account of [his] religion, race and/or national origin … for no legitimate penological purpose."  *Iqbal*, 556 U.S. at 680.  The Supreme Court determined that the allegation was conclusory–nothing more than a recitation of the elements of a discrimination claim–and not entitled to be assumed true.  *Id*. at 681 (internal quotation marks omitted); *see also id.* (observing that an allegation that defendants "adopted a policy because of" its effects on an identifiable group was similarly conclusory).  The Court explained that it was not rejecting the assertion because it was unrealistic, but because it was conclusory.  *Id*.  Plaintiff's assertion should similarly be rejected.

Here, when the one conclusory allegation that defendants "acted based on" a protected characteristic is rejected, there is nothing left to support an equal protection claim.  Where, as here, the Complaint provides no "factual matter"[10] to allow the court to draw an inference that each of the individual federal defendants harbored discriminatory animus, the omission is fatal to a personal capacity claim.  *See Iqbal*, 556 U.S. at 677; *see also id.* at 683 (explaining that defendants cannot be held liable "unless they themselves acted on account of a constitutionally protected characteristic.  Yet [the] complaint does not contain any factual allegation sufficient to plausibly suggest [defendants'] discriminatory state of mind"); *Rondigo*, 641 F.3d at 683

---

[10]  Other than a recitation of their job titles, the only fact alleged in the entire Complaint about Defendants Ball, Lakatos and Devins is that they went to the inspection site to meet the plane along with numerous other officers.  Compl. ¶ 54.  Brumley is alleged to have boarded the plane, *id.* ¶ 68, and Brand is alleged to have decided that the three passengers should be strip searched and later authorized the suspects' release.  *Id*. ¶¶ 85, 106.

12

(dismissing equal protection claim because although plaintiffs' complaint was lengthy, "it contains precious little factual support" for her theory of unlawful discrimination).  The dearth of factual support for Plaintiff's discrimination claim against the individual federal defendants warrants dismissal of Count IV as to these defendants.

### 3.  Plaintiff's Claim of Discriminatory Animus by These Defendants is Not Plausible.

Plaintiff's attribution of discriminatory animus to the individual federal defendants is not plausible under the facts and circumstances of this case.  As *Iqbal* explains, once the court sets aside "the allegations in the complaint that are not entitled to the assumption of truth," including recitations of elements of a cause of action and legal conclusions, then it must evaluate the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *See Iqbal*, 556 U.S. at 680-81.  Applying this analytical framework to the Complaint here reveals that Plaintiff's solitary assertion ascribing discriminatory intent to the individual federal defendants is belied by the remaining factual allegations contained in her Complaint.  As is made clear from the Complaint, no individual federal defendant is alleged to have selected or otherwise singled out Plaintiff for investigation or detention.  Rather, Plaintiff specifically alleges that members of Frontier Airlines staff identified her to law enforcement as potentially being involved in suspicious activity on the plane.  *E.g*, Compl. ¶ 49 (Mark Fraley, Frontier Airlines Sector Operations Control Shift Manager "provided the names of the passengers in 12B and 12C, added the name of the passenger in seat 12A (Ms. Hebshi), and commented that she might also be with the two men"); ¶ 51 ("Frontier Airlines Manager Tammara Faforke passed along Mr. Fraley's email to a TSA air marshal and to Officer Duncan, a Wayne County Airport Authority Police Officer…"); ¶ 55 ("Officer Johnson of the Wayne County Airport Authority Police spoke via cell phone with Frontier Airlines Captain Pucci, who told Defendant Johnson

13

… 'a third passenger seated in 12A may also be involved in the incident but is seated and compliant at this time.'"); *see also id.* ¶ 6 ("Frontier Airlines[] identified [Plaintiff] as a 'suspicious' passenger").  Moreover, there are no facts alleged that would suggest any of the individual federal defendants knew of Plaintiff's race, ethnicity or national origin,[11] let alone took any particular action because of it.

