# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

---

**SHOSHANA HEBSHI,**

        Plaintiff,

-v-

**UNITED STATES OF AMERICA; FRONTIER
AIRLINES, INC.; JOHN BRAND,** in his individual
capacity; **UNKNOWN FBI AGENT 1,** in his individual
capacity; **UNKNOWN FBI AGENT 2,** in his individual
capacity; **MARK DEBEAU,** in his individual capacity;
**JEREMY BOHN,** in his individual capacity; **CAPTAIN
PATRICK DRISCOLL,** in his individual capacity;
**OFFICER GRANT,** in his individual capacity; **LT. M.
WASIUKANIS,** in his individual capacity; **TOYA
PARKER,** in her individual capacity; **DT. CARMONA,**
in his or her individual capacity; **OFFICER JOHNSON,**
in his or her individual capacity; **CORPORAL BRADLEY,**
in his or her individual capacity; **UNKNOWN CBP
OFFICER,** in his individual capacity; **DAVID LAKATOS,**
in his individual capacity; **NATHANIAL DEVINS,** in his
individual capacity; **UNKNOWN TSA AGENT 1,** in his
individual capacity; **UNKNOWN TSA AGENT 2,** in her
individual capacity; **ROBERT BALL,** in his individual
capacity; **UNKNOWN ICE OFFICER,** in his individual
capacity; and **PAUL BRUMLEY,** in his individual capacity;

        Defendants.

-and-

**MARK DeBEAU, OFFICER GRANT, TOYA PARKER,
DT. CARMONA, OFFICER JOHNSON, JEREMY BOHN,
CAPTAIN PATRICK DRISCOLL, LT. M. WASIUKANIS,
and CORPORAL BRADLEY,**

        Cross-Plaintiffs,

-v-

**FRONTIER AIRLINES, INC.,**

        Cross-Defendant.

Honorable Terrence G. Berg

Magistrate Laurie J. Michelson

Case No. 13-cv-10253

---

## THE WAYNE COUNTY AIRPORT AUTHORITY DEFENDANTS' JOINT MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

NOW COME the Wayne County Airport Defendants, MARK DeBEAU, OFFICER JOHNSON, OFFICER GRANT, OFFICER PARKER, DETECTIVE CARMONA, OFFICER BOHN, LIEUTENANT WASIUKANIS, CORPORAL BRADLEY, and CAPTAIN DRISCOLL (collectively "the WCAA Defendants"), by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C. and THE LAW OFFICE OF ALAN B. HAVIS, and for their Motion for Partial Judgment on the Pleadings, state as follows:

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the WCAA Defendants seek judgment on the pleadings in relation to Plaintiff's equal protection claim. (**Docket # 1**, Count IV). For the reasons set forth more fully in the attached Brief in Support, the WCAA Defendants move for such relief on qualified immunity grounds.

Pursuant to Rule 7.1(a) of the Local Rules of the Eastern District of Michigan, the WCAA Defendants certify that they attempted to obtain concurrence in the relief sought. Counsel for Plaintiff declined to concur.

Respectfully submitted,

/s/ T. Joseph Seward
T. JOSEPH SEWARD (P35095)
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road
Livonia, Michigan 48150
Telephone: (734) 261-2400
Facsimile: (734) 261-4510
e-Mail: tjseward@cmda-law.com

*Attorneys for Officer Bohn, Corporal Bradley,*
*Lieutenant Wasiukanis, and Captain Driscoll*
*(Wayne County Airport Authority Defendants)*

1

/s/ Alan B. Havis
ALAN B. HAVIS (P36988)
Law Offices of Alan B. Havis
25505 West Twelve Mile Road, Suite 1000
Southfield, Michigan 48034
Telephone: (248) 353-3690
Facsimile: (248) 948-6677
e-Mail: ahavis@airportdefender.com

*Attorneys for Mark DeBeau, Officer Grant, Officer Parker, Detective Carmona, and Officer Johnson (Wayne County Airport Authority Defendants)*

DATED: June 4, 2013

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**SHOSHANA HEBSHI,**

      Plaintiff,

-v-

**UNITED STATES OF AMERICA; FRONTIER
AIRLINES, INC.; JOHN BRAND,** in his individual
capacity; **UNKNOWN FBI AGENT 1,** in his individual
capacity; **UNKNOWN FBI AGENT 2,** in his individual
capacity; **MARK DEBEAU,** in his individual capacity;
**JEREMY BOHN,** in his individual capacity; **CAPTAIN
PATRICK DRISCOLL,** in his individual capacity;
**OFFICER GRANT,** in his individual capacity; **LT. M.
WASIUKANIS,** in his individual capacity; **TOYA
PARKER,** in her individual capacity; **DT. CARMONA,**
in his or her individual capacity; **OFFICER JOHNSON,**
in his or her individual capacity; **CORPORAL BRADLEY,**
in his or her individual capacity; **UNKNOWN CBP
OFFICER,** in his individual capacity; **DAVID LAKATOS,**
in his individual capacity; **NATHANIAL DEVINS,** in his
individual capacity; **UNKNOWN TSA AGENT 1,** in his
individual capacity; **UNKNOWN TSA AGENT 2,** in her
individual capacity; **ROBERT BALL,** in his individual
capacity; **UNKNOWN ICE OFFICER,** in his individual
capacity; and **PAUL BRUMLEY,** in his individual capacity;

      Defendants.

