## INDEX OF EXHIBITS

**Exhibit 1:** *Falconer v. Kasperzyk*, No. 08cv1707, slip op. (D. Conn. July 23, 2010) (ECF No. 56)

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

NORVAL FALCONER,                            :
    Plaintiff,                              :
                                            :
v.                                          :
                                            : CIVIL NO. 3:08CV01707(AVC)
JUSTEN KASPERZYK, WILLIAM H.                :
WHITE, JOSE SILVA, FRANCISCO                :
ORTIZ, and THE CITY OF NEW HAVEN,           :
    Defendants.                             :
                                            :

## RULING ON THE DEFENDANTS' MOTION TO QUASH DEPOSITION SUBPOENA AND FOR A PROTECTIVE ORDER ON BEHALF OF SERGEANT BLAKE STINE

This is an action for damages. It is brought pursuant to 42 U.S.C. § 1983. The Plaintiff, Norval Falconer, has filed suit alleging that several police officers of the New Haven police department, the city of New Haven, and the chief of police violated his rights by falsely arresting him.

A third party witness, one Blake Stine, has filed the within motion to quash his deposition subpoena and for a protective order. Stine argues that Falconer is prohibited from deposing him in this suit because Falconer is prohibited from deposing Stine in a related suit, Falconer v. Stine, Case No. 3:09-CV-1770-VLB (D. Conn.). In the Stine matter, Stine has a pending motion for summary judgment on the basis of qualified immunity.

The issue is whether Stine's pending qualified immunity
defense in the Stine case, where he is a defendant, shields him
from discovery in this case, where he is a third party.

For the reasons that follow, the motions to quash the
deposition subpoena and for a protective order are **GRANTED**.

### FACTS

The complaint alleges, in relevant part, the following: On
November 9, 2006, members of the New Haven Police Department
Narcotics Enforcement Unit ("NEU") and members of the Statewide
Narcotics Task Force ("SNTF") allegedly falsely arrested
Falconer. This arrest arose from the execution of a search
warrant of a first-floor apartment located at 65-67 Truman
Street in New Haven. Falconer does not reside at the first-floor
apartment.

During the search, the defendant, Justen Kasperzyk, a
police officer, found illegal narcotics in the basement of the
Truman Street apartment. Upon their discovery, Kasperzyk removed
the narcotics from the basement and placed them in the closet of
the first-floor bedroom. Kasperzyk claims he witnessed Falconer
throw the narcotics into the closet. The defendant, lieutenant
William H. White, head of the NEU, was also present when this
occurred.

The complaint further alleges that the defendant, detective
Jose Silva, knowingly prepared a false incident report

2

indicating that Kasperzyk found the narcotics in the apartment rather than in the basement.

The defendants arrested Falconer and charged him with eight narcotics felonies. Unable to post the $350,000 bond, Falconer stayed in jail for a month. On December 5, 2006, Falconer accepted a plea bargain offer and pled guilty to possession of narcotics with intent to sell.

During the Truman Street search, and unbeknownst to the police officers, Stine, a sergeant with the Connecticut State Police and a member of the SNTF, was working on an undercover investigation for the Federal Bureau of Investigation ("FBI") regarding allegedly corrupt dealings within the New Haven police department.

On March 14, 2007, the FBI arrested Kasperzyk and White. On October 5, 2007, Kasperzyk pleaded guilty to, inter alia, conspiracy to violate Falconer's civil rights. On October 5, 2007, Silva pleaded guilty to depriving Falconer of his civil rights. On October 25, 2007, White pleaded guilty to, inter alia, conspiracy to commit bribery.

On November 10, 2008, Falconer filed the instant action against Kasperzyk, Silva, and White, alleging that they violated his constitutional rights when they falsely arrested him.[1]

---

[1] Falconer also included as defendants Francisco Ortiz, former chief of police, and the city of New Haven, alleging that the city either knew or should have known of the aforesaid violations.

3

Falconer alleges violations of his Fourth, Fifth and Fourteenth Amendment rights.

On November 2, 2009, Falconer also filed a second suit, Falconer v. Stine, Case No. 3:09-CV-01770-VLB, against Stine and FBI agent James McGoey. Falconer alleges that both defendants failed to protect him from the unconstitutional actions of Kasperzyk, Silva, and White, all of whom are defendants in the instant matter. Specifically, the Stine complaint alleges that both Stine and McGoey failed to prevent Falconer's arrest, detention, and conviction.

On February 19, 2010, Stine and McGoey filed a motion for summary judgment raising qualified immunity as their defense in the Stine case. Consequently, discovery against Stine and McGoey has been stayed pending the resolution of their qualified immunity defense.

On March 10, 2010, Falconer noticed a deposition of Stine for April 5, 2010 in the instant matter. On March 31, 2010, Stine filed the within motion to quash the deposition subpoena and for a protective order.

## STANDARD

"The doctrine of qualified immunity shields [public officials] acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly established rights of which an objectively reasonable

4

official would have known." Levesque v. Town of Vernon, 341 F.
Supp. 2d 126, 135 (D. Conn. 2004). This immunity protects public
officials not only from liability but also from suit, thereby
shielding a party from submitting to discovery. X-Men Sec.,
Inc., v. Pataki, 196 F.3d 56, 65 (2d Cir. 1999).

