UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SHOSHANA HEBSHI,
     Plaintiff,

v.

UNITED STATES OF AMERICA, FRONTIER
AIRLINES, INC., JOHN BRAND, in his
individual capacity, UNKNOWN FBI AGENT
1, in his individual capacity, UNKNOWN FBI
AGENT 2, in his individual capacity, JOHN
ETLING, in his individual capacity, MARK
DEBEAU, in his individual capacity, JEREMY
BOHN, in his individual capacity, CAPTAIN
PATRICK DRISCOLL, in his individual
capacity, OFFICER GRANT, in his individual
capacity, LT M. WASIUKANIS, in his
individual capacity, TOYA PARKER, in her
individual capacity, DT. CARMONA, in his
or her individual capacity, OFFICER
JOHNSON, in his or her individual capacity,
CORPORAL BRADLEY, in his or her
individual capacity, UNKNOWN CBP
OFFICER, in his individual capacity, THOMAS
PIPIS, in his individual capacity, DAVID
LAKOTOS, in his individual capacity,
NATHANIEL DEVINS, in his individual
capacity, UNKNOWN TSA AGENT 1, in his
individual capacity, UNKNOWN TSA AGENT
2, in her individual capacity, ROBERT BALL,
in his individual capacity, UNKNOWN ICE
OFFICER, in his individual capacity, and
PAUL BRUMLEY, in his individual capacity,

    Defendants.

No. 4:13-cv-10253

Hon. Terrence G. Berg
Magistrate Laurie Michelson

_____/

ANSWER OF CROSS-PLAINTIFFS MARK DEBEAU, OFFICER GRANT, TOYA
PARKER, DT. CARMONA, OFFICER JOHNSON, JEREMY BOHN, CAPTAIN
PATRICK DRISCOLL, LT. M WASIUKANIS, AND CORPORAL BRADLEY'S
OPPOSITION TO FRONTIER AIRLINES' MOTION TO DISMISS

BRIEF IN OPPOSITION TO MOTION

ANSWER OF CROSS-PLAINTIFFS MARK DEBEAU, OFFICER GRANT, TOYA
PARKER, DT. CARMONA, OFFICER JOHNSON, JEREMY BOHN, CAPTAIN
PATRICK DRISCOLL, LT. M WASIUKANIS, AND CORPORAL BRADLEY'S
OPPOSITION TO FRONTIER AIRLINES' MOTION TO DISMISS

Defendants/Cross-Plaintiffs submit the following response to Frontier's Motion to
Dismiss:

1.    Frontier does not dispute that the indemnity clauses contained in the Non-
Signatory Airline Operating Agreement and in Exhibit A, Non-Signatory Airline Lease of
terminal Space, by their terms, require that Frontier defend, indemnify and hold harmless these
Defendants and Cross-Plaintiffs.

2.    Frontier's argument that its contractual obligation is negated because the conduct
of these Defendants/Cross-Plaintiffs violated public policy is erroneous.

3.    When Cross-Plaintiffs acted on information that Cross-Defendant Frontier's
employees provided in good faith, Cross-Plaintiffs were also acting in good faith, and their
actions did not violate public policy.

4.    Cross-Plaintiffs did not engage in intentional misconduct because their actions
were not motivated by animus or personal interest, and were not conducted for the purpose of
causing harm to Plaintiff Hebshi.

5.    Cross-Plaintiffs are immune from liability under state law because they acted in
the course of carrying out a governmental function of investigating a good faith report of
potentially criminal/terrorist activity.

6.     Cross-Plaintiffs are immune from liability under federal law because they acted in the course of carrying out a governmental function of investigating a good faith report of potential terrorist activity on a public transportation system.

Wherefore, Cross-Plaintiffs request that this Court deny Frontier's motion and declare that Frontier owes an obligation to defend, indemnify and hold harmless Cross-Plaintiffs.

