IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHOSHANA HEBSHI, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. Terrence G. Berg |
| | ) | |
| v. | ) | Magistrate Judge Laurie J. Michelson |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | Case No. 4:13-cv-10253 |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CROSS DEFENDANT FRONTIER AIRLINES, INC.'S REPLY BRIEF
TO CROSS PLAINTIFFS' JOINT RESPONSE IN OPPOSITION TO
FRONTIER'S MOTION TO DISMISS CROSS COMPLAINTS**

Cross Plaintiffs' claims for indemnity against Frontier fail as a matter of law, as Michigan public policy prohibits agreements to indemnify another for intentional conduct. Here, all the underlying claims pending against Cross Plaintiffs—for which they seek indemnity from Frontier—are based on intentional torts. As such, there is no legal basis for Cross Plaintiffs' indemnity claims[1] and they must be dismissed.

**A.   Cross Plaintiffs Improperly Seek Indemnity for Intentional Torts**

In their joint response to Frontier's Motion to Dismiss, Cross Plaintiffs argue that their conduct could not be intentional "because it was a good faith response to Frontier's 'call for help' about Plaintiff Hebshi and was privileged under 6 U.S.C. 1104." (Doc. #80, p.4). Such argument, however, is irrelevant. The issue is not a factual determination as to whether the conduct of the Cross Plaintiffs was, or was not, intentional and privileged. Rather, this is a legal motion confined to Plaintiff Hebshi's claims against the Cross Plaintiffs—all of which assert

---

[1] Contrary to Cross Plaintiffs' statement that "Frontier does not dispute that the indemnity clauses . . . require that Frontier . . . indemnify . . . Cross-Plaintiffs," Frontier explicitly denies that it has an obligation to indemnify under the subject contract. (Doc. #73, p.6).

1

intentional misconduct—and there is no such thing as unintentional discrimination. (Doc. #1, pp.21-23); *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n.16 (1984) ("Under [42 U.S.C. §§ 1981 and 1983] relief is authorized only when there is proof or admission of intentional discrimination."); *accord Littleton v. Detroit*, 2002 U.S. Dist. LEXIS 16428, at *20 (E.D. Mich. Aug. 21, 2002) ("A person bringing an action under the Equal Protection Clause *must show intentional discrimination* against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." (emphasis added) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999))).

Regardless of how Cross Plaintiffs wish to recast Plaintiff Hebshi's claims in their response brief (notably, without any citation to evidence in the record supporting the same), the underlying complaint for which they seek indemnity sets forth solely intentional discrimination claims against Cross Plaintiffs, which they have explicitly recognized as such in their own Joint Motion for Partial Summary Judgment on Count IV of Plaintiff's Complaint:

> Plaintiff claims that the WCAA Defendants, among others, violated her Fourteenth Amendment right to equal protection of the laws by 'intentionally and unlawfully' discriminating against her. Specifically, Plaintiff alleges that the WCAA Defendants arrested and detained her "because of her perceived ethnicity, race, or national origin based on her name and/or appearance." (Doc. #69, p.5).

Cross Plaintiffs' self-serving characterization of their own actions as being done in "good faith" simply does not transform Plaintiff's section 1983 claims against Cross Plaintiffs—which all involve, as they must, intentional misconduct—into negligence.[2] *See, e.g.*, *Greco v. Livingston County*, 2013 U.S. Dist. LEXIS 57594, at *7 (E.D. Mich. Apr. 23, 2013) ("Michigan

---

[2] Indeed, if Plaintiff Hebshi's claims against Cross Plaintiffs sounded in negligence, such claims would fail given Cross Plaintiffs' qualified immunity. *Caldwell v. Enyeart*, 1995 U.S. App. LEXIS 37003, at *19, 72 F.3d 129 (table) (6th Cir. Dec. 8, 1995) ("[M]ere negligence on the part of the County officials is not enough to state either a Fourteenth or Eighth Amendment claim under 42 U.S.C. § 1983."). Thus, under any scenario, Frontier cannot be held responsible for the conduct committed by Cross Plaintiffs.

2

Courts have repeatedly rejected attempts to transform an intentional tort claim into gross negligence."). As such, Michigan law forbids Cross Plaintiffs from seeking indemnity for their intentional acts. *See, e.g.*, *Caldwell*, 1995 U.S. App. LEXIS 37003, at *15.

