# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**SHOSHANA HEBSHI**,

      Plaintiff,

-v-

**UNITED STATES OF AMERICA; FRONTIER AIRLINES, INC.; JOHN BRAND**, in his individual capacity; **UNKNOWN FBI AGENT 1**, in his individual capacity; **UNKNOWN FBI AGENT 2**, in his individual capacity; **MARK DEBEAU**, in his individual capacity; **JEREMY BOHN**, in his individual capacity; **CAPTAIN PATRICK DRISCOLL**, in his individual capacity; **OFFICER GRANT**, in his individual capacity; **LT. M. WASIUKANIS**, in his individual capacity; **TOYA PARKER**, in her individual capacity; **DT. CARMONA**, in his or her individual capacity; **OFFICER JOHNSON**, in his or her individual capacity; **CORPORAL BRADLEY**, in his or her individual capacity; **UNKNOWN CBP OFFICER**, in his individual capacity; **DAVID LAKATOS**, in his individual capacity; **NATHANIAL DEVINS**, in his individual capacity; **UNKNOWN TSA AGENT 1**, in his individual capacity; **UNKNOWN TSA AGENT 2**, in her individual capacity; **ROBERT BALL**, in his individual capacity; **UNKNOWN ICE OFFICER**, in his individual capacity; and **PAUL BRUMLEY**, in his individual capacity;

      Defendants.

-and-

**MARK DeBEAU, OFFICER GRANT, TOYA PARKER, DT. CARMONA, OFFICER JOHNSON, JEREMY BOHN, CAPTAIN PATRICK DRISCOLL, LT. M. WASIUKANIS,** and **CORPORAL BRADLEY,**

      Cross-Plaintiffs,

Honorable Terrence G. Berg
Magistrate Laurie J. Michelson
Case No. 13-cv-10253

-v-

**FRONTIER AIRLINES, INC.,**

   Cross-Defendant.

## THE WAYNE COUNTY AIRPORT AUTHORITY DEFENDANTS' JOINT MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

NOW COME the Wayne County Airport Defendants, MARK DeBEAU, OFFICER JOHNSON, OFFICER GRANT, OFFICER PARKER, DETECTIVE CARMONA, OFFICER BOHN, LIEUTENANT WASIUKANIS, CORPORAL BRADLEY, and CAPTAIN DRISCOLL (collectively "the WCAA Defendants"), by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C. and THE LAW OFFICE OF ALAN B. HAVIS, and for their Joint Motion for Partial Judgment on the Pleadings, state as follows:

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the WCAA Defendants seek judgment on the pleadings in relation to Plaintiff's Fourth Amendment claims of unreasonable search and seizure. (Docket No. 1, Counts V and VI). For the reasons set forth more fully in the attached Brief in Support, the WCAA Defendants move for such relief on qualified immunity grounds.

Pursuant to Rule 7.1(a) of the Local Rules of the Eastern District of Michigan, the WCAA Defendants certify that they attempted to obtain concurrence in the relief sought. Counsel for Plaintiff declined to concur.

Respectfully submitted,

/s/ T. Joseph Seward
T. JOSEPH SEWARD (P35095)
Cummings, McClorey, Davis & Acho,
P.L.C.
33900 Schoolcraft Road
Livonia, Michigan 48150
Telephone: (734) 261-2400
Facsimile: (734) 261-4510
e-Mail: tjseward@cmda-law.com

*Attorneys for Officer Bohn, Corporal Bradley, Lieutenant Wasiukanis, and Captain Driscoll (Wayne County Airport Authority Defendants)*

/s/ Alan B. Havis
ALAN B. HAVIS (P36988)
Law Offices of Alan B. Havis
25505 West Twelve Mile Road, Suite 1000
Southfield, Michigan 48034
Telephone: (248) 353-3690
Facsimile: (248) 948-6677
e-Mail: ahavis@airportdefender.com

*Attorneys for Mark DeBeau, Officer Grant, Officer Parker, Detective Carmona, and Officer Johnson (Wayne County Airport Authority Defendants)*

