# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **SHOSHANA HEBSHI**, | Honorable Terrence G. Berg |
| Plaintiff, | Magistrate Laurie J. Michelson |
| -v- | Case No. 13-cv-10253 |
| **UNITED STATES OF AMERICA**; **FRONTIER AIRLINES, INC.**; **JOHN BRAND**, in his individual capacity; **UNKNOWN FBI AGENT 1**, in his individual capacity; **UNKNOWN FBI AGENT 2**, in his individual capacity; **MARK DEBEAU**, in his individual capacity; **JEREMY BOHN**, in his individual capacity; **CAPTAIN PATRICK DRISCOLL**, in his individual capacity; **OFFICER GRANT**, in his individual capacity; **LT. M. WASIUKANIS**, in his individual capacity; **TOYA PARKER**, in her individual capacity; **DT. CARMONA**, in his or her individual capacity; **OFFICER JOHNSON**, in his or her individual capacity; **CORPORAL BRADLEY**, in his or her individual capacity; **UNKNOWN CBP OFFICER**, in his individual capacity; **DAVID LAKATOS**, in his individual capacity; **NATHANIAL DEVINS**, in his individual capacity; **UNKNOWN TSA AGENT 1**, in his individual capacity; **UNKNOWN TSA AGENT 2**, in her individual capacity; **ROBERT BALL**, in his individual capacity; **UNKNOWN ICE OFFICER**, in his individual capacity; and **PAUL BRUMLEY**, in his individual capacity; | |
| Defendants. | |
| -and- | |
| **MARK DeBEAU**, **OFFICER GRANT**, **TOYA PARKER**, **DT. CARMONA**, **OFFICER JOHNSON**, **JEREMY BOHN**, **CAPTAIN PATRICK DRISCOLL**, **LT. M. WASIUKANIS**, and **CORPORAL BRADLEY**, | |
| Cross-Plaintiffs, | |
| -v- | |
| **FRONTIER AIRLINES, INC.**, | |
| Cross-Defendant. | |

# **REPLY BRIEF IN SUPPORT OF WCAA DEFENDANTS' JOINT MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

## **TABLE OF CONTENTS**

INDEX OF AUTHORITY………………………………………………………….ii

LAW AND COUNTER-ARGUMENT…………………………………………..1

I.      SEIZURE ………………………………………………………………1

        A.     Investigation…………………………………………………..1

        B.     Authorization of Tactical Entry………………………………….3

        C.     Execution of Tactical Entry…………………………………...3

II.     SEARCH……………………………………………………………….4

        A.     Authorization of Strip Search………………………………….6

        B.     Performance of Strip Search……………………………………..7

CONCLUSION ……………………………………………………………….7

# **INDEX OF AUTHORITY**

*Ahlers v. Schebil,*
    188 F.3d 365 (6th Cir. 1999)……………………………………………….2

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)…..……………………………………………….3 n. 1

*Fabricius v Maricopa County,*
    402 Fed. Appx. 231 (9th Cir. 2010)……………………………………..3 n. 1

*Florence v. Board of Chosen Freeholders of Burlington County,*
    132 S. Ct. 1510 (2012)…………………………………………………….4

*Florida v. Royer,*
    460 U.S. 491 (1983)……………………………………………………….4

*Gibson v. Matthews,*
    926 F.2d 532 (6th Cir. 1991)………………………………………….…1

*Heyerman v. Calhoun County,*
    680 F.3d 642 (6th Cir. 2012)……………………………………………..1

*Houston v. Clark County Sheriff Deputy John Does,*
    174 F.3d 809 (6th Cir. 1999)……………………………………………..4

*Masters v. Crouch,*
    872 F.2d 1248 (6th Cir. 1989)……………………………………………..4

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985)……………………………………………………….6

*Stanton v. Sims,*
    134 S. Ct. 3 (2013)………………………………………………………...1

*T.S. v. Doe,*
    ___ F.3d ___ (6th Cir. 2014)……………………………………………….5

*United States v. Mendenhall,*
    446 U.S. 544 (1980)…....………………………………………………….3

## **LAW AND COUNTER-ARGUMENT**

The question before the Court is whether the WCAA Defendants were "plainly incompetent" to the extent that they relied on and responded to the communications in which Frontier Airlines reported terrorist-like activity aboard a flight and identified Plaintiff as a potential suspect. See *Stanton v. Sims*, 134 S. Ct. 3, 6-7 (2013) (a conclusion that an officer is not entitled to qualified immunity must be accompanied by a determination that the officer was "plainly incompetent").

The Court should decline Plaintiff's implicit invitation to evaluate the WCAA Defendants' personal knowledge and involvement in the underlying events as a collective whole. The WCAA Defendants, all of whom were sued in their individual capacities, "can be held liable based only on their own unconstitutional behavior." *Heyerman v. Calhoun County*, 680 F.3d 642, 647 (6th Cir. 2012); see also *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (**Docket # 89**, p. 14). Against this backdrop, the WCAA Defendants are entitled to qualified immunity.