Instead, the facts that Plaintiff pleads in her Complaint support the "obvious alternative explanation," *Iqbal*, 556 U.S. at 682, that, on September 11th (the 10-year anniversary of the terrorist attacks of 9/11), individual federal defendants and others responded to investigate three passengers that airline personnel included in their report of suspicious activity to law enforcement—not to take any actions towards Plaintiff based on a perception about her race, ethnicity or national origin.  And, as described above, the facts as pleaded do not support the conclusion that any individual federal defendant targeted or singled out Plaintiff at all.  There are no facts in the Complaint that would plausibly suggest otherwise.  Even in *Twombly*, where the Court acknowledged that the allegation of parallel conduct was *consistent* with an unlawful agreement, the Court nonetheless refused to find that it plausibly suggested an illicit accord because it was not only compatible with, but *more likely explained by* lawful, free market behavior.  *Twombly,* 550 U.S. at 567-68; *Iqbal*, 556 U.S. at 677 (explaining that a plaintiff must plead facts showing that the conduct at issue was not for a "neutral, investigative reason" but for the purpose of discriminating).  Given the more plausible, "neutral, investigative reason" for the

---

[11] There are no facts alleged to suggest any of these defendants even knew Ms. Hebshi's name. *Compare* Compl. ¶ 51 (Faforke passed along the Fraley email–which contained Plaintiff's name –to a TSA air marshal and WCAP officer), *with* ¶ 55 (at the inspection site, the captain told WCAP Officer Johnson by phone that "a third passenger seated in 12A may also be involved in the incident…").  Even if they did, it is unclear what ethnicity, national origin or race an officer would perceive Shoshana Hebshi to be, based on her name alone.  In addition, there are no facts alleged to suggest these defendants were aware of her appearance at the time; she was on a plane.

responding officials' actions here, Plaintiff has not nudged her claims of purposeful discrimination "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 677, 683 (quoting *Twombly*, 500 U.S. at 570); *see also id*. at 682 (citation omitted) (internal quotation marks omitted) ("On the facts respondent alleges, the arrests … were likely lawful and justified by … non-discriminatory intent ….  As between that obvious alternative explanation for the arrests, and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion."); *V.R. Entm't*, 2012 WL 2476783 at *4 (dismissing equal protection claim for failure to state a claim because "[i]nferring racially discriminatory intent from the sequence of events alleged in the Complaint … requires an inferential leap that is not supported by the facts," instead of targeting racial minorities, the "most obvious explanation" for increased police presence was increased crime in the vicinity).  Because Plaintiff fails to state a plausible equal protection violation against any of the individual federal defendants, they should be dismissed from Count IV.

In sum, Plaintiff's Complaint does not allege sufficient facts to make out a valid equal protection claim against any of the individual federal defendants.  Because Plaintiff cannot show that she has suffered a deprivation of a constitutional right, her equal protection claim fails at step one of the qualified immunity analysis and it should be dismissed.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (explaining that if no constitutional right is violated, "there is no necessity for further inquiries concerning qualified immunity"); *Rondigo*, 641 F.3d at 684 (resolving equal protection claim at 12(b)(6) stage because it was insubstantial and ripe for dismissal under the doctrine of qualified immunity); *Reilly*, 680 F.3d at 623 (resolving defendants' entitlement to qualified immunity at step one because the factual allegations did not show defendants committed a constitutional violation).

15

C. <u>To the Extent Plaintiff Has Alleged the Violation of a Constitutional Right by Each of These Defendants, the Right Was Not Clearly Established.</u>

Although this court can dismiss Count IV because Plaintiff has failed to meet the first prong of the qualified immunity analysis, even if Plaintiff's allegations could be construed as stating a violation of the Fifth Amendment, Plaintiff cannot meet her burden under the second prong either.  A constitutional right is clearly established when "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that *every* 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd,* 131 S. Ct. at 2083 (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "[C]ase law must dictate, that is, truly compel (not just suggest or allow or raise a question about) the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances."  *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (internal quotation marks omitted).   In other words, qualified immunity applies unless existing precedent shows that the unlawfulness of a defendant's conduct is "beyond debate." *al-Kidd,* 131 S. Ct. at 2083.  The Supreme Court has repeatedly admonished courts for defining the right at issue at a high level of generality.  *Id*. at 2084.  Rather, qualified immunity hinges on whether the right was "clearly established" in the "particularized" sense such that it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (internal quotation marks omitted).