-and-

**MARK DeBEAU, OFFICER GRANT, TOYA PARKER,
DT. CARMONA, OFFICER JOHNSON, JEREMY BOHN,
CAPTAIN PATRICK DRISCOLL, LT. M. WASIUKANIS,**
and **CORPORAL BRADLEY,**

      Cross-Plaintiffs,

-v-

**FRONTIER AIRLINES, INC.,**

      Cross-Defendant.

Honorable Terrence G. Berg

Magistrate Laurie J. Michelson

Case No. 13-cv-10253

## BRIEF IN SUPPORT OF THE WAYNE COUNTY AIRPORT AUTHORITY DEFENDANTS' JOINT MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## **TABLE OF CONTENTS**

INDEX OF AUTHORITY.................................................................iii

INDEX OF EXHIBITS....................................................................vi

QUESTION PRESENTED...............................................................vii

INTRODUCTION............................................................................1

PLAINTIFF'S ALLEGATIONS.........................................................1

I.     REPORTS OF SUSPICIOUS BEHAVIOR....................................2

II.    TACTICAL ENTRY...............................................................3

III.   INVESTIGATORY DETENTION AND STRIP SEARCH...............4

IV.   EQUAL PROTECTION CLAIM................................................5

STANDARD OF REVIEW................................................................5

LAW AND ARGUMENT.................................................................7

I.    THE WCAA DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S EQUAL PROTECTION CLAIM.........................................................8

    A.   Plaintiff's Allegations Fail to State a Facially Plausible Claim Under the Equal Protection Clause.................................................11

        1.   Plaintiff's Allegation of Intentional Discrimination is Not Entitled to the Assumption of Truth......................................11

        2.   Plaintiff's Remaining Allegations Do Not Plausibly Suggest Entitlement to Relief.........................................12

CONCLUSION.............................................................................17

# INDEX OF AUTHORITY [1]

## Cases

***Ashcroft v. Iqbal,***
  **556 U.S. 662 (2009)**..........................................................................*passim*

*Atherton v. D.C. Office of Mayor,*
  567 F.3d 672 (D. C. Cir. 2009)...........................................................15

***Bell Atlantic Corp. v. Twombly,***
  **550 U.S. 544 (2007)**..........................................................................6

***Brown v. Metro. Gov't of Nashville and Davidson County,***
  **No. 11–5339, 2012 WL 2861593 (6th Cir. Jan. 9, 2012)**.............15

***Center for Bio-Ethical Reform, Inc. v. Napolitano,***
  **648 F.3d 365 (6th Cir. 2011)**......................................................8, 17

*Cincinnati Ins. Co. v. Beazer Homes Invs., L.L.C.,*
  594 F.3d 441, 444 (6th Cir. 2010).......................................................6

*City of Cleburne v. Cleburne Living Center,*
  473 U.S. 432 (1985).............................................................................8

*Cooper v. Parrish,*
  203 F.3d 937 (6th Cir. 2000). .........................................................10

*Courie v. Alcoa Wheel & Forged Products,*
  577 F.3d 625 (6th Cir. 2009)...............................................................6

***Gardenhire v Schubert,***
  **205 F.3d 303 (6th Cir. 2000)**............................................................8

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982)............................................................................9

*HDC, L.L.C. v. City of Ann Arbor,*
  675 F.3d 608 (6th Cir. 2012)..............................................................6

*Keene v. Mitchell,*
  525 F.3d 461 (6th Cir. 2008)..............................................................8

---

[1] The "controlling or most appropriate authority for the relief sought," see L.R. 7.1(d)(2), is designated by bold font.

*Livermore v. Lubelan,*
    476 F.3d 397 (6th Cir. 2007)......................................................................10

*Malley v. Briggs,*
    475 U.S. 335 (1986)..................................................................................10

*McCleskey v. Kemp,*
    481 U.S. 279 (1987)....................................................................................8

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985)....................................................................................9

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.,*
    650 F.3d 1046 (6th Cir. 2011)....................................................................7

*Pearson v. Callahan,*
    555 U.S. 223 (2009)....................................................................................9

**Personnel Adm'r of Mass. v. Feeney,**
    **442 U.S. 256 (1979)**............................................................................8, 14

**Rondigo, L.L.C. v. Richmond Twp.,**
    **641 F.3d 673 (6th Cir. 2011)**..............................................................11, 12