The qualified immunity defense is measured by an objective
standard, because a subjective standard "may entail broad-
ranging discovery and the deposing of numerous persons,
including an official's professional colleagues. Inquires of
this kind can be peculiarly disruptive of effective government."
Harlow v. Fitzgerald, 457 U.S. 800, 815-17 (1982).

A "defendant is entitled to qualified immunity only if he
can show that, viewing the evidence in the light most favorable
to the plaintiffs, no reasonable jury could conclude that the
defendant acted unreasonably in light of the clearly established
law." Demoret v. Zegarelli, 451 F.3d 140, 148 (2d Cir. 2006).

## DISCUSSION

Stine argues that Falconer is "attempt[ing] to circumvent
[his] immunity by seeking to compel his deposition testimony in
this case before his entitlement is finally resolved in [the
Stine] case."

Falconer responds that Stine's assertion of qualified
immunity in one case does not grant a blanket protection in
another case. Specifically, Falconer argues that "[l]aw

enforcement officers are named as defendants in lawsuits on a regular basis, and they regularly file dispositive motions based on claims of qualified immunity," and thus, granting immunity would allow defendants to avoid discovery in all cases.

The Supreme Court and the second circuit have emphasized that qualified immunity is a strong defense. The Courts have recognized that qualified immunity "is an *immunity from suit* rather than a mere defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). This protection extends not only from suit on such claims, but also discharges public officials from "the necessity of defending by submitting to discovery on the merits or undergoing a trial." X-Men Sec., Inc., v. Pataki, 196 F.3d 56, 65 (2d Cir. 1999).

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court emphasized that "[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" Id. at 1953 (quoting Siegret v. Gilley, 500 U.S. 226, 236 (1991) (Kennedy, J. concurring in judgment)). The Iqbal Court cautioned, that "when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position." Iqbal, 129 S.Ct. at 1953.

6

Finally, qualified immunity is important because it balances societal interest in deterring unlawful conduct and adequate compensation to victims on the one hand, with public officials' capacity to serve the public interest without fear of litigation on the other. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). Such goals would be seriously undermined if qualified immunity was weakened.

In conclusion, admittedly all the cases dealing with party opponents and the qualified immunity defense provide guidance to Courts in assessing whether to grant protection to public officials. There is no doubt that Stine here is a public official who has raised a qualified immunity defense. Since both cases are closely related in that they both arise from the same incident as well as share the same issues and people, allowing such discovery here might mislead and prejudice Stine in the Stine case. See, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (cautioning against permitting discovery involving a qualified immunity defense in order to prevent the case from developing "in a misleading or slanted way.").

Given the Courts' acknowledgement of the importance and broad protection of a qualified immunity defense, this court is inclined to lean in the direction of protecting Stine from discovery in this matter while his qualified immunity defense is pending in another matter. See Harlow v. Fitzgerald, 457 U.S.

7

800, 597-98 (1982) ("[T]he trail court must exercise its direction in a way that protects the substance of the qualified immunity defense . . . . It must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings.").

Stine further argues that a deposition cannot be permitted since it would "countenance Plaintiff's end-run" and "would only circumvent qualified-immunity protections and encourage enterprising plaintiffs to expose public officials to disruptive discovery by filing multiple suits and seeking discovery in any suit in which the public-official deponent is not a party."

In response, Falconer argues that "[t]he notion that Sergeant Stine should be excused from his duty to provide important discovery in a matter in which discovery *is* taking place, merely because he has a qualified immunity motion pending in a *completely different* lawsuit, is simply unsupported by any case law."

First, although procedurally the case at bar is a completely different lawsuit from Falconer v. Stine, both the Stine case and this case stem from the same November 9, 2006 incident: the allegedly false arrest of Falconer during an execution of a search warrant of a first-floor apartment on 65-67 Truman Street. To be sure, each case is based on the same issues, facts, and people involved in the same incident.

8

Although Stine is not a defendant in this matter, he is a defendant in the Stine matter, and was present at all times relevant to the incident. Therefore, any deposition of Stine taken in this case will undoubtedly explore the very same issues relevant to the Stine case.

Second, the court agrees that not quashing the subpoena inevitably undermines the protections provided public officials. For instance, allowing discovery in such a case raises a risk of plaintiffs filing multiple lawsuits and suing some of the defendants in one case and others in a different case in order to obtain discovery that a qualified immunity defense protects. In other words, a plaintiff could decrease the immunity's protections by bringing numerous lawsuits in order to circumvent a ban on discovery against the same person in another similar lawsuit. Such a tactic would also encourage piecemeal litigation, waste judicial resources, and produce inefficiency.

Accordingly, Stine's motion to quash the deposition subpoena is granted. Further, in light of the court's granting of Stine's motion to quash the deposition subpoena, the court also grants Stine's motion for a protective order until his immunity defense is adjudicated.

## CONCLUSION

For the foregoing reasons, the defendant's motion to quash

third party deposition subpoena and for a protective order is

**GRANTED.**

It is so order, this 22nd of July, 2010, at Hartford,

Connecticut.

                              / s /
                    Alfred V. Covello, U.S.D.J.

10