Respectfully submitted,

/s/ Alan B. Havis
ALAN B. HAVIS (P36988)
Law Offices of Alan B. Havis
25505 West Twelve Mile Road, Suite 1000
Southfield, Michigan 48034
Telephone: (248) 353-3690
Facsimile: (248) 948-6677
e-Mail: ahavis@airportdefender.com
*Attorneys for Mark DeBeau, Officer Grant, Officer Parker, Detective Carmona, and Officer Johnson (Wayne County Airport Authority Defendants)*

/s/ T. Joseph Seward
T. JOSEPH SEWARD (P35095)
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road
Livonia, Michigan 48150
Telephone: (734) 261-2400
Facsimile: (734) 261-4510
e-Mail: tjseward@cmda-law.com
*Attorneys for Officer Bohn, Corporal Bradley, Lieutenant Wasiukanis, and Captain Driscoll (Wayne County Airport Authority Defendants)*

Dated:  July 5, 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SHOSHANA HEBSHI,
     Plaintiff,

v.

UNITED STATES OF AMERICA, FRONTIER
AIRLINES, INC., JOHN BRAND, in his
individual capacity, UNKNOWN FBI AGENT
1, in his individual capacity, UNKNOWN FBI
AGENT 2, in his individual capacity, JOHN
ETLING, in his individual capacity, MARK
DEBEAU, in his individual capacity, JEREMY
BOHN, in his individual capacity, CAPTAIN
PATRICK DRISCOLL, in his individual
capacity, OFFICER GRANT, in his individual
capacity, LT M. WASIUKANIS, in his
individual capacity, TOYA PARKER, in her
individual capacity, DT. CARMONA, in his
or her individual capacity, OFFICER
JOHNSON, in his or her individual capacity,
CORPORAL BRADLEY, in his or her
individual capacity, UNKNOWN CBP
OFFICER, in his individual capacity, THOMAS
PIPIS, in his individual capacity, DAVID
LAKOTOS, in his individual capacity,
NATHANIEL DEVINS, in his individual
capacity, UNKNOWN TSA AGENT 1, in his
individual capacity, UNKNOWN TSA AGENT
2, in her individual capacity, ROBERT BALL,
in his individual capacity, UNKNOWN ICE
OFFICER, in his individual capacity, and
PAUL BRUMLEY, in his individual capacity,

     Defendants.

No. 4:13-cv-10253

Hon. Terrence G. Berg
Magistrate Laurie Michelson

_____/

**BRIEF OF CROSS-PLAINTIFFS MARK DEBEAU, OFFICER GRANT, TOYA
PARKER, DT. CARMONA, OFFICER JOHNSON, JEREMY BOHN, CAPTAIN
PATRICK DRISCOLL, LT. M WASIUKANIS, AND CORPORAL BRADLEY'S
OPPOSITION TO FRONTIER AIRLINES' MOTION TO DISMISS**

## ISSUES PRESENTED

I.      DO THE INDEMNITY CLAUSES, BY THEIR TERMS, REQUIRE THAT FRONTIER DEFEND, INDEMNIFY AND HOLD HARMLESS CROSS-PLAINTIFFS WITH RESPECT TO THE CLAIMS BY PLAINTIFF HEBSHI?


II.     IS A CONTRACTUAL RIGHT TO INDEMNITY BARRED WHEN THE INDEMNITEES, LAW ENFORCEMENT OFFICIALS, ACT IN GOOD FAITH TO INVESTIGATE A REPORT OF ACTIVITY THAT RAISED A QUESTION OF ILLEGAL OR TERRORIST CONDUCT?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Terrien v Zwit,* 467 Mich 56, 66-67; 648 NW2d 602 (2002), and
*Twin City Pipeline Co v Harding Glass Co,* 283 U.S. 353, 357; 51 S.Ct. 476; 75 L.Ed. 1112 (1931).

"Public policy" is derived from statements of law, in constitutions, statutes and common law.

*Anderson v Creighton,* 483 U.S. 635, 643; 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

"[W]e have previously extended qualified immunity to officials who were alleged to have violated the Fourth Amendment."

**6 U.S.C. § 1404**

"Any authorized official who observes, or receives a report of, covered activity and takes reasonable action in good faith to respond to such activity shall have qualified immunity from civil liability for such action . . ."

**Mich. Comp. Laws 691.1407(2)**

Law enforcement officers have immunity from liability for good faith acts committed in the course of carrying out their duties.