B.     **Frontier Is Not an Insurance Company**

In addition to their misplaced factual argument, Cross Plaintiffs argue that the Sixth Circuit in *North Bank v. Cincinnati Insurance Cos.*, 125 F.3d 983 (6th Cir. 1997), recognized that public policy does not bar enforcement of "*a liability insurance policy*" written by an insurer. Frontier, however, is *not* an insurance company, and the case at hand does not concern an "ambiguity created by [an] insurance company in drafting its policy" that specifically provided coverage for acts of discrimination yet excluded coverage for acts which did not occur unintentionally. *Id.* at 987-88 ("[W]e are persuaded that the defendant insurance company should not be permitted to sell the bank a policy covering discrimination claims and then to refuse to cover garden variety discrimination claims."); *see also Stamford Bd. of Educ. v. Stamford Educ. Ass'n*, 697 F.2d 70, 74 (2d Cir. 1982) ("The Board argues to us that the indemnity claim should be analogized to an insurance policy which, the Board asserts, would be legal. Putting to one side whether a policy insuring against the consequences of sex discrimination would actually be enforceable on these facts, indemnification presents a different issue."); *Mahon v. City of Bethlehem*, 902 F. Supp. 76, 78 (E.D. Pa. 1995) ("[Defendant police officers] argue that [declaring an indemnity agreement void for a section 1983 lawsuit based upon public policy] would wreak havoc in this state because almost every municipality owns liability coverage. We disagree. Our ruling does not affect any insurance coverage [defendants] may have. Rather, our ruling is limited to interpreting the indemnity provisions in the leases at issue.").

Unlike *North Bank* and the other insurer cased cited by Cross Plaintiffs, the contractual language at issue here arises out of an alleged agreement between two non-insurers. *See Grand Trunk W. R.R., Inc. v. Auto Warehousing Co.*, 262 Mich. App. 345, 353 (Mich. Ct. App. 2004) ("Defendant contends that the trial court erred in holding defendant to the same standard as an insurance company with regard to defendant's contractual duty to defend. We agree. Although the rules of contractual indemnity are derived primarily from insurance and construction cases, the rules governing contractual indemnity generally are well-established and govern this case.").

Thus, the reasoning underpinning the holdings in the insurance cases cited by Cross Plaintiffs has no application to the legal issue raised by Frontier's motion—that is, whether private parties may contract to indemnify one another for intentional torts. The law clearly holds that they cannot and dismissal is therefore necessary. *Caldwell*, 1995 U.S. App. LEXIS 37003, at *15; *Wagner v. Regency Inn Corp.*, 186 Mich. App. 158, 169 (Mich. Ct. App. 1990).

**C.     Indemnification for Intentional and Unconstitutional Claims Violate Public Policy**

As demonstrated by the absence of cited authority in Cross Plaintiffs' joint response brief, there is no support for their position that Michigan law permits parties to indemnify one another for intentional misconduct. Cross Plaintiffs attempt to distinguish the Sixth Circuit's decision in *Caldwell v. Enyeart* by arguing that *Caldwell* dealt with "gross negligence" rather than intentional conduct. (Doc. #80, p.13); 1995 U.S. App. LEXIS 37003, 72 F.3d 129 (table) (6th Cir. Dec. 8, 1995). In other words, under Cross Plaintiffs' strained view of *Caldwell*, public policy supports indemnification when a person outright intends to cause harm rather than acting with extreme negligence. This is certainly not the law.

Cross Plaintiffs apparently neglect the portion of the *Caldwell* opinion that states, "In like vein, it is against Michigan public policy to insure oneself against one's *intentionally tortious*

4

*conduct.*" *Id.* at \*15 (emphasis added) (quoting *Vigilant Ins. Co. v. Kambly*, 319 N.W.2d 382, 385 (Mich. Ct. App. 1982)). Cross Plaintiffs also overlook the fact that the *Caldwell* plaintiffs, like Cross Plaintiffs here, "sought indemnification…arising out of an underlying civil rights action, filed pursuant to 42 U.S.C. § 1983." *Id.* at \*1-2. The reason for these oversights is simple: *Caldwell* is indistinguishable.

Cross Plaintiffs also argue that *Holmes v. St. Clair County* is dissimilar because there was a "lack of connection between the indemnitor physician and the acts of the indemnitee." (Doc. #80, p.12); 2005 U.S. Dist. LEXIS 35038 (E.D. Mich. July 18, 2005). In that case, the injuries inmate Holmes suffered were actually triggered by *both* the actions of defendant County law enforcement officers and the third-party defendant doctor in collectively causing a "delay in [plaintiff] receiving medical care after displaying symptoms of a stroke," though Holmes only filed claims directly against the County officers. *Holmes*, 2005 U.S. Dist. LEXIS 35038, at \*5. Cross Plaintiffs, however, maintain that the claim against the County "was predicated upon something else entirely: the County's failure to train and supervise jail personnel." (Doc. #80, p.12). This logic, however, does not support Cross Plaintiffs' argument; it undermines it.