DATED: November 11, 2013

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**SHOSHANA HEBSHI,**

         Plaintiff,

-v-

**UNITED STATES OF AMERICA; FRONTIER AIRLINES, INC.; JOHN BRAND,** in his individual capacity; **UNKNOWN FBI AGENT 1,** in his individual capacity; **UNKNOWN FBI AGENT 2,** in his individual capacity; **MARK DEBEAU,** in his individual capacity; **JEREMY BOHN,** in his individual capacity; **CAPTAIN PATRICK DRISCOLL,** in his individual capacity; **OFFICER GRANT,** in his individual capacity; **LT. M. WASIUKANIS,** in his individual capacity; **TOYA PARKER,** in her individual capacity; **DT. CARMONA,** in his or her individual capacity; **OFFICER JOHNSON,** in his or her individual capacity; **CORPORAL BRADLEY,** in his or her individual capacity; **UNKNOWN CBP OFFICER,** in his individual capacity; **DAVID LAKATOS,** in his individual capacity; **NATHANIAL DEVINS,** in his individual capacity; **UNKNOWN TSA AGENT 1,** in his individual capacity; **UNKNOWN TSA AGENT 2,** in her individual capacity; **ROBERT BALL,** in his individual capacity; **UNKNOWN ICE OFFICER,** in his individual capacity; and **PAUL BRUMLEY,** in his individual capacity;

         Defendants.

-and-

**MARK DeBEAU, OFFICER GRANT, TOYA PARKER, DT. CARMONA, OFFICER JOHNSON, JEREMY BOHN, CAPTAIN PATRICK DRISCOLL, LT. M. WASIUKANIS, and CORPORAL BRADLEY,**

         Cross-Plaintiffs,

Honorable Terrence G. Berg
Magistrate Laurie J. Michelson
Case No. 13-cv-10253

-v-

**FRONTIER AIRLINES, INC.,**

       Cross-Defendant.

---

## BRIEF IN SUPPORT OF THE WAYNE COUNTY AIRPORT AUTHORITY DEFENDANTS' JOINT MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

## **TABLE OF CONTENTS**

INDEX OF AUTHORITY ........................................................................................4

INDEX OF EXHIBITS............................................................................................7

QUESTIONS PRESENTED ....................................................................................8

PLAINTIFF'S ALLEGATIONS ..............................................................................9

   I.   PLAINTIFF'S CLAIMS ...............................................................................11

STANDARD OF REVIEW....................................................................................12

LAW AND ARGUMENT......................................................................................13

CONCLUSION.......................................................................................................26

# INDEX OF AUTHORITY

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)……………………………………….……13, 16, 26

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)…………………………………….......13, 16, 26

*Bradley v. City of Ferndale,*
    148 Fed. Appx. 499 (6th Cir. 2005)………………………….………14

*Cincinnati Ins. Co. v. Beazer Homes Invs., L.L.C.,*
    594 F.3d 441 (6th Cir. 2010)……………….……………………….....12

*Cooper v. Parrish,*
    203 F.3d 937 (6th Cir. 2000)…………………......………………….17

*Courie v. Alcoa Wheel & Forged Products,*
    577 F.3d 625 (6th Cir. 2009)………………………………………......13

*Dorsey v. Barber,*
    517 F.3d 389, 399 (6th Cir. 2008)…………………………………15, 21, 22

*Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,*
    132 S. Ct. 1510 (2012)……………………………………….......24, 26

*Gibson v. Matthews,*
    926 F.2d 532 (6th Cir. 1991)………………………………………....…14

*Graham v. Connor,*
    490 U.S. 386 (1989)………………………....……………….……..…...12, 14

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)……………………………………………….…16

*HDC, L.L.C. v. City of Ann Arbor,*
    675 F.3d 608 (6th Cir. 2012)…………………………………………….13

*Humphrey v Mabry,*
        482 F.3d at 848-49)……………………………………………...22

*Livermore v. Lubelan,*
        476 F.3d 397 (6th Cir. 2007)………………………………...……….....17

*McPherson v. Kelsey,*
        125 F.3d 989 (6th Cir. 1997)………………………………...............…15

*Moldowan v. City of Warren,*
        570 F.3d 698 (6th Cir. 2009)……………………………….…….17

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.,*
        650 F.3d 1046 (6th Cir. 2011)……………………………….....……13

*Parsons v. City of Pontiac,*
        533 F.3d 492 (6th Cir.2008)……………………………...…………17

*Pearson v. Callahan,*
        555 U.S. 223 (2009)…………………………...…………………...17

*Riverview Health Inst. L.L.C. v. Med. Mut. of Ohio,*
        601 F.3d 505 (6th Cir. 2010)………………………………………12

*Rondigo, L.L.C. v. Richmond Twp.,*
        641 F.3d 673 (6th Cir. 2011)………………………………....…..…16