**I.    SEIZURE**

**A.    Investigation**

Plaintiff argues that Officer Grant "might have determined that there was no reasonable suspicion to detain [Plaintiff]" had he "investigated the discrepancy between the pilot's message and the employee's e-mail." (**Docket # 100**, pp. 21-22). The "discrepancy" to which Plaintiff refers is not discernible, as both the pilot's message and the employee's e-mail identified Plaintiff as a potential suspect.

1

(**Docket # 1**, ¶¶ 49, 55). Additionally, and perhaps more importantly, Plaintiff's complaint contains no factual content from which a plausible inference can be drawn that Officer *Grant* had knowledge of the pilot's message. Plaintiff alleges that Officer *Johnson* received the pilot's message. (**Docket # 1**, ¶ 55). She does not allege that Officer Grant participated in a conversation with the pilot, nor does she allege that Officer Johnson conveyed the pilot's message to Officer Grant.

Plaintiff contends that when the pilot informed Officer Johnson of Plaintiff's potential involvement in the suspicious activity, "the appropriate response would have been to ask the pilot for the facts underlying this supposition." (**Docket # 100**, p. 22). But Plaintiff's complaint contains no factual allegations regarding whether or how Officer Johnson responded to the information provided by the pilot.

Plaintiff argues that *Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1999) – a case in which the Sixth Circuit stated that officers "cannot simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone" – supports her claim that Officer Grant and Officer Johnson violated her clearly established rights. (**Docket # 100**, p. 22). Plaintiff construes the excerpt from *Ahlers* out of context. The Sixth Circuit <u>rejected</u> the plaintiff's attempt to hold the defendants "liable for evidence which they failed to collect and, therefore, of which they were unaware," and <u>affirmed</u> dismissal of her Fourth Amendment claims. *Id.*

Similarly here, Plaintiff seeks to hold Officer Grant and Officer Johnson liable for their failure to collect evidence that, in Plaintiff's view, would have established

2

that Frontier identified her as a suspect based on her "name and seat assignment." (**Docket # 1**, ¶ 50). Thus, *Ahlers* does not support the position advanced by Plaintiff.

### B. Authorization of Tactical Entry

Though Plaintiff acknowledges that neither Mark DeBeau nor Captain Driscoll seized her, she contends that they are subject to liability in their supervisory capacities for recommending or authorizing the tactical entry. To the extent that supervisory liability is even a tenable theory,[1] Plaintiff's complaint contains no factual content from which an inference can be drawn that her claims against Captain Driscoll and Mark DeBeau are based on a theory of supervisory liability. In any event, Captain Driscoll and Mark DeBeau were not "plainly incompetent" for believing that the information provided by Frontier justified their actions.

### C. Execution of Tactical Entry

Plaintiff's contention that Officer Grant and Officer Johnson violated her Fourth Amendment rights by organizing the tactical entry lacks merit. Such actions do not amount to a "seizure." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).

Detective Carmona was not "plainly incompetent" for believing that the information provided by Frontier justified his actions in executing the tactical entry.

---

[1] See *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (characterizing supervisory liability as a "misnomer" in the context of § 1983 actions because – given the inapplicability of vicarious liability – each government official, title notwithstanding, is only liable for his own misconduct); *id.* at 692-93 (Souter, J., dissenting) (interpreting the Court's pronouncement as eliminating, nor merely narrowing, supervisory liability); *Fabricius v Maricopa County*, 402 Fed. Appx. 231, 232 (9th Cir. 2010) (stating that "there is no supervisory liability in section 1983 actions").

Plaintiff's complaint contains no factual content from which an inference can be drawn that the other WCAA Defendants who executed the tactical entry – Officer Johnson and Officer Bohn – had any contact with Plaintiff. Given her acknowledgment that two other suspects were removed from the aircraft in accordance with the planned tactical entry, the mere presence of Officer Johnson and Officer Bohn cannot be deemed a violation of Plaintiff's Fourth Amendment rights.

Detective Carmona and Corporal Bradley were not "plainly incompetent" for believing that the circumstances described by Frontier warranted precautionary measures during and after the tactical entry. *Houston v. Clark County Sheriff Deputy John Does*, 174 F.3d 809, 814-15 (6th Cir. 1999) (officer may draw his weapon, order a suspect out of a vehicle, handcuff a suspect, and detain a suspect in a police vehicle during a detention when circumstances warrant such precautions); *Florida v. Royer*, 460 U.S. 491, 504 (1983) (an officer may move a suspect from one location to another during a detention when circumstances warrant such precaution).

II. **SEARCH**

Plaintiff contends that the WCAA Defendants' reliance on *Florence v. Board of Chosen Freeholders of Burlington County*, 132 S. Ct. 1510 (2012) is misplaced. She argues that because the Supreme Court did not issue its decision in *Florence* until after the events in question, the Court cannot look to *Florence* for guidance in determining whether the WCAA Defendants violated her clearly established rights. (**Docket # 100**, p. 20, n. 3). She cites *Masters v. Crouch*, 872 F.2d 1248 (6th Cir. 1989), among others, as controlling precedent. (**Docket # 100**, p. 20).