In this case, Plaintiff cannot credibly argue that *every* reasonable official would believe that he is violating a passenger's equal protection rights when, in responding to a report of suspicious activity from an airline on the Tenth Anniversary of the 9/11 terrorist attacks, including a report that the passenger "may also be involved in the incident" and "might also be with the two men," he fails to ask for additional information about the passenger's involvement

16

before removing all suspects from the plane for investigation.  Critical to the assessment of the "situation [individual federal defendants] confronted," *id*., is the following from the Complaint: none of the individual federal defendants are alleged to have selected Plaintiff as a potential suspect, but instead were acting upon information provided by airline officials that Plaintiff "may also be involved in the incident" on an-inbound flight on September 11th; the information the airline provided did not identify Plaintiff by race, ethnicity or national origin; none are alleged to have known what Plaintiff's race, ethnicity or national origin was; and the Complaint does not identify how these particular defendants would necessarily be aware of her name.

Here, where the only claim at issue in this Motion is an equal protection violation, it is unclear how a reasonable official in the circumstances the individual federal defendants confronted would have understood that he was discriminating against Plaintiff based on her race, ethnicity, or national origin.  Nothing in the preexisting case law would have made it clear to a reasonable officer that the actions of the individual federal defendants could amount to an equal protection violation.[12]  Their actions fall well within the boundaries of constitutional behavior. Because Plaintiff cannot meet her burden of alleging any constitutional violation by these defendants in Count IV–let alone a clearly established violation–the individual federal defendants are entitled to qualified immunity.

---

[12] The Sixth Circuit has observed, albeit in *dicta*, that officers acting on a tip "obviously cannot control the race of the person they investigate and ultimately contact" and thus the officers' selection of that person for investigation "does not amount to an equal protection violation."  *See United States v. Avery*, 137 F.3d 343, 354 n.5 (6th Cir. 1997).  In that same case, also in *dicta*, the Sixth Circuit commented that, if, for instance, an officer chooses to investigate individuals by selecting them from a flight list solely based on their ethnic surnames, a case could be made for an equal protection violation.  *Id.*; *see also id*. at 358 (Boggs, J., concurring) (characterizing that portion of the decision as *dicta*).  As is clear from the Complaint here, the Sixth Circuit's latter observation has no bearing on the facts as alleged in this case.

## CONCLUSION

The purpose of the doctrine of qualified immunity is to ensure that insubstantial claims against government officials are resolved at the earliest possible stage of litigation.  For the reasons stated above, Count IV should be dismissed against John Brand, David Lakatos, Nathanael Devins, Robert Ball and Paul Brumley.

Dated:  May 20, 2013                            Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General
Civil Division

RUPA BHATTACHARYYA
Director, Torts Branch

C. SALVATORE D'ALESSIO
Assistant Director, Torts Branch

*/s/*Sarah E. Whitman
SARAH E. WHITMAN
MA Bar No. 657726
Trial Attorney, Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0089
Facsimile: (202) 616-4314
Email: Sarah.Whitman@usdoj.gov

BARBARA L. MCQUADE
United States Attorney

LYNN M. DODGE (P38136)
Assistant United States Attorney
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0205
Email: Lynn.Dodge@usdoj.gov

*Counsel for Defendants John Brand, David Lakatos, Nathanael Devins, Robert Ball, and Paul Brumley*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that, on May 20, 2013, I electronically filed the foregoing paper

with the Clerk of the Court using the ECF system which will send notification of such filing to

the following:

**Julie H. Hurwitz: jhurwitz@goodmanhurwitz.com**
**Kathryn Bruner James: kjames@goodmanhurwitz.com**
**Miriam R. Nemeth: mnemeth@goodmanhurwitz.com**
**Rachel E. Goodman: Rgoodman@aclu.org**
**William H. Goodman: bgoodman@goodmanhurwitz.com**
**Michael J. Steinberg: msteinberg@aclumich.org**
**Sarah Tremont: stremont@cov.com**
**Alan B. Havis: ahavis@airportdefender.com**
**T. Joseph Seward: tjseward@cmda-law.com**
**Brian Maye: bmaye@amm-law.com**
**Alexander Ayar: aayar@fosterswift.com**
**Steven Boldt: sboldt@amm-law.com**

I further hereby certify that I have mailed by United States Postal Service the foregoing
paper to the following non-ECF participants:

**None**

/s/ Sarah E. Whitman_____
Sarah E. Whitman
Trial Attorney
Torts Branch, Civil Division
United States Department of Justice
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-0089
Email: Sarah.Whitman@usdoj.gov