*Risbridger v. Connelly,*
    275 F.3d 565 (6th Cir. 2002)......................................................................9

*Riverview Health Inst. L.L.C. v. Medical Mut. of Ohio,*
    601 F.3d 505, 512 (6th Cir. 2010)..............................................................5

*Saucier v. Katz,*
    533 U.S. 194 (2001)....................................................................................9

*Sensations, Inc. v. City of Grand Rapids,*
    526 F.3d 291 (6th Cir. 2008)......................................................................5

## <u>Constitutional Provisions</u>

U.S. Const. amend. XI.............................................................7

## <u>Federal Rules of Civil Procedure</u>

Fed. R. Civ. P. 8.................................................................6

Fed. R. Civ. P. 12..........................................................5, 6, 11

## INDEX OF EXHIBITS

**Exhibit 1**  *Brown v. Metro. Gov't of Nashville and Davidson County*, No. 11–5339, 2012 WL 2861593 (6th Cir. Jan. 9, 2012)

## <u>QUESTION PRESENTED</u>

I.  WHETHER THE WAYNE COUNTY AIRPORT AUTHORITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE GROUND THAT PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTUAL CONTENT TO STATE A PLAUSIBLE EQUAL PROTECTION CLAIM?

Plaintiff presumably responds, "No."

Wayne County Airport Authority Defendants respond, "Yes."

## INTRODUCTION

Plaintiff Shoshana Hebshi ("Plaintiff") is an American citizen. (**Docket # 1, ¶¶ 2, 12**). Her first name is of Hebrew origin, and her last name is Arab. (**Docket # 1, ¶¶ 2, 12**). Plaintiff alleges that officials from the Wayne County Airport Authority ("WCAA") – Mark DeBeau, Officer Grant, Officer Parker, Detective Carmona, Officer Johnson, Officer Bohn, Captain Driscoll, Lieutenant Wasiukanis, and Corporal Bradley (collectively "the WCAA Defendants") – discriminated against her based on her perceived race, ethnicity, and/or national origin.  She claims that such discrimination is actionable under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. For the reasons that follow, the WCAA Defendants are entitled to qualified immunity and seek partial[2] judgment on the pleadings.

## PLAINTIFF'S ALLEGATIONS

On September 11, 2011, Plaintiff went to the San Francisco International Airport after spending the weekend with her sister. (**Docket # 1, ¶¶ 39, 40**). Plaintiff cleared airport security and boarded a Frontier Airlines flight to Denver, Colorado. (**Docket # 1, ¶ 40**).  Upon her arrival at the Denver International Airport, Plaintiff boarded a connecting Frontier Airlines flight to Detroit, Michigan. (**Docket # 1, ¶ 41**).  Plaintiff sat in seat 12A (window seat); two men of South Asian descent occupied seats 12B (middle seat) and 12C (aisle seat). (**Docket # 1, ¶¶ 42, 43**). Plaintiff did not know or speak to either of the men in her row. (**Docket # 1, ¶ 44**).

---

[2] Plaintiff's Fourth Amendment claims of unreasonable search (Count V) and unreasonable seizure (Count VI) are not the subject of the WCAA Defendants' Motion for Partial Judgment on the Pleadings.

## I. REPORTS OF SUSPICIOUS BEHAVIOR

During the flight, passengers and flight attendants observed the two men in Plaintiff's row acting in a suspicious manner – going to the restroom at the same time, spending up to twenty minutes in the restroom, and standing in the aisle for long periods of time. (**Docket # 1, ¶ 45**). Neither the passengers nor the flight attendants observed or reported suspicious behavior on the part of Plaintiff, who did not leave her seat during the flight. (**Docket # 1, ¶¶ 42, 46**).

Flight attendants alerted Captain Pucci, the pilot, of the suspicious behavior. (**Docket # 1, ¶ 47**). They advised Captain Pucci that "two men of 'possibly Arab descent' had been observed repeatedly going to the bathroom and standing in the aisle for long periods of time." (**Docket # 1, ¶ 47**). Using the Aircraft Communications Addressing and Reporting System, Captain Pucci sent a message to Frontier Airlines Dispatch. (**Docket # 1, ¶ 48**). He informed Dispatch of the suspicious behavior and requested information about the passengers in seats 12B and 12C. (**Docket # 1, ¶ 48**).

Mark Fraley ("Fraley"), a Frontier Airlines employee, received Captain Pucci's message and e-mailed it to other Frontier Airlines personnel. (**Docket # 1, ¶ 49**). Fraley provided the recipients of his e-mail with the names of the passengers in seats 12B and 12C. (**Docket # 1, ¶ 49**). He also provided the name of the passenger in seat 12A (Plaintiff) and indicated that she might be traveling with the passengers in seats 12B and 12C. (**Docket # 1, ¶ 49**).