TABLE OF CONTENTS

**Issues Presented**                                                                    i

**Controlling or Most Appropriate Authority**                                           ii

**Statement of Facts**                                                                   1

**Argument**                                                                             4

**I.     CROSS-PLAINTIFFS' CONDUCT WAS NOT "INTENTIONAL"
        BECAUSE IT WAS A GOOD FAITH RESPONSE TO FRONTIER'S
        "CALL FOR HELP" ABOUT PLAINTIFF HEBSHI AND WAS
        PRIVILEGED UNDER 6 U.S.C. 1104.**                                                4

     **A.     Under the Terms of the Indemnity Clauses and Michigan Contract
        Principles, Wayne County Airport Authority's Employees Are
        Entitled to Indemnification.**                                                   5

     **B.     Cross-Plaintiffs Did Not Engage In Intentional Misconduct.**              6

**II.    CROSS-PLAINTIFFS' CONDUCT DID NOT VIOLATE PUBLIC POLICY
        BECAUSE IT WAS A GOOD FAITH RESPONSE TO FRONTIER'S
        "CALL FOR HELP" ABOUT PLAINTIFF HEBSHI AND WAS
        PRIVILEGED UNDER STATE AND FEDERAL LAW.**                                        9

     **A.     Public Policy Favors the Alleged Actions of the WCAA Defendants.**       9

     **B.     Insurance Covering Civil Rights Violations Are not Void as Against
        Public Policy.**                                                                 11

     **C.     The Cases Cited by Frontier are Distinguishable.**                       12

**Conclusion**                                                                           13

**Relief Requested**                                                                     13

INDEX OF AUTHORITIES

**CASES**

*Anderson v Creighton*, 483 U.S. 635; 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)      10

*Badiee v. Brighton Area Schools*, 265 Mich. App. 343, 352 n. 13; 695 N.W.2d 521      11
(2005)

*Burdo v Ford Motor Co,* 588 F Supp 1319 (ED Mich 1984)      6

*Caldwell v. Enyeart*, No. 94-1406, 1995 WL 807110 (6th Cir. 1995)      13

*Evangelist v Green Tree Servicing,* 2013 WL 2393142, (E.D. Mich. May 31, 2013)      5

*Fischbach-Natkin v PPP, Inc,* 157 Mich App 448; 403 NW2d 569 (1987)      5

*Frankenmuth Mutual Ins Co v Masters,* 460 Mich. 1054; 595 NW2d 832 (1999)      7

*Harbenski v Upper Peninsula Power Co,* 118 Mich App 440; 328 NW2d 785 (1982)      5

*Hayes v General Motors Corp,* 106 Mich App 188; 308 NW2d 452 (1981)      5

*Haynes v Marshall,* 887 F2d 700 (6th Cir. 1989)      4

*Holmes v. St. Clair County*, 2005 U.S. Dist. LEXIS 35038, at *15 (E.D. Mich. July 18,      12
2005)

*Klann v. Hess Cartage Co.*, 50 Mich. App. 703; 214 NW2d 63 (1973)      12

*North Bank v. Cincinnati Ins. Co.*, 125 F.3d 983, 986 (6th Cir. 1997)      11

*Paquin v Harnischfeger,* 113 Mich App 43; 317 NW2d 249 (1982)      5

*Sanders v Stanley,* 794 F Supp 2d 755 (2011)      9

*Terrien v Zwit,* 467 Mich 56; 648 NW2d 602 (2002)      9

*Twin City Pipeline Co v Harding Glass Co,* 283 U.S. 353; 51 S.Ct. 476; 75 L.Ed. 1112
(1931)      9

*Vanden Bosch v Consumers Power Co,* 56 Mich App 543; 224 NW2d 900 (1974)      5

*Vanden Bosch v Consumers Power Co,* 394 Mich 428; 230 NW2d 271 (1975)      5

*Wagner v. Regency Inn Corp.*, 186 Mich. App. 158, 169 (Mich. Ct.App. 1990)      12

*Walker v Michigan Public Service Comm.*, 24 F Supp 2d 803, 806 (W.D. Mich. 1998)      4