The main distinction the *Holmes* court drew was in relation to the claims and theories of liability themselves, not whether the underlying conduct of the officers arose out of those of the doctor. In fact, the underlying conduct of both parties in *Holmes* was undoubtedly related to the same alleged injury—the key difference was in the cause of action asserted by the plaintiff. *See Holmes*, 2005 U.S. Dist. LEXIS 35038, at \*4-5.

Like *Holmes*, Plaintiff here brings separate and distinct constitutional claims against Cross Plaintiffs for violations of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. (Doc. #1, pp.21-23). Just as no Eighth Amendment claims were filed against

5

the doctor in *Holmes*, no Fourth, Fifth, or Fourteenth Amendment claims were brought against Frontier in the present matter. As public policy does not favor intentionally tortious conduct, it is likewise ill-served by encouraging constitutional violations, as *Holmes* and other courts have recognized. *See Holmes*, 2005 U.S. Dist. LEXIS 35038, at *15; *see, e.g.*, *Jordan v. Bucyrus*, 754 F. Supp. 554, 559 (N.D. Ohio 1991) ("Indemnification clauses in collective bargaining agreements which purport to relieve public employers from liability for violations of federal constitutional and civil rights are void as against public policy. . . . [T]he distinction between 'shifting' liability and 'relieving' oneself of liability is nebulous at best, for in either case, the public employee is given incentive to act contrary to law."); *Oladeinde v. City of Birmingham*, 118 F. Supp. 2d 1200, 1213 (N.D. Ala. 1999) ("This court acknowledges the existence of a public policy against the indemnification of public actors for their intentional wrongdoing.").

Accordingly, because shifting Cross Plaintiffs' liability through the alleged indemnity agreement here would give them, as public employees, incentive to intentionally act contrary to the law and Constitution, public policy demands dismissal of Cross Plaintiffs' claims.

D.     **Cross Plaintiffs' Request for Declaratory Relief Must Be Rejected**

Finally, Cross Plaintiffs appear to seek declaratory and/or summary judgment in their response brief opposing Frontier's Motion to Dismiss by requesting that the Court "declare that Frontier owes an obligation to defend, indemnify and hold harmless Cross-Plaintiffs." (Doc. #80, p.13). This request for declaratory relief in their *response brief* is improper and must be rejected. *See* Hon. T. Berg, *Standing Order*, ¶E ("Motions may not be included within or appended to a response or a reply, and under no circumstances may a motion be included within the text or footnotes of another motion."); *Hescott v. City of Saginaw*, 894 F. Supp. 2d 977, 994 (E.D. Mich. 2012) ("Because a party cannot request this type of [summary judgment] relief in a response

brief, Plaintiffs' request must be denied."). Cross Plaintiffs also make a passing reference in their response brief to other indemnity language contained in a Non-Signatory Airline Lease of Terminal Space, which is notably absent from their Cross Complaints and likewise improper. *Id.*

The only issue at hand is whether Cross Plaintiffs may seek indemnity from Frontier for their own alleged intentional and unconstitutional misconduct under Michigan law. The answer is most undoubtedly, no.

For the reasons stated herein, Frontier respectfully requests that the Court grant its Motion to Dismiss, enter judgment in its favor, and award such other relief as the Court deems just and proper.

Dated: July 19, 2013

Respectfully submitted,

/s/ Steven L. Boldt
Brian T. Maye (IL 6288778)
Steven L. Boldt (IL 6302430)
Adler Murphy & McQuillen LLP
20 S. Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
bmaye@amm-law.com
sboldt@amm-law.com

Alexander A. Ayar (P69623)
Foster Swift Collins & Smith PC
32300 Northwestern Hwy., Suite 230
Farmington Hills, MI 48334
Phone: (248) 538-6326
AAyar@fosterswift.com

**Counsel for Frontier Airlines, Inc.**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on July 19, 2013, he served the foregoing document by electronically filing the same with the Clerk of the U.S. District Court for the Eastern District of Michigan, Southern Division by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/ Steven L. Boldt
Steven L. Boldt (IL 6302430)