*Saucier v. Katz,*
        533 U.S. 194 (2001)……………………………………....…16, 17

*Sensations, Inc. v. City of Grand Rapids,*
        526 F.3d 291 (6th Cir. 2008)………………………………………12

*Terry v. Ohio,*
        392 U.S. 1, 26 (1968)……………………………………....…14

*United States v. Abdulmutallab,*
        No. 10-20005, 2011 WL 4345243 (E.D. Mich. Sept. 16, 2011)…………...15

*United States v. Hensley*,
  469 U.S. 221, 231-32…………………………………………………………………22

*United States v. Yang*,
  286 F.3d 940, 950 (7th Cir. 2002)……………………………....…….15, 23

## **Constitutional Provisions**

U.S. Const. amend IV……………………………………………………………..12

## <u>INDEX OF EXHIBITS</u>

**Exhibit 1**          *Bradley v. City of Ferndale*

**Exhibit 2**          *United States v. Abdulmutallab*

## <u>QUESTIONS PRESENTED</u>

I.    WHETHER THE WAYNE COUNTY AIRPORT AUTHORITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE GROUND THAT PLAINTIFF FAILED TO PLEAD SUFFICIENT FACTUAL CONTENT TO STATE PLAUSIBLE CLAIMS UNDER THE FOURTH AMENDMENT?

Plaintiff presumably responds, "No."

Wayne County Airport Authority Defendants respond, "Yes."

## PLAINTIFF'S ALLEGATIONS

Plaintiff's complaint arises out of events that occurred on September 11, 2011 – the tenth anniversary of the terrorist attacks – aboard a Frontier Airlines flight. (Docket No. 1, ¶ 1). Plaintiff was a passenger seated in 12A (window seat); two men occupied seats 12B (middle seat) and 12C (aisle seat). (Docket No. 1, ¶¶ 42, 43).

During the flight, passengers and flight attendants noticed that the two men seated next to Plaintiff were acting suspiciously. (Docket No. 1, ¶ 45). Each spent up to twenty minutes in the lavatory and stood in the aisle for long periods. (Docket No. 1, ¶ 45). Flight attendants alerted the pilot, Frontier Captain Laurence Pucci, who sent an email message to Frontier Airlines dispatch and asked for information about the two men in seats 12B and 12C. (Docket No. 1, ¶¶ 47, 48). Mark Fraley, Frontier Operations Control Shift Manager, forwarded Captain Pucci's email to several members of Frontier staff with the names of the men seated in 12B and 12C. (Docket No. 1, ¶ 49) Fraley also commented that Plaintiff might be with the two men. (Docket No. 1, ¶ 49).

Frontier Airlines Manager, Tammara Faforke forwarded Mr. Fraley's email to the Transportation Security Administration ("TSA") and to OFFICERS DUNCAN and GRANT. (Docket No. 1, ¶¶ 51-54). OFFICER GRANT relayed the

9

information, including Plaintiff's name and suspected involvement, to CAPTAIN DRISCOLL and DETECTIVE CARMONA. (Docket No. 1, ¶ 52).

OFFICER BOHN went to the inspection site with officers from several federal and state law enforcement agencies. (Docket No. 1, ¶ 54). At the inspection site, Frontier Captain Pucci confirmed the earlier report to OFFICER JOHNSON by phone. (Docket No. 1, ¶ 55). Pucci also told JOHNSON that the Plaintiff may be involved. (Docket No. 1, ¶ 55).

CAPTAIN DRISCOLL determined that tactical entry was necessary and that the three passengers were to be handcuffed, removed from the airplane, and taken to the airport detention facility for further investigation. DRISCOLL's plan was authorized by MARK DE BEAU, Vice President of Public Safety for the WCAA. (Docket No. 1, ¶¶ 59, 60, 61). OFFICERS GRANT and JOHNSON organized the tactical entry with assistance from other federal agents. (Docket No. 1, ¶ 58).

OFFICERS BOHN and JOHNSON, DETECTIVE CARMONA, and federal officers boarded the plane. (Docket No. 1, ¶ 68). Plaintiff alleges that DETECTIVE CARMONA handcuffed her. (Docket No. 1, ¶ 72). Upon removal from the airplane, Plaintiff was transferred to Defendant CORPORAL BRADLEY, who drove Plaintiff and another suspect to the detention facility. (Docket No. 1, ¶ 78).