4

In *T.S. v. Doe*, ___ F.3d ___ (6th Cir. 2014), the Sixth Circuit stated that it was "simply not possible" to square its decision in *Masters* with the Supreme Court's decision in *Florence*. *Id.* As to the plaintiffs' argument that *Masters* nonetheless controlled because the strip search occurred before the issuance of *Florence* – the same argument raised by Plaintiff in this case – the Sixth Circuit stated:

> [T]he major premise of the plaintiffs' argument is clearly and unquestionably wrong. They argue . . . that we must put on judicial blinders and ignore *Florence* because it was rendered nearly three years after the conduct at issue and, thus, cannot displace the prevailing law of June 2009.
> \* \* \*
> For the purpose of establishing that an official has acted in objective good faith, the most recent pronouncement of the Supreme Court on the issue will often serve as the best analytical starting point, regardless of when the case was decided. *Florence* provides an excellent example of this. The case did not involve an issue of first impression in the federal courts. Rather, **the Court granted a writ of certiorari in the case to resolve a circuit split that first emerged in 2008**. Beginning with the Eleventh Circuit in [*Powell v. Barrett*, 541 F.3d 1298 (11th Cir. 2008)], a number of federal circuits began reevaluating the legal position staked out by *Masters* and a number of similar cases rendered during the 1980s. Intervening case law weakens the strength of these decades-old cases, as shown by the reasoning of the more contemporary opinions.
> \* \* \*
> Citation to *Florence* is, in large respect, a shorthand for the fundamental shift in the law that has taken place over the past three decades and that so weakened the foundation of *Masters* as to bring about its final collapse in *Florence*. **By June 2009, a reasonable official could have consulted the numerous Supreme Court opinions cited above, or the more recent opinions of our sister circuits, and, in objective good faith, concluded that *Masters* was no longer good law. *Florence* did nothing more than articulate this fact. It is thus wholly consistent with the principles of qualified immunity to give the defendants the benefit of the Court's ruling.** Accordingly, the defendants are entitled to qualified immunity . . . . *Id.* (internal citations and quotations omitted).

5

As reflected by the foregoing, *T.S.* refutes Plaintiff's argument that the WCAA Defendants cannot rely on *Florence* because their alleged acts preceded the decision.

Plaintiff also argues that *Florence* is distinguishable because the issue before the Court was whether detainees *who will be admitted to the general population* may be subject to strip searches as a matter of course. Relying on Part IV of the *Florence* opinion – which is *not* part of the majority opinion – Plaintiff argues that the Court left open the question of whether detainees *who will be held alone in a cell, segregated from the general population,* may be subject to strip searches as a matter of course. Plaintiff's interpretation of *Florence*, though far too narrow in light of the concerns justifying strip searches, does not impact the qualified immunity analysis. If "the question was open at the time [the WCAA Defendants] acted," then they are "immune from suit" regardless of whether "[their] actions violated the Fourth Amendment." *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985).

Further, the WCAA Defendants were not "plainly incompetent" in believing that Frontier's communications and requests for assistance justified a strip search to dispel or confirm suspicions that Plaintiff was involved in terrorist-like activities. If a suspicionless strip search of a detainee upon admission into a detention facility is constitutional, as the Supreme Court held in *Florence*, it follows that a strip search based on suspected involvement in a terrorist plot is likewise constitutional.

### A. Authorization of the Strip Search

Though Plaintiff acknowledges that Lieutenant Wasiukanis did not perform the strip search, she argues that he is subject to supervisory liability for authorizing

6

it. To the extent that supervisory liability is a viable theory (footnote 1), Plaintiff's complaint contains no factual content from which an inference can be drawn that her claim against Lieutenant Wasiukanis is based on such theory. In any event, he was not "plainly incompetent" for authorizing the strip search based on Frontier's report of a suspected terrorist plot and identification of Plaintiff as a suspect.

### B. Performance of the Strip Search

The fact that Lieutenant Wasiukanis was not "plainly incompetent" for authorizing the search compels the conclusion that Officer Parker was not "plainly incompetent" for performing the search at his direction. Just as the search itself was reasonable, so too was the manner in which Officer Parker performed it. Based on Plaintiff's allegations, Officer Parker advised Plaintiff to face the wall – away from the video camera – so that her body would be concealed, and she conducted the strip search outside the presence of others. Plaintiff makes much of the fact that she was detained for an hour before the search was performed, but her factual allegations do not impute responsibility for the minor delay to the WCAA Defendants.

### CONCLUSION

For the foregoing reasons, the WCAA Defendants respectfully request that this Honorable Court grant their motion for partial judgment on the pleadings.

| | |
|---|---|
| /s/ T. Joseph Seward (P35095) | /s/ Alan B. Havis (P36988) |
| Cummings, McClorey, Davis & Acho | Law Offices of Alan B. Havis |
| 33900 Schoolcraft Road | 25505 West Twelve Mile, Suite 1000 |
| Livonia, Michigan 48150 | Southfield, Michigan 48034 |
| 734-261-2400 / 734-261-4510 | 248-353-3690 / 248-948-6677 |
| *Attorneys for Bohn, Driscoll Bradley, and Wasiukanis* | *Attorneys for DeBeau, Carmona, Johnson, Grant, and Parker* |