Tammara Faforke, a Frontier Airlines employee, forwarded Fraley's e-mail to Officer Duncan, a WCAA police officer, and an unidentified Transportation Security Administration ("TSA") air marshal. (**Docket # 1, ¶ 51**). Officer Duncan passed the information along to Officer Grant, a WCAA police officer. (**Docket # 1, ¶ 51**). Officer

Grant conveyed the information to Captain Driscoll and Detective Carmona, both WCAA police officers. (**Docket # 1, ¶ 52**). TSA also contacted WCAA independently to report the suspicious behavior. (**Docket # 1, ¶ 53**).

## II.   TACTICAL ENTRY

Officer Bohn and Officer Johnson, WCAA police officers, went to the designated inspection site at approximately 3:00 p.m. and waited for the aircraft. (**Docket # 1, ¶¶ 54, 55**). They were accompanied by officials from various agencies. Thomas Pipis, David Lakatos, and Nathanial Devins – all of whom are Customs and Border Control ("CBC") agents – went to the inspection site. (**Docket # 1, ¶ 54**). Robert Ball, a TSA official, went to the inspection site. (**Docket # 1, ¶ 54**). John Etling, a Federal Bureau of Investigation ("FBI") official, went to the inspection site. (**Docket # 1, ¶ 54**). Various unidentified officials from WCAA, TSA, and FBI also went to the inspection site. (**Docket # 1, ¶ 54**).

At the inspection site, Officer Johnson spoke with Captain Pucci via cell phone. (**Docket # 1, ¶ 55**). Captain Pucci advised Officer Johnson that a male passenger in row 12 entered and remained in a restroom for a long period of time, during which time another male passenger in row 12 waited outside the restroom. (**Docket # 1, ¶ 55**). Captain Pucci further advised Officer Johnson that a female passenger in row 12, though presently seated and otherwise compliant, may also be involved. (**Docket # 1, ¶ 55**).

Captain Driscoll determined that a tactical entry was necessary. (**Docket # 1, ¶ 59**). He recommended to Mark DeBeau ("DeBeau"), a WCAA official, that all three passengers in row 12 be removed from the aircraft and escorted to an on-site detention facility for further investigation. (**Docket # 1, ¶ 59**). DeBeau authorized the recommended plan of action. (**Docket # 1, ¶ 60**). Officer Grant, with the assistance and participation of Officer Johnson and CBP officials, organized the tactical entry. (**Docket**

# 1, ¶ 58). Captain Driscoll advised officials at the inspection site that the passengers were to be handcuffed upon contact. (**Docket # 1, ¶ 61**).

When the aircraft landed, Captain Pucci announced that the flight would be diverted to another area of the airport and warned passengers to remain in their seats. (**Docket # 1, ¶ 63**). The aircraft taxied to the inspection site, at which point a van with stairs approached the aircraft. (**Docket # 1, ¶ 66**).

Detective Carmona, Officer Bohn, and Officer Johnson boarded the aircraft shortly before 4:30 p.m. (**Docket # 1, ¶ 68**). Paul Brumley, an Immigration and Customs Enforcement ("ICE") agent, and several other officials also boarded the aircraft. (**Docket # 1, ¶ 68**). The officials stopped at row 12 and instructed the passengers seated in that row, including Plaintiff, to stand up. (**Docket # 1, ¶ 70**). Detective Carmona placed Plaintiff in handcuffs. (**Docket # 1, ¶ 72**).  The officials escorted Plaintiff and the male passengers down the aisle and out of the aircraft. (**Docket # 1, ¶ 73**). An unidentified official conducted a pat-down search and asked Plaintiff if she was wearing any explosives, to which Plaintiff responded "no." (**Docket # 1, ¶¶ 75, 76**).

## III.   INVESTIGATORY DETENTION AND STRIP SEARCH

Corporal Bradley, a WCAA police officer, placed Plaintiff and one of the male passengers in the back of his police vehicle and transported them to the detention facility. (**Docket # 1, ¶ 78**).  Upon arrival, Plaintiff was taken to a holding cell monitored by a video camera. (**Docket # 1, ¶¶ 80, 81**).

Lieutenant Wasiukanis, a WCAA police officer, conferred with John Brand ("Brand"), a FBI agent, about how to proceed. (**Docket # 1, ¶ 85**). They decided that all three passengers should be strip searched. (**Docket # 1, ¶ 85**). Officer Parker, a female WCAA police officer, entered Plaintiff's cell to perform the strip search. (**Docket # 1, ¶**

89). Officer Parker removed Plaintiff's handcuffs and instructed Plaintiff to remove her clothing. (**Docket # 1,** ¶ 91). Officer Parker told Plaintiff to face the wall – away from the video camera – so that her body would, to the extent possible, be concealed. (**Docket # 1,** ¶ 91). After performing the strip search, Officer Parker placed the handcuffs back on Plaintiff's wrists and exited the cell. (**Docket # 1,** ¶ 97).