**STATUTES**

6 U.S.C. § 1404                                                          10

Mich. Comp. Laws 691.1407(2)                               9-10

Mich. Comp. Laws 691.1407(7)(a)                              13

## STATEMENT OF FACTS

The underlying case arose out of an incident on Frontier Airlines flight 623 on 9/11/11, the 10th anniversary of the 9/11 terrorist attacks on New York and Washington DC. Two of the passengers on the flight were acting suspiciously in their extended use of the bathroom while the other stood in front of the bathroom door such that they raised suspicion that they were a danger to the flight and the other passengers. These two passengers were traveling in seats 12B and 12C next to a third passenger, Shoshana Hebsi (Plaintiff), who was seated in seat 12A.

As suspicion grew among some of the passengers and flight attendants, the suspicion was communicated to the captain who then issued a call on the Aircraft Communications Addressing and Reporting System to the federal government concerning possible terrorist activity. Such communication identified the suspects in seats 12B and 12C as well as Plaintiff in 12A, whose statement from Frontier set forth that "The passenger in 12A may be with them as well".

The communication to the federal government was of sufficient magnitude that two F-16 jets were scrambled out of Toledo to escort the flight and ensure that it landed at Detroit Metro Airport where it was scheduled to land.

When the flight landed, the three individuals identified by Frontier Airlines were taken into custody, searched, and interrogated by federal agents and the Airport Police while the plane was evacuated and all others, passengers and crew, were interviewed. The entirety of the event lasted less than four hours after which all persons were released after it was determined that the incident was a false alarm.

Shoshana Hebsi then commenced this action against numerous defendants, including Wayne County Airport Authority (WCAA) police officers Jeremy Bohn, Michael Bradley

Michael Wasiukanis, Patrick Driscoll, Kevin Grant, Charles Johnson, Toya Parker, and John Cormona, and Mark Debeau, Director of Safety ("Cross-Plaintiffs").

Cross-Plaintiffs filed a cross-claim against Frontier Airlines for indemnity pursuant to a contract that Frontier entered into with the Wayne County Airport Authority. The contract, entitled "Non-Signatory Airline Operating Agreement," contains an indemnification clause that states in relevant part that Frontier

> . . . shall indemnify, defend and hold harmless the Airport Authority, is Board members, officers, agents, representatives and employees from and against all liabilities, losses suits, claims and demands of every kind and nature . . . arising from, related to or caused by, or alleged to arise from, relate to or have been caused by, Airline's acts or omissions . . . or the conduct of any of its operations or activities at the Airport.

[Non-Signatory Airline Operating Agreement, attached as Exhibit 1]

A related agreement, entitled "Non-Signatory Lease of Terminal Space – North Terminal," contains a similar clause, stating that

> Lessee shall keep and hold Lessor and its officers, Board members, directors, agents, servants and employees harmless from any and all liabilities, losses, suits, claims, judgment, fines, penalties, demands or expenses . . . claimed by anyone by reason of injury or damage to persons or property sustained in or about the airport, as a proximate result of the acts or omissions of lessees . . . or arising out of the operations of Lessee upon and about the Airport . . ..

[Non-Signatory Lease of Terminal Space – North Terminal, attached as Exhibit 2]

Since Cross-Plaintiffs are employees of WCAA, they tendered their defense and indemnification of the underlying case to Frontier pursuant to these clauses. Upon Frontier's failure to respond to the tender demand, the Cross-Plaintiffs filed the cross complaint that is the subject of the present Motion to Dismiss.

Frontier's Motion is filed under F R Civ. P 12(b)(6). Frontier does not contest the existence of the clauses or that the terms of the clauses require that it indemnify and hold

harmless the Cross-Plaintiffs.  The basis for Frontier's motion is that the contractual indemnity obligation is unenforceable on public policy grounds because the Cross-Plaintiffs engaged in "intentional and unconstitutional conduct".  As such, according to Frontier, the contract obligations are "void and unenforceable under Michigan law and public policy."  (Motion p ii, Issue Presented).