Plaintiff alleges that LIEUTENANT M. WASIUKANIS and FBI Special Agent Brand decided that all three suspects should be strip searched. (Docket No. 1, ¶ 85). Plaintiff alleges that one hour passed before OFFICER TOYA PARKER, a female WCAA officer, arrived to search her. (Docket No. 1, ¶¶ 88, 89). During the search, Plaintiff was told to stand facing the wall, away from the video camera in the cell. (Docket No. 1, ¶ 91). Plaintiff was then interviewed by FBI and TSA agents. (Docket No. 1, ¶¶ 100, 102). Plaintiff was detained for a total of three hours and released with no charges. (Docket No. 1, ¶ 1).

## PLAINTIFF'S CLAIMS

Plaintiff alleges seven counts against various Defendants. Only three of these counts pertain to the WCAA Defendants. First, Plaintiff claims that the WCAA Defendants (excluding Officer Parker) violated her Fifth and Fourteenth Amendment rights to equal protection. (Docket No. 1, Count IV, ¶¶ 132-38). Second, Plaintiff claims that the WCAA Defendants (excluding Officer Parker) violated her Fourth and Fourteenth Amendment rights to be free from unreasonable seizure. (Docket No. 1, Count V, ¶¶ 139-45). Third, Plaintiff claims that Defendants WASIUKANIS and PARKER violated Plaintiff's Fourth and Fourteenth Amendment rights to be free from unreasonable search. (Docket No. 1, Count VI, ¶¶ 146-52).

This Motion addresses Plaintiff's Fourth Amendment claims (Counts V and VI only).[1] Plaintiff cannot rely upon the Fourteenth Amendment because all claims of unreasonable search and seizure are analyzed under the Fourth Amendment "reasonableness" standard, rather than the Fourteenth Amendment "substantive due process" approach. *Graham v. Connor*, 490 U.S. 386, 395 (1989). For the reasons that follow, the WCAA Defendants contend that they are entitled to qualified immunity and seek judgment on the pleadings.

## STANDARD OF REVIEW

Rule 12(c) motions for judgment on the pleadings are analyzed under the same standard as Rule 12(b)(6) motions to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). Both motions "test the sufficiency of the complaint." *Riverview Health Inst. L.L.C. v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010). Judgment on the pleadings is proper "if the facts as alleged are insufficient to make a valid claim or if the claim shows on its face that relief is barred by an affirmative defense." *Id.*; *see also Cincinnati Ins. Co. v. Beazer Homes* Invs., L.L.C., 594 F.3d 441, 444 (6th Cir. 2010).

In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court "raised the bar for pleading

---

[1] Plaintiff's claims regarding her Fifth and Fourteenth Amendment rights to equal protection were addressed in the WCAA Defendant's Motion filed June 14, 2013 (Docket No. 69) and awaiting disposition. Those claims are not the subject of this Motion.

requirements" from possibility to plausibility. *See Courie v. Alcoa Wheel &
Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009) (citations omitted). The
*Twombly* and *Iqbal* pleading requirements apply to both Rule 12(b)(6) and Rule
12(c) motions. *See HDC, LLC. v. City of Ann Arbor*, 675 F.3d 608,611 (6th Cir.
2012). A Plaintiff's complaint cannot rely on "labels and conclusions," "formulaic
recitations," or "naked assertions devoid of further factual enhancement." *Iqbal*,
556 U.S. at 678.

The purpose of the *Twombly/Iqbal* pleading requirements is to prohibit
Plaintiffs armed with nothing more than conclusions, from "unlock[ing] the doors
to discovery." *Id. Twombly* and *Iqbal* "require [the] plaintiff to have greater
knowledge . . . of actual details in order to draft a plausible complaint." *New
Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir.
2011). Although a Plaintiff may have no way to find out the facts in the hands of
competitors, "*Iqbal* specifically orders courts . . . to refuse to order further
discovery." *Id.* at 1051, 1053.

## LAW AND ARGUMENT

Where a Plaintiff has commenced a § 1983 action against a number of
defendants, the conduct of each defendant must be examined individually. "[T]he
question is whether [each] officer's actions are 'objectively reasonable' in light of

the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham,* 490 U.S. at 397.

> Although it may appear from the facts that [plaintiff] was a victim of the bureaucracy as a whole . . . this theory cannot suffice to affix personal liability on any of the defendants. If any one of them is to be held liable, it must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants.

*Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991); see also *Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 508 (6th Cir. 2005) (examining the conduct of each officer individually) (attached as Exhibit 1).