For roughly thirty minutes, unidentified FBI and TSA agents interviewed Plaintiff about her family, her previous travel, and the passengers who sat next to her on the flight. (**Docket # 1,** ¶¶ 100, 102). At approximately 7:30 p.m., Brand authorized the release of all three passengers. (**Docket # 1,** ¶ 106).

## IV.   EQUAL PROTECTION CLAIM

Plaintiff claims that the WCAA Defendants, among others, violated her Fourteenth Amendment right to equal protection of the laws by "intentionally and unlawfully" discriminating against her. (**Docket # 1,** ¶¶ 134, 136). Specifically, Plaintiff alleges that the WCAA Defendants arrested and detained her "because of her perceived ethnicity, race, or national origin based on her name and/or appearance." (**Docket # 1,** ¶ 134).

## **STANDARD OF REVIEW**

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are "analyzed under the same *de novo* standard as motions to dismiss pursuant to Rule 12(b)(6)." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To that end, a motion for judgment on the pleadings is "designed to test the sufficiency of the complaint." *Riverview Health Inst. L.L.C. v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Judgment on the pleadings is proper "if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Id.*;

see also *Cincinnati Ins. Co. v. Beazer Homes Invs., L.L.C.*, 594 F.3d 441, 444 (6th Cir. 2010).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain, *inter alia*, a "statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and its companion case, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court "raised the bar for pleading requirements beyond the old 'no-set-of-facts' standard . . . that had prevailed for the last few decades." *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009) (citations omitted). Although *Twombly* and *Iqbal* both pertained to Rule 12(b)(6) motions, the pleading requirements apply with equal force to Rule 12(c) motions. See, e.g., *HDC, L.L.C. v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

In order to sufficiently provide the grounds for entitlement to relief, a complaint demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. It demands more than "labels and conclusions. . . ." *Twombly*, 550 U.S. at 555. It demands more than "a formulaic recitation of the elements of a cause of action. . . ." *Id.* And it demands more than "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citation omitted). To survive a motion to dismiss, a complaint must cross the line of possibility or conceivability and enter the realm of plausibility. As the Supreme Court explained in *Iqbal*:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. ***The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.***

6

> Two working principles underlie our decision. . . . First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation). . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . *[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief.*

*Id.* at 678-79 (internal citations, quotations, and alterations omitted; emphasis supplied).

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*   Thus, when a complaint is deficient under Rule 8, the plaintiff "is not entitled to discovery, cabined or otherwise." *Id.* at 686. This remains true "even when the information needed to establish a claim   . . . is solely within the purview of the defendant or a third party. . . ." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011).

> By foreclosing discovery to obtain [factual] information, the combined effect of *Twombly* and *Iqbal* require [the] plaintiff to have greater knowledge . . . of factual details in order to draft a "plausible complaint."
>
> *   *   *
>
> The plaintiff may not use the discovery process to obtain these facts after filing suit.  The language of *Iqbal*, "not entitled to discovery," is binding on the lower federal courts.
>
> *   *   *
>
> Without discovery, the plaintiff may have no way to find out the facts in the hands of competitors, but *Iqbal* specifically orders courts . . . to refuse to order further discovery.

*Id.* at 1051, 1053.

## LAW AND ARGUMENT

The Equal Protection Clause of the Fourteenth Amendment to the Constitution guarantees "equal protection of the laws." U.S. Const. amend. XIV, § 1. Courts construe

the Equal Protection Clause as "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

The "threshold element" of an equal protection claim is disparate treatment, also referred to as discriminatory effect. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011); see also *Keene v. Mitchell*, 525 F.3d 461, 464 (6th Cir. 2008). A plaintiff "must adequately plead that the government [officials] treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Napolitano*, 648 F.3d at 379 (citation and internal quotations omitted); see also *Keene*, 525 F.3d at 464.

A showing of discriminatory effect does not, however, violate the Equal Protection Clause on its own accord. Under the standards that govern an equal protection claim, the plaintiff must show "both a discriminatory purpose and a discriminatory effect." *Gardenhire v Schubert*, 205 F.3d 303, 318 (6th Cir. 2000); see also *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). The plaintiff must trace the discriminatory effect to a discriminatory purpose. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979). A discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. . . . It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 279 (alterations in original; citation omitted).

## I. THE WCAA DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S EQUAL PROTECTION CLAIM.

The WCAA Defendants' entitlement to partial judgment on the pleadings must be analyzed against the backdrop of qualified immunity. Under the doctrine of qualified

immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Qualified immunity is "entitlement not to stand trial or face the other burdens of litigation. . . . The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the United States Supreme Court enunciated a two-part test for determining whether a government official is entitled to qualified immunity.  The first, threshold inquiry is whether the official's conduct violated a constitutional right. *Id.* at 201.  If answered in the negative, the analysis is complete.  If answered in the affirmative, however, the next inquiry is whether the right was clearly established. *Id.*[3] "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable." *Id.*  "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002).