## ARGUMENT

The actions by Cross-Plaintiffs that gave rise to Ms. Hebshi's claim originated when Frontier Airlines personnel reported suspicious activities by two men seated next to Ms. Hebshi's coupled with Frontier's statement that "[T]he passenger in 12A (Hebshi) may be with them as well". Frontier now claims that the actions of Cross-Plaintiffs, WCAA's employees, in investigating Frontier's "call for help" were intentional and against public policy.

The fundamental relationship that is at issue in the Cross-Claim is contractual. WCAA and Frontier entered into a contract with an indemnity clause of the type that is common in most commercial contractual relationships. The contract itself is unremarkable and Frontier does not attack either its validity or its content. Frontier's argument is that external factors prevent enforcement of the indemnity clauses; specifically that the WCAA's employees' actions in responding to Frontier were intentional and bar the application of the indemnification clause as against public policy.

## I.   CROSS-PLAINTIFFS' CONDUCT WAS NOT "INTENTIONAL" BECAUSE IT WAS A GOOD FAITH RESPONSE TO FRONTIER'S "CALL FOR HELP" ABOUT PLAINTIFF HEBSHI AND WAS PRIVILEGED UNDER 6 U.S.C. 1104.

### Standard of review

Cross-Plaintiffs and Cross-Defendant agree that this Court's supplemental jurisdiction over the contract claim requires that it "sits as a court of the forum state and is bound to apply its substantive law." *Walker v Michigan Public Service Comm.,* 24 F Supp 2d 803, 806 (W.D. Mich. 1998, citing *Haynes v Marshall,* 887 F2d 700, 705 (6th Cir. 1989).

Frontier's motion relates to the Cross-Complaint, which asserts contractual rights under two contracts signed by WCAA and Frontier. These documents are integral to the claim and are referred to in the Cross-Claim and may be considered in connection with the pending motion.

4

*Evangelist v Green Tree Servicing,* 2013 WL 2393142, (E.D. Mich. May 31, 2013) (Attached as Exhibit 3).

> ### A.  Under the Terms of the Indemnity Clauses and Michigan Contract Principles, Wayne County Airport Authority's Employees Are Entitled to Indemnification.

Frontier is mistaken when it asserts that a contract that purports to indemnify a party against its own negligence will not be enforced unless it "clearly appears" that such was the intent. Early cases did so hold, but Michigan has rejected the principle that any specific terminology is required. The early rule was that:

> Indemnification contracts will not be construed to indemnify the indemnitee against losses from his own negligent acts unless such an intent is expressed in unequivocal terms.

*Vanden Bosch v Consumers Power Co,* 56 Mich App 543, 558; 224 NW2d 900 (1974).

On appeal, Michigan's Supreme Court changed this. *Vanden Bosch v Consumers Power Co,* 394 Mich 428; 230 NW2d 271 (1975). It reversed the Michigan Court of Appeals in a one page opinion, saying:

> Although not "expressly" stated in the agreement, we are persuaded from our reading of that agreement, in light of the surrounding circumstances, that the parties intended that Consumers Power be indemnified against liability for its own negligence of the type precipitating this litigation.

Thus, the requirement that indemnification for one's own negligence be stated expressly was abrogated. Many cases since have so held. *Paquin v Harnischfeger,* 113 Mich App 43, 46; 317 NW2d 249 (1982), *Hayes v General Motors Corp,* 106 Mich App 188; 308 NW2d 452 (1981), *Harbenski v Upper Peninsula Power Company,* 118 Mich App 440; 328 NW2d 785 (1982), *Fischbach-Natkin v PPP, Inc,* 157 Mich App 448, 452; 403 NW2d 569 (1987).

Each clause in this case also contains a "sole negligence" exception:

". . . except Airline shall not be liable solely and to the extent any injury, damage or loss is caused by the sole negligence of the Airport Authority . . .

[Exhibit 1, p 13]

". . . excepting such liability as may result from the sole negligence of [WCAA and its employees] . . ."