Count VI alleges an unlawful seizure under the Fourth Amendment against all of the WCAA Defendants **except** Officer Toya Parker. The Fourth Amendment guarantees the right of citizens "to be secure in their persons ... against unreasonable ... seizures...." U.S. Const. amend IV. An arrest—the initial stage of a criminal prosecution against a person—is unreasonable, absent probable cause that a crime has been committed. *Terry v. Ohio*, 392 U.S. 1, 26 (1968). However, an arrest does not occur where an officer temporarily detains someone to investigate suspicious behavior, and a reasonable officer could infer from articulable facts that his safety, or the safety of others, was in danger. *See id.* at 27. Whether a particular search is reasonable requires a balancing of the quality and nature of the intrusion against countervailing governmental interests. *Graham,* 490 U.S. at 396. A particular seizure must be judged by a standard which allows for

the fact that officers are often forced to make split-second decisions in tense, uncertain, and rapidly evolving circumstances. *Id.* at 396-97.

Dispatching officers to conduct an investigatory stop does not constitute an unreasonable seizure where an officer suspects wrongdoing. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 991 (6th Cir. 1997) (holding judge and sheriff's deputies entitled to qualified immunity for searching suspicious man in courthouse). Nor does the use of handcuffs or weapons make a stop unreasonable where "circumstances warrant that precaution." *Dorsey v. Barber*, 517 F.3d 389, 399 (6th Cir. 2008) (internal citations omitted). Handcuffing a suspect and transporting him across an airport tarmac building is not an arrest. *United States v. Yang*, 286 F.3d 940, 950 (7th Cir. 2002).

Here, the circumstances involved suspicious activity aboard an aircraft on the tenth anniversary of the September 11, 2001 terrorist attacks. The activity occurred on a flight bound for the Detroit Metro airport, which had been the intended target of a bombing less than two years earlier. *See United States v. Abdulmutallab*, No. 10-20005, 2011 WL 4345243 (E.D. Mich. Sept. 16, 2011) (attached as Exhibit 2). During the flight, passengers and flight crew became suspicious of two men who spent up to twenty minutes each in the lavatory, while the other stood outside, and stood in the aisles for long periods of time. The Plaintiff was identified by Frontier Airlines staff as a person potentially involved in

the suspicious activity. Based on this information, the officers removed the three suspects from the plane in order to conduct an investigation. In light of the circumstances, a review of each officer's own actions, as set forth below, entitles them to the protections afforded by qualified immunity.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to allow government officials to perform their duties without the concern of litigation, including the disruption posed by the discovery process. *Iqbal*, 556 U.S. at 685-86. Thus, "under the doctrine of qualified immunity," a claim against a government official is "ripe for dismissal . . . at the earliest possible stage in the litigation" when the factual allegations fall short of the pleading requirements set forth in *Twombly* and *Iqbal. Rondigo, L.L.C. v. Richmond Twp.*, 641 F.3d 673, 684 (6th Cir. 2011).

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001) established a two-part test for determining an officer's entitlement to qualified immunity. The initial inquiry is whether the officer's conduct violated a constitutional right. *Id.* at 201. If the answer is no, the inquiry ends there and the official is entitled to immunity. *Id.* The second inquiry is whether, if a Constitutional right was violated,

the right was "clearly established" at the time of the violation. *Id.* "This [second] inquiry, it is vital to note, must be undertaken in light of the *specific context* of the case, not as broad general proposition." *Id.* (emphasis added). The second inquiry is designed to advance an understanding of the law, and to allow officers to avoid suit where qualified immunity is available. Therefore, the right must be "so clearly established that a reasonable officer would understand that what he is doing violates that right." *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008). In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Court noted that while *Saucier's* sequence of inquiry is often appropriate, it often forced courts to decide constitutional questions unnecessarily. *Id.* at 236. Following *Pearson*, courts "are free to consider those questions in whatever order is appropriate in light of the issues" involved in each particular case. *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009).