Qualified immunity applies irrespective of whether the officer's error was a mistake of law, a mistake of fact, or a mistake of fact and law. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity, therefore, "provides ample protection to all but the

---

[3] Though the Supreme Court has held that the *Saucier* analysis is no longer mandatory in all cases, it "continue[s] to recognize that it is often beneficial." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To overcome a qualified immunity defense, the plaintiff bears the burden of demonstrating that the government official is not entitled to qualified immunity. *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). To carry this burden, the plaintiff "cannot simply assert a constitutional violation and rely on broadly stated general rights . . . ." *Cooper v. Parrish*, 203 F.3d 937, 951 (6th Cir. 2000). The plaintiff "*must allege sufficient facts*" demonstrating a violation of his constitutional rights, drawing a connection between the alleged constitutional violation and the government official's conduct. *Id.* (emphasis supplied). Thus, unless the plaintiff "allege[s] facts necessary to show that a defendant has violated [his] constitutional rights," dismissal on qualified immunity grounds is proper. *Id.*

Adherence to the pleading standards articulated in *Twombly* and reaffirmed in *Iqbal* – particularly the principle that discovery cannot serve as the means by which plaintiffs obtain the factual content required for a complaint – is "especially important in suits where Government-official defendants are entitled to assert the defense of qualified immunity." *Iqbal*, 556 U.S. at 685.

> The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including avoidance of disruptive discovery. . . . There are serious and legitimate reasons for this. If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation . . . exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.
>
> \* \* \*
>
> [A promise of] minimally intrusive discovery . . . provides especially cold comfort in this pleading context, where we are impelled to give real content

to the concept of qualified immunity for high-level officials who must be neither deterred nor detracted from the vigorous performance of their duties.

*Id.* at 685, 686 (internal citations and quotations omitted). Thus, "under the doctrine of qualified immunity," a claim against a government official is "ripe for dismissal . . . at the earliest possible stage in the litigation" when the factual allegations fall short of the pleading requirements set forth in *Twombly* and *Iqbal*. See, e.g., *Rondigo, L.L.C. v. Richmond Twp.*, 641 F.3d 673, 684 (6th Cir. 2011).

### A.    Plaintiff's Allegations Fail to State a Facially Plausible Claim Under the Equal Protection Clause.

In *Iqbal*, the Supreme Court directed courts to employ a two-step approach when entertaining a dispositive motion under Rule 12(b)(6) or Rule 12(c). First, courts should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679, 680. Second, courts should determine whether the factual allegations plausibly suggest entitlement to relief. *Id.* at 679, 681.

### 1.    *Plaintiff's Allegation of Intentional Discrimination is Not Entitled to the Assumption of Truth.*

Plaintiff alleges that the WCAA Defendants, by virtue of their decision to arrest and detain her, "intentionally and unlawfully" discriminated against her "because of her perceived ethnicity, race, or national original based on her name and/or appearance." (**Docket # 1, ¶¶ 134, 136**).

In *Iqbal*, respondent alleged that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement . . . solely on account of [his] religion, race, and/or national origin and for no legitimate penological purpose." *Id.* at 680. The Supreme Court found that these "bare assertions . . . amount to nothing more than a formulaic recitation of the elements of a constitutional

11

discrimination claim . . . , namely, that petitioners adopted a policy because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* at 681 (internal quotations and citations omitted).  From that premise, the Court concluded that respondent's allegations were "conclusory and not entitled to be assumed true." *Id.*

Plaintiff's allegation of intentional discrimination does not differ, in any meaningful respect, from the allegation deemed conclusory in *Iqbal*.  Like the allegation in *Iqbal*, Plaintiff's allegation is merely a formulaic recitation of an element of her equal protection claim (discriminatory purpose). *Twombly* and *Iqbal* prohibit "casual acceptance of . . . conclusory allegations of unlawful discrimination" without "supporting factual allegations . . . ." *Rondigo*, 641 F.3d at 684.  Accordingly, Plaintiff's allegation of intentional discrimination is not entitled to an assumption of truth.

### 2. *Plaintiff's Remaining Allegations Do Not Plausibly Suggest Entitlement to Relief.*

The specific allegations involving the WCAA Defendants, aside from their names and job titles, include:

### Mark DeBeau

- At the inspection site, he authorized Captain Driscoll's recommended plan of action – that all three passengers be removed from the aircraft and transported to an on-site detention facility for further investigation. (**Docket # 1, ¶ 60**).

### Officer Grant

- He learned the information contained in Fraley's e-mail, including Frontier Airlines' identification of Plaintiff as a potential suspect, from Officer Duncan. (**Docket # 1, ¶ 52**).

- He conveyed the information contained in Fraley's e-mail to Captain Driscoll and Detective Carmona. (**Docket # 1, ¶ 52**).