[Exhibit 2, p 13]

In Michigan, "sole negligence" language has been interpreted to mean that the indemnitee loses the right to indemnity only if its negligence is the only negligence. If any other person is at fault, indemnity is still available. In *Burdo v Ford Motor Co,* 588 F Supp 1319 (ED Mich 1984), Burdo was the employee of Haden, which was installing painting equipment on Ford property under contract with Ford. The district court held that the clause required Haden to indemnify Ford for damages paid to Burdo because of injuries incurred when he slipped on an oil spot, even where the only negligent parties were Ford (the indemnitee) and the injured plaintiff. The decision was affirmed on appeal, 828 F 2d 380 (6th Cir 1987).

Each indemnity clause, by its terms, requires indemnification under the facts of this case. Frontier argues that this contractual obligation is negated because of the "intentional" actions of WCAA's employees.

**B.     Cross-Plaintiffs Did Not Engage In Intentional Misconduct.**

Frontier's "public policy" argument is predicated on the factual assertion that Cross-Plaintiffs' actions were "intentional" and that these intentional acts amounted to misconduct that invokes a public policy exception to the contractual obligation.

This argument is incorrect for two reasons. First, intent, as that term is used in the area of insurance and indemnity law, means more than merely intent to do a specific act. It must also

include intent to bring about a result that is itself wrongful. Second, this analysis is conducted from the perspective of the actor.

The first question is whether the person seeking indemnity acted with the purpose of bringing about a harmful result.

The best exposition of this requirement comes from cases involving exceptions for intentional acts in liability insurance policies. The issue arises commonly in the context of the threshold question whether an event was an "occurrence." The term "occurrence" is defined as an "accident," and though "accident" is not separately defined, Michigan's courts have "repeatedly stated that 'an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.'" *Frankenmuth Mutual Ins Co v Masters,* 460 Mich. 105, 114; 595 NW2d 832 (1999).

The perspective to be applied is that of the actor, not the victim. "[W]e have also held that the definition of accident should be framed from the standpoint of the insured, not the injured party." Id.

But it is not enough that the person acted intentionally. The actor must also intend to cause a wrongful result.

In such cases, a determination must be made whether the consequences of the insured's intentional act

> either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions. When an insured acts intending to cause property damage or personal injury, liability coverage should be denied, irrespective of whether the resulting injury is different from the injury intended.
>
> *Id.* p. 115 (citation deleted)

In this case both Frontier's employees and WCAA's employees acted "intentionally" in that they made conscious decisions about how to act and what to do. Frontier's employees sent a message to federal and Airport Authority security via the ACARS system, saying "there is some wierd [sic] stuff going on. Both these guys have gone into the bathroom for 20 min. while . . . ." and that "The passenger in 12A may be with them as well." As noted, the passenger in 12A was Plaintiff Hebshi.

Frontier's employees sent the above message intentionally, but it does not follow that they intended to cause harm to Ms. Hebshi, either directly or indirectly by setting in motion the chain of events that ensued.

For the same reason, the actions of WCAA's employees, though intentional in the sense that they made conscious decisions about how to act and what to do to investigate the potential threat that Frontier had identified, lacked the necessary intent to bring about a harmful result. None of WCAA's employees acted from personal animus or with a view to personal gain. Their sole purpose was to gather information to ascertain whether there was a threat and if so, the nature and extent of the threat.

Ms. Hebshi alleges that the actions of Frontier's employees and WCAA's employees led to results that were unpleasant from her perspective, but the analysis of intent focuses at the beginning of the activity from the actors' perspective (Frontier's and WCAA's employees), not the alleged victim's perspective of the result.

In this case the resulting detention, search, and interrogation are specifically countenanced by federal statute and by relevant case law. Thus, the resulting interrogation, though unpleasant from the perspective of the person being interrogated, was not a "harm" intentionally inflicted either by Frontier's employees or by WCAA's employees.

8

## II. CROSS-PLAINTIFFS' CONDUCT DID NOT VIOLATE PUBLIC POLICY BECAUSE IT WAS A GOOD FAITH RESPONSE TO FRONTIER'S "CALL FOR HELP" ABOUT PLAINTIFF HEBSHI AND WAS PRIVILEGED UNDER STATE AND FEDERAL LAW.

### A. Public Policy Favors the Alleged Actions of the WCAA Defendants.

Frontier conflates its argument of "intent" with an argument that "public policy" forbids enforcing this contract between Frontier and WCAA.