Once a defense of qualified immunity is raised, the *plaintiff* bears the burden of demonstrating that the government official is not entitled to the defense. *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007). To carry this burden, the plaintiff "cannot simply assert a constitutional violation and rely on broadly stated general rights . . . ." *Cooper v. Parrish*, 203 F.3d 937, 951 (6th Cir. 2000).  Thus, unless the plaintiff "allege[s] facts necessary to show that a defendant has violated [his] constitutional rights," dismissal on qualified immunity grounds is proper. *Id.*

17

**Officer Grant**

The factual allegations related to Officer Grant are contained in Paragraphs 52 and 58 of Plaintiff's Complaint. Paragraph 52 alleges that Officer Grant relayed the Frontier Airlines email to Defendants Driscoll and Carmona. At Paragraph 58, Plaintiff alleges that Defendant Grant organized the tactical entry onto the airplane with the assistance of Wayne County Airport Officer Johnson and officers from the Customs Border Patrol. Plaintiff fails to allege any facts showing that Officer Grant had any interaction with Plaintiff. Officer Grant's alleged misdeeds are limited to forwarding an email authored by Frontier Airlines to others in the law enforcement community and then organizing the entry onto the airplane with others. He neither seized Plaintiff nor searched Plaintiff. As such, Officer Grant is entitled to qualified immunity and should be dismissed from this matter.

**Captain Driscoll**

The allegations as to Defendant Driscoll are contained in Paragraphs 59 and 61 of Plaintiff's Complaint. The wrongdoing attributed to Defendant Driscoll is that he determined that a tactical entry onto the airplane was necessary and recommended that to the Vice President of Public Safety for the Airport Authority, Mark DeBeau. Driscoll's recommendation was that all three passengers be removed from the plane and taken to a detention facility for further investigation.

Paragraph 61 of the Complaint alleges that the plan included having Plaintiff handcuffed.

Defendant Driscoll is entitled to the protections of qualified immunity. The factual assertions contained in the Complaint show that these events transpired on the tenth anniversary of the September 11, 2001 terrorist attacks and less than two years after the airport had been targeted by what has commonly been referred to as the "Underwear Bomber." With that backdrop, the allegations show that Defendant Driscoll had received information from Frontier Airlines specifically stating that Plaintiff may be with the two males. A reasonable officer is well justified in furthering an investigation into the persons specifically identified by the airline as being suspicious. Plaintiff cannot point to any clearly established law holding that Officer Driscoll's concerns and decision to further investigate this matter are unconstitutional. Therefore, Defendant Driscoll is likewise entitled to the protections afforded by qualified immunity.

**Defendant Johnson**

The allegations related to Defendant Johnson are contained at Paragraphs 55, 58 and 68 of the Complaint. Plaintiff alleges that Officer Johnson spoke with the captain of the airplane, Captain Pucci, and that Captain Pucci relayed to Officer Johnson a male passenger from Row 12 had been in the restroom for a long period of time while another male passenger from Row 12 stood outside. Plaintiff further

19

alleges that Captain Pucci stated that the third passenger in Row 12, Plaintiff, may also be involved in the incident but is seated and compliant at this time. Plaintiff goes on to allege as to Officer Johnson that he assisted in organizing the tactical entry onto the airplane with Officer Grant and members of the Customs Border Patrol. Finally, at Paragraph 68, Plaintiff alleges that Officer Johnson boarded the airplane with others.

These factual allegations do not show any seizure of Plaintiff by Officer Johnson. These allegations show that Officer Johnson was provided information that required follow-up. Plaintiff alleges that Officer Johnson spoke directly with the Captain of the airplane, who again mentioned Plaintiff's involvement with the other two males and their suspicious activity. As argued above, these specific factual allegations show that Officer Johnson was justified in investigating this suspicious activity given the circumstances presented to him. Certainly, participating in a plan to further the investigation does not rise to the level of an unconstitutional act. Moreover, Plaintiff has not alleged any specific involvement of Officer Johnson that is afforded constitutional protections under the Fourth Amendment. He neither seized nor searched Plaintiff.

**Defendant DeBeau**

The allegations that relate to Defendant Mark DeBeau are limited to Paragraph 60 of the Complaint. The factual allegations are that Mr. DeBeau was

present at the inspection site and then authorized the tactical entry onto the airplane. Again, Plaintiff does not allege any contact by Mr. DeBeau with Plaintiff. Instead, the allegations of wrongful conduct relate simply to authorizing further investigation into the suspicious activity reported to the Wayne County Airport Authority Defendants that specifically mentioned Plaintiff. Authorizing further investigation, given the underlying factual background, does not rise to the level of an unconstitutional act. As such, the doctrine of qualified immunity protects Mr. DeBeau from expending time and money in conducting discovery or participating further in this litigation.