- He, with the assistance and participation of Officer Johnson and CBP officials, organized the tactical entry. (**Docket # 1, ¶ 58**).

## Officer Parker

- She conducted the strip search of Plaintiff. (**Docket # 1**, ¶¶ 89, 91-95).

- She placed the handcuffs back on Plaintiff's wrist after the strip search. (**Docket # 1**, ¶ 97).

## Officer Johnson

- While at the inspection site, he spoke with Captain Pucci via cell phone. Captain Pucci advised him of the suspicious activity and indicated that Plaintiff, though presently seated and otherwise compliant, may be involved in the suspicious activity. (**Docket # 1**, ¶ 55).

- He and CBP officials assisted Officer Grant in organizing the tactical entry. (**Docket # 1**, ¶ 58).

- He boarded the aircraft and ran down the aisle to row 12, where Plaintiff and the male passengers were seated. (**Docket # 1**, ¶ 68).

## Detective Carmona

- He learned the information contained in Fraley's e-mail, including Frontier Airlines' identification of Plaintiff as a potential suspect, from Officer Grant. (**Docket # 1**, ¶ 52).

- He boarded the aircraft and ran down the aisle to row 12, where Plaintiff and the male passengers were seated. (**Docket # 1**, ¶ 68).

- He secured Plaintiff in handcuffs. (**Docket # 1**, ¶ 72).

## Corporal Bradley

- He transported Plaintiff and one of the male passengers to the on-site detention facility. (**Docket # 1**, ¶ 78).

## Captain Driscoll

- He learned the information contained in Fraley's e-mail, including Frontier Airlines' identification of Plaintiff as a potential suspect, from Officer Grant. (**Docket # 1**, ¶ 52).

- He determined that a tactical entry was necessary and recommended that all three passengers be removed from the plane and transported to an on-site detention facility for further investigation. (**Docket # 1,** ¶ 59).

- He advised the officials at the inspection site that the passengers were to be handcuffed upon contact. (**Docket # 1,** ¶ 61).

### Officer Bohn

- He, along with a number of officials from various agencies, went to wait for the aircraft at the inspection site. (**Docket # 1,** ¶ 54).

- He boarded the aircraft and ran down the aisle to row 12, where Plaintiff and the male passengers were seated. (**Docket # 1,** ¶ 68).

### Lieutenant Wasiukanis

- He and Brand determined that all three passengers should be strip searched. (**Docket # 1,** ¶ 85).

The above-referenced allegations – accepted as true *only* for the purpose of the WCAA Defendants' Motion for Partial Judgment on the Pleadings – do not state a claim to relief that is plausible on its face. The allegations do not give rise to an inference of discriminatory animus; *viz.*, they do not support an inference that the WCAA Defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Feeney*, 442 U.S. at 279.

The general allegation against the WCAA Defendants fares no better. Plaintiff alleges that because none of the WCAA Defendants "requested further information or evidence regarding [Plaintiff's] alleged involvement in suspicious activities" – an allegation based solely on "information and belief" – it must follow that the WCAA Defendants "acted based on the perceived ethnicity, national origin, or race of [Plaintiff's] name." (**Docket # 1,** ¶ 56). To the extent that Plaintiff has even *alleged* misconduct, she certainly has not *shown* misconduct. See *Iqbal*, 556 U.S. at 679. Her allegations, prefaced by an acknowledgement that they are based solely on "information and belief," are "too

14

conclusory and vague to state a claim for relief under the *Twombly/Iqbal* standard." *Brown v. Metro. Gov't of Nashville and Davidson County*, No. 11–5339, 2012 WL 2861593, *4 (6th Cir. Jan. 9, 2012) (attached as **Exhibit 1**); see *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

*Iqbal* provides an additional basis upon which to find that Plaintiff's allegations fall short of the pleading requirements. In *Iqbal*, respondent alleged that petitioners, as part of their investigation of the September 11, 2001 terrorist attacks, "arrested and detained thousands of Arab Muslim men" and held them in "highly restrictive conditions of confinement until they were 'cleared' by the FBI . . . ." *Id.* at 681. While acknowledging that the allegations were "consistent with petitioners' purposefully designating detainees 'of high interest' because of their race, religion, or national origin," the Supreme Court concluded that the allegations did not "plausibly establish this purpose" in light of "more likely explanations . . . ." *Id.* at 681. In support of this conclusion, the Court stated:

> The September 11 attacks were perpetrated by 19 Arab Muslim hijackers who counted themselves members in good standing of al Qaeda, an Islamic fundamentalist group. Al Qaeda was headed by another Arab Muslim—Osama bin Laden—and composed in large part of his Arab Muslim disciples. . . . On the facts respondent alleges the arrests [petitioner] oversaw were likely lawful and justified by his nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts. As between that "obvious alternative explanation" for the arrests . . . and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.