"Public policy" is not a vague term that expresses a general disfavor of some activity. It must come from within the law itself.

> In identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law.

*Terrien v Zwit,* 467 Mich 56, 66-67; 648 NW2d 602 (2002), citing *Twin City Pipeline Co v Harding Glass Co,* 283 U.S. 353, 357; 51 S.Ct. 476; 75 L.Ed. 1112 (1931).

The common law has long recognized both a privilege and an immunity in connection with the reporting of potentially criminal behavior. Interpreting Michigan law in a case based on a claim of defamation, this Court observed:

> Statements regarding suspected criminal activity made to the police are privileged, but the privilege is a qualified one.

> To overcome a qualified privilege, the plaintiffs must come forward with evidence that Drs. Stanley's and Joslin–Page's statements to the police were intentionally false or made with reckless disregard for the truth.

*Sanders v Stanley,* 794 F Supp 2d 755, 762 (2011)

The qualified privilege for reports to law enforcement personnel is paralleled by a qualified immunity for the law enforcement personnel who act on the information. In Michigan, this is expressed in a statute, Mich. Comp. Laws 691.1407(2):

> (2)     Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and

employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

The United States Supreme Court has expressed substantially the same view, even when the claim is based on violation of federal constitutional guarantees. In *Anderson v Creighton,* the court rejected the

> … argu[ment] that it is inappropriate to give officials alleged to have violated the Fourth Amendment—and thus necessarily to have *unreasonably* searched or seized—the protection of a qualified immunity intended only to protect reasonable official action. It is not possible, that is, to say that one "reasonably" acted unreasonably. The short answer to this argument is that it is foreclosed by the fact that we have previously extended qualified immunity to officials who were alleged to have violated the Fourth Amendment.

*Anderson v Creighton*, 483 U.S. 635, 643; 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

Federal statutory law expresses the same public policy, with a particular focus on the very kind of threat that Frontier's personnel perceived. 6 U.S.C. § 1404 provides immunity for the report (by Frontier) and immunity for the response (by WCAA):

(a) Immunity for reports of suspected terrorist activity or suspicious behavior

> (1) In general

> Any person who, in good faith and based on objectively reasonable suspicion, makes, or causes to be made, a voluntary report of covered

activity to an authorized official shall be immune from civil liability under Federal, State, and local law for such report.

(2) False reports

Paragraph (1) shall not apply to any report that the person knew to be false or was made with reckless disregard for the truth at the time that person made that report.

(b) Immunity for response

(1) In general

Any authorized official who observes, or receives a report of, covered activity and takes reasonable action in good faith to respond to such activity shall have qualified immunity from civil liability for such action, consistent with applicable law in the relevant jurisdiction. An authorized official as defined by subsection (d)(1)(A) of this section not entitled to assert the defense of qualified immunity shall nevertheless be immune from civil liability under Federal, State, and local law if such authorized official takes reasonable action, in good faith, to respond to the reported activity.

(2) Savings clause

Nothing in this subsection shall affect the ability of any authorized official to assert any defense, privilege, or immunity that would otherwise be available, and this subsection shall not be construed as affecting any such defense, privilege, or immunity.

Public policy, as expressed in both Michigan and federal statutory and common law, not only does not condemn the actions of Frontier and WCAA and their respective employees, but actively supports it.

**B.      Insurance Covering Civil Rights Violations are not Void as Against Public Policy.**

The Sixth Circuit has "explicitly held that under Michigan law, public policy does not bar the enforcement of a liability insurance policy covering an allegedly intentional civil rights violation. *North Bank v. Cincinnati Ins. Co.*, 125 F.3d 983, 986 (6th Cir. 1997). The Michigan

11

Court of Appeals has cited *North Bank* with approval.  See *Badiee v. Brighton Area Schools*, 265 Mich. App. 343, 352 n. 13; 695 N.W.2d 521 (2005) ([F]or purposes of insurance, parties can obtain policies covering intentional acts of discrimination.")