## Detective Carmona

The allegations that relate to Detective Carmona are contained at Paragraphs 25, 68 and 72 of the Complaint. These allegations contend that Detective Carmona is one of the officers that entered the airplane at approximately 4:25 p.m. and placed handcuffs on Plaintiff. Detective Carmona submits that his activities are entirely constitutional and that therefore this Complaint should be dismissed against him. The Sixth Circuit's opinion in *Dorsey* is instructive in analyzing Detective Carmona's request for qualified immunity. In *Dorsey*, the Plaintiffs, who unquestionably were innocent of any charges under investigation, nevertheless were stopped, forced to lie down on the ground at gunpoint, handcuffed, and transported in police cars to the police station. *Dorsey v Barber*,

517 F.3d 389, 391 (6th Cir, 2008).   Officer Begin made the initial stop of the Plaintiffs based upon information he received over his patrol car's radio. Specifically, he was given a "be on the lookout" for two suspects. The Plaintiffs fit the description of these suspects.

The *Dorsey* Plaintiffs alleged that they were seized in violation of the Fourth Amendment and, specifically, that Officer Begin did not have any reasonable suspicion justifying their stop.   In ultimately determining that Officer Begin was entitled to the protections of qualified immunity, the Sixth Circuit wrote:

"…it is important to note that the officer's reasonable suspicion need not arise exclusively from his own direct observations.   Rather, it can be derived from sources as an informant tips, dispatch information, and direction from other officers." *Id.* at 395 (quoting *United States v. Hensley*, 469 U.S. 221, 231-32 and *Humphrey v Mabry*, 482 F.3d at 848-49).

Here, Detective Carmona is alleged to be one of the police officers that entered the airplane at approximately 4:25 p.m. and placed handcuffs on Plaintiff. As part of the entry team, Detective Carmona is entitled to rely upon the information and directions provided to him.   *See Dorsey*, 517 F.3d at 395.   As these events are unfurling, Detective Carmona is expected to follow the directions of others.   A review of his actions as set forth in Plaintiff's Complaint, shows that Detective Carmona is entitled to a dismissal on the basis of qualified immunity.

## Corporal Bradley

The allegations as to Corporal Bradley are set forth in Paragraphs 27 and 78 of Plaintiff's Complaint.  These allegations suggest that Corporal Bradley arrested Plaintiff by placing her in the back of the police car after she was removed from the airplane and driving her to the detention facility.  As noted by the Court of Appeals in *Yang*, a person is not arrested while being transported from a highly regulated area of an airport to another location to conduct an investigation. *Yang, supra,* at 950. That reasoning holds true here.  Corporal Bradley did not commit a constitutional tort by taking Plaintiff from a highly regulated area of an airport to a detention center for questioning.  The principles of qualified immunity protect Corporal Bradley from further litigation and entitle him to dismissal.

## Officer Bohn

The allegations that Plaintiff has made in her Complaint against Defendant Bohn is that he went to wait for the airplane at the inspection site, Paragraph 54, and then later entered the airplane at approximately 4:25 p.m., Paragraph 68. Nowhere does Plaintiff allege any unconstitutional acts that even suggest that waiting for an airplane at an inspection site or entering an airplane is unconstitutional.  The Fourth Amendment protects against unreasonable searches and seizures.  The allegations made against Corporal Bradley do not suggest either

a seizure or a search.  As such, the claims against Corporal Bradley should be dismissed at this stage of the litigation.

**Lieutenant Wasiukanis**

The sole factual allegation made against Lieutenant Wasiukanis is that at approximately 4:40 p.m., he and an FBI Agent decided that Plaintiff should be strip-searched at the detention center.  See Paragraph 85 of the Complaint.  The Supreme Court has clearly ruled that a person being held in a detention center is subject to a strip-search.  *Florence v. Bd. of Chosen Freeholders of the Cnty. of Burlington*, 132 S. Ct. 1510 (2012).  There, the Plaintiff alleged a violation of his Fourth Amendment rights when he was subject to a strip-search following his arrest on a bench warrant after a traffic stop.  He alleged that the Defendants unconstitutionally conducted a strip-search of him before he was placed into the jail's general population.  In holding that no constitutional impropriety occurred, Justice Kennedy acknowledged that "correctional officials have a legitimate interest, **indeed a responsibility**, to ensure that jails are not made less secure by reasons of what new detainees may carry in on their bodies.  Facility personal, other inmates, and the new detainee himself or herself may be in danger if these threats are introduced into the jail population." *Id.* at 1513.