*Id.* at 681-82.  The Court alternatively concluded that "even if the complaint's well-pleaded facts give rise to a plausible inference that respondent's arrest was the result of unconstitutional discrimination, that inference alone would not entitle respondent to relief." *Id.* at 682.  The Court explained:

Respondent's constitutional claims against petitioners rest solely on their ostensible "policy of holding post–September–11th detainees" in the ADMAX SHU [Administrative Maximum Special Housing Unit] once they were categorized as "of high interest." . . . To prevail on that theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post–September–11 detainees as "of high interest" because of their race, religion, or national origin.

This the complaint fails to do. Though respondent alleges that various other defendants, who are not before us, may have labeled him a person of "of high interest" for impermissible reasons, his only factual allegation against petitioners accuses them of adopting a policy approving "restrictive conditions of confinement" for post–September–11 detainees until they were "'cleared' by the FBI." . . . Accepting the truth of that allegation, the complaint does not show, or even intimate, that petitioners purposefully housed detainees in the ADMAX SHU due to their race, religion, or national origin. All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. He would need to allege more by way of factual content to nudge his claim of purposeful discrimination across the line from conceivable to plausible.

The allegations here, if true, and if condoned by petitioners, could be the basis for some inference of wrongful intent on petitioners' part. [Nevertheless], respondent's pleadings do not suffice to state a claim. . . . [P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic. Yet respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind.

*Id.* at 682-83 (internal citations and quotations omitted).

Here, as in *Iqbal*, the "obvious alternative explanation" of the law enforcement actions alleged by Plaintiff precludes a finding that discrimination is plausible. The incident occurred on September 11, 2011 – the 10-year anniversary of the "devastating terrorist attack[s]" to which *Iqbal* made reference. (**Docket # 1**, ¶¶ 1, 39). Frontier Airlines reported that passengers and flight attendants had witnessed suspicious behavior – two men from row 12 going to the restroom at the same time, spending up to twenty

minutes in the restroom, and standing in the aisle for long periods of time. (**Docket # 1,** ¶¶ 45, 48). Frontier Airlines identified Plaintiff as a potential suspect and "provided her name to federal and state authorities," including the WCAA Defendants. (**Docket # 1,** ¶¶ 3, 49, 50). The only plausible explanation that can be drawn from Plaintiff's allegations is that the WCAA Defendants – on the 10-year anniversary of "devastating terrorist attack[s]," and in the face of reports that suspicious behavior suggestive of terrorism was afoot – chose to take immediate action.

While it is important to look at the facts *alleged* by Plaintiff, it is equally important to look at the facts *not alleged* by Plaintiff. Noticeably absent from Plaintiff's complaint is any factual content that plausibly suggests disparate treatment – the *threshold* element of an equal protection claim. See *Napolitano*, 648 F.3d at 379. Plaintiff's failure to plead facts demonstrating disparate treatment is fatal to her equal protection claim. *Id.* at 380 ("[I]n the absence of any plausible allegation of disparate treatment, the Amended Complaint fails to state an equal protection claim").[4]

## CONCLUSION

For the foregoing reasons, the Wayne County Airport Defendants, MARK DeBEAU, OFFICER JOHNSON, OFFICER GRANT, OFFICER PARKER, DETECTIVE CARMONA, LIEUTENANT WASIUKANIS, OFFICER BOHN, CAPTAIN DRISCOLL, and CORPORAL BRADLEY, respectfully request that this Honorable Court GRANT their Motion for Partial Judgment on the Pleadings.

---

[4] Although *Napolitano* involved an equal protection claim under the Fifth Amendment, this distinction does not render the case inapposite. The Sixth Circuit expressly stated that it "evaluate[s] equal protection claims against the federal government under the Fifth Amendment just as [it] would evaluate equal protection claims against state and local governments under the Fourteenth Amendment." *Napolitano*, 648 F.3d at 379.

Respectfully submitted,

/s/ T. Joseph Seward
T. JOSEPH SEWARD (P35095)
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road
Livonia, Michigan 48150
Telephone: (734) 261-2400
Facsimile: (734) 261-4510
e-Mail: tjseward@cmda-law.com

*Attorneys for Officer Bohn, Corporal Bradley,*
*Lieutenant Wasiukanis, and Captain Driscoll*
*(Wayne County Airport Authority Defendants)*

/s/ Alan B. Havis
ALAN B. HAVIS (P36988)
Law Offices of Alan B. Havis
25505 West Twelve Mile Road, Suite 1000
Southfield, Michigan 48034
Telephone: (248) 353-3690
Facsimile: (248) 948-6677
e-Mail: ahavis@airportdefender.com

*Attorneys for Mark DeBeau, Officer Grant,*
*Officer Parker, Detective Carmona, and Officer*
*Johnson (Wayne County Airport Authority*
*Defendants)*

DATED: June 4, 2013