### C.     The Cases Cited by Frontier are Distinguishable.

The first case cited by *Frontier is Wagner v. Regency Inn Corp.*, 186 Mich. App. 158, 169 (Mich. Ct.App. 1990).  The *dicta* cited by Frontier is inapplicable to the present matter because it is derived from indemnification analysis applied to common carriers (as indemnitees), an issue distinct and separate from what we have here.  See *Klann v. Hess Cartage Co.*, 50 Mich. App. 703; 214 NW2d 63 (1973).

*Holmes v. St. Clair County*, 2005 U.S. Dist. LEXIS 35038, at *15 (E.D. Mich. July 18, 2005), also cited by Frontier, is likewise distinguishable.  In *Holmes*, a former inmate brought suite against St. Clair County and several of its enforcement officers, alleging deliberate indifference to his serious medical needs when he was incarcerated.  The County sought indemnification from a physician who, under contract with the Sheriff's Department, provided medical services to the inmates at the jail.  The claim against the County, however, did not challenge the physician's medical decisions or treatment.  Rather, it was predicated upon something else entirely; the County's failure to train and supervise jail personnel.

In light of the lack of connection between the indemnitor physician and the acts of the indemnitee County, the court found that it was "untenable as a matter of public policy" to enforce the indemnification clause. *Id.*

Here, unlike *Holmes*, the claims against the WCAA Defendants are not predicated on actions unrelated to and independent of actions attributed to Frontier.  Frontier cannot legitimately dispute that the actions of the WCAA Defendants arose out of Frontier's report of

suspicious behavior and identification of Plaintiff as a potential suspect. As such, *Holmes* is incapable of analogy.

Frontier's argument that *Caldwell v. Enyeart*, No. 94-1406, 1995 WL 807110 (6th Cir. 1995) supports its position is likewise misguided. Caldwell addresses the issue of whether a contract providing for indemnification for one's gross negligence is void under Michigan Law. Under Michigan law, gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws 691.1407(7)(a).

Here, Plaintiff has not asserted any claim of gross negligence against the WCAA Defendants.

## CONCLUSION

There is no impediment, in common law, statutory law, constitutional law or public policy, to the enforcement of the indemnity provisions.

## RELIEF REQUESTED

Cross-Plaintiffs request that this Court deny Frontier Airlines' motion to dismiss and enter an order declaring that Frontier Airlines is contractually obligated to "indemnify, defend and hold harmless" Cross-Plaintiffs.

Respectfully submitted,

/s/ Alan B. Havis
ALAN B. HAVIS (P36988)
Law Offices of Alan B. Havis
25505 West Twelve Mile Road, Suite 1000
Southfield, Michigan 48034
Telephone: (248) 353-3690
Facsimile: (248) 948-6677
e-Mail: ahavis@airportdefender.com
*Attorneys for Mark DeBeau, Officer Grant, Officer Parker, Detective Carmona, and Officer Johnson (Wayne County Airport Authority Defendants)*

Dated: July 5, 2013

/s/ T. Joseph Seward
T. JOSEPH SEWARD (P35095)
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road
Livonia, Michigan 48150
Telephone: (734) 261-2400
Facsimile: (734) 261-4510
e-Mail: tjseward@cmda-law.com
*Attorneys for Officer Bohn, Corporal Bradley, Lieutenant Wasiukanis, and Captain Driscoll (Wayne County Airport Authority Defendants)*

P:\abz\hebshi.opposition2frontier.dismissalmotion.indemnification.7.5.13-1-TJS-1.doc

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

**MICHAEL J. STEINBERG (P43085)**

**KARY L. MOSS (P49759)**
**ALAN B. HAVIS (P36988)**
**DENNIS D. PARKER**
**RACHEL E. GOODMAN**
**AYIRINI FONSCECA-SABUNE**
**LYNN M. DODGE (P38136)**
**WILLIAM H. GOODMAN (P14173)**
**JULIE HORWITZ (P34720)**
**KATHRYN BRUNER JAMES (P71374)**
**SARAH E. WHITMAN**
**ANNA ENGH**
**SHELLI CALLAND**
**ARJUN SETH**
**SARAH TREMONT (P73809)**

/s/ Anita B. Zischerk
Anita B. Zischerk, Legal Assistant
Cummings, McClorey, Davis & Acho, P.L.C.