The Supreme Court's holding in justifies the decision made by Lieutenant Wasiukanis.  Given the underlying circumstances – the events unfolding on the

24

tenth anniversary of the terrorist attacks, a person being brought into a detention center suspected of involvement in manufacturing an explosive device on an airplane, and a similar event having taken place on Christmas day 2009 – Lieutenant Wasiukanis had "…a legitimate interest, indeed a responsibility, to ensure…" that the detention center is not made less secure by reason of what Plaintiff may be carrying in or on her body. Lieutenant Wasiukanis was acting in a reasonable fashion, not violating clearly established law. As such, his decision should be protected from further litigation through the application of qualified immunity.

## Officer Parker

Plaintiff alleges an hour passed before Toya Parker, a female officer began to perform the strip-search. (Docket No. 1, ¶ 88). The allegations go on to suggest that Officer Parker told Plaintiff she was going to be strip-searched, removed Plaintiff's handcuffs, and asked Plaintiff to remove all of her clothing and stand towards the wall so that at least portions of Plaintiff's body would be concealed from the video camera. (Docket No. 1, ¶¶ 89, 91). Officer Parker instructed Plaintiff to bend over, spread her buttocks, and cough while Officer Parker stood a couple of feet away and watched. (Docket No. 1, ¶ 92). Officer Parker then asked Plaintiff to take her hair down so that Officer Parker could check to see if anything was in Plaintiff's hair. (Docket No. 1, ¶ 93). Plaintiff also contends that Officer

Parker lifted her eyelids and also looked in her mouth. (Docket No. 1, ¶ 94). After conducting this search, Officer Parker instructed Plaintiff to put her clothes on. (Docket No. 1, ¶ 95). Lastly, Plaintiff's handcuffs were placed back on. (Docket No. 1, ¶ 97). Officer Toya Parker is entitled to a dismissal pursuant to qualified immunity inasmuch as she is entitled to rely upon the directions provided to her by others. Officer Parker's involvement is following the directions to ensure the safety of those at the detention center. Given that the safety of all at the detention center is paramount, and given that the Supreme Court's decision in *Florence* establishes the constitutionality of a strip-search, Officer Parker's actions of performing the search should be afforded the protections provided by qualified immunity.

## CONCLUSION

The interplay between the pleading requirements, as announced by the Supreme Court in *Twombly* and *Iqbal*, and the parameters of qualified immunity entitles each of the WCAA Defendants to a dismissal. The Supreme Court has made clear that Plaintiff cannot merely file a complaint and engage in discovery. The WCAA Defendants are entitled to have the allegations alleged against them reviewed by this Court at the earliest possible time without engaging in expensive and time-consuming discovery.

For the foregoing reasons, the Wayne County Airport Defendants, MARK DeBEAU, OFFICER JOHNSON, OFFICER GRANT, DETECTIVE CARMONA, LIEUTENANT WASIUKANIS, OFFICER BOHN, CAPTAIN DRISCOLL, CORPORAL BRADLEY and OFFICER PARKER respectfully request that this Honorable Court grant their Motion for Partial Judgment on the Pleadings.

Respectfully submitted,

/s/ T. Joseph Seward
T. JOSEPH SEWARD (P35095)
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road
Livonia, Michigan 48150
Telephone: (734) 261-2400
Facsimile: (734) 261-4510
e-Mail: tjseward@cmda-law.com

*Attorneys for Officer Bohn, Corporal Bradley, Lieutenant Wasiukanis, and Captain Driscoll (Wayne County Airport Authority Defendants)*

/s/ Alan B. Havis
ALAN B. HAVIS (P36988)
Law Offices of Alan B. Havis
25505 West Twelve Mile Road, Suite 1000
Southfield, Michigan 48034
Telephone: (248) 353-3690
Facsimile: (248) 948-6677
e-Mail: ahavis@airportdefender.com

*Attorneys for Mark DeBeau, Officer Grant, Officer Parker, Detective Carmona, and Officer Johnson (Wayne County Airport Authority Defendants)*

27

DATED: November 11, 2013

<div style="border:1px solid">

### Certificate of Service

The undersigned attorney certifies that on November 11, 2013, he served the foregoing document by electronically filing the same with the Clerk of the U.S. District Court for the Eastern District of Michigan, Southern Division by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/T. Joseph Seward
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft
Livonia, MI 48150
Phone: (734) 261-2400
Primary E-mail: tjseward@cmda-law.com
P-35095

</div>