2013 WL 1296827
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Shanier SMITH–MURREY, Plaintiff,
v.
Joseph L. MARSH, Edward A. Sukel,
David A. Fobar, Jeffrey W. Meussner,
and the City of Southgate, Defendants.

No. 11–13910.    |    March 30, 2013.

**Attorneys and Law Firms**

Sheldon Halpern, Sheldon Halpern Assoc., Huntington Woods, MI, for Plaintiff.

Anne McClorey McLaughlin, Johnson, Rosati, Schultz & Joppich, P.C., Farmington Hills, MI, for Defendants.

**Opinion**

*ORDER*

JULIAN ABELE COOK, JR., District Judge.

**\*1** This case arises from the claim of a wrongful seizure and subsequent forfeiture of a motor vehicle that had been owned by the Plaintiff, Shanier Smith–Murrey. In her lawsuit, the Plaintiff assigned the responsibility for this allegedly illegal act upon the Defendants (the City of Southgate, as well as the following members of its police force; namely, Officer Joseph L. Marsh, Detective Lieutenant Edward A. Sukel, Detective Sergeant David A. Fobar, and Police Chief Jeffrey W. Meussner.) The Plaintiff recites three claims in her complaint, all of which are based upon violations of 42 U.S.C. § 1983; namely, (1) the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution by Marsh; (2) her Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution by Sukel, Fobar, [1] and Meussner; and (3) municipal liability against the City for its failure to implement policies that would have prevented these constitutional violations. She also alleges a claim under Michigan law for the conversion of private property by the Defendants for their personal use. Currently before the Court are (1) the Defendants' motion for summary judgment, Fed.R.Civ.P. 56(a), and/or for the entry

of a judgment on the pleadings, Fed.R.Civ.P. 12(c)) and (2) the Plaintiff's motion to accept her untimely response.

**I.**

On September 10, 2009, a federal search warrant was issued for a residence at 6247 Bromley Court in West Bloomfield, Michigan. [2] The Plaintiff shared this residence with her husband, Rafael Murrey. On the following day, a multijurisdictional task force headed by a Drug Enforcement Agency ("DEA") team executed the warrant, arrested Murrey, and seized, *inter alia,* the white Chevrolet Trailblazer. Although most of the seized items were listed on a return and receipt form with an indication that they were being taken to the Detroit District Office for safe-keeping, it appears that the white Chevrolet Trailblazer vehicle which is the subject of challenged search and seizure was taken to the Southgate Police Department. The Defendants submit that (1) the notice of the City's seizure activity was given directly to the Plaintiff and her husband, and (2) they properly initiated forfeiture proceedings only after this motor vehicle remained unclaimed until the requisite time period for redemption had expired. It is Marsh's assertion that (1) he completed one set of a "Notice of Seizure and Intention to Forfeit and Dispose of Property" paperwork on September 11 th while at the Plaintiff's residence and served it on Murrey while there and (2) a second set of the requisite paperwork was served on the Plaintiff at an unidentified location on September 14th at the Murrey residence. Interestingly, the Court notes that both sets of paperwork recite that they were served on September 14th. Notwithstanding the Defendants assertions, the Plaintiff denies their allegations relating to service of notice that the vehicle was taken by the City or that the vehicle was being converted to its control and use.

**\*2** Furthermore, the Plaintiff maintains that she immediately posted bond with the Wayne County Prosecutor to contest forfeiture of the items seized-including, she believed, the vehicle. Several months later, in March 2010, and in the course of negotiating a resolution of the forfeiture action, she was advised by an assistant prosecutor that it did not have the vehicle because the City of Southgate had assumed control over the vehicle. Upon so learning, she advised the City and Sukel that she intended to contest the forfeiture. Over a series of communications back and forth, Sukel stated that his review of the file indicated that the Plaintiff and her husband had been properly served with notice of the seizure

and that the subsequent forfeiture was in accordance with the law.

Thereafter, the Plaintiff commenced a lawsuit in the Wayne County Circuit Court of Michigan ("Wayne Circuit"), in which she challenged the right of the City et al. to take and detain the white Chevrolet Trailblazer, seeking treble damages under the state conversion statute. *See* Compl., *Smith–Murrey v. City of Southgate,* No.2010–146569–CZ (Wayne Cnty. Cir. Ct., filed Dec. 17, 2010). However, the state court concluded that this municipality was protected from tort liability by governmental immunity, and, thereby, granted a summary disposition in favor of the City. This lawsuit followed.

## II.

A motion for judgment on the pleadings should be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 582 (6th Cir.2007) (citation and internal quotation marks omitted). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (citation and internal quotation marks omitted). However, this assumption of truth does not extend to "true legal conclusions or unwarranted factual inferences." *Id.* at 581–82 (citation and internal quotation marks omitted).

In considering a Rule 12(c) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 335 (6th Cir.2007) (citing Fed.R.Civ.P. 10(c)); *see also Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." (emphasis omitted)); *Barany–Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir.2008) (applying *BaranySnyder,* 539 F.3d at 332, in the context of a Rule 12(c) motion (citation and internal quotation marks omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.,* 108 F.3d 86, 88 n. 3 (6th Cir.1997); *see*

*also Bassett v. NCAA,* 528 F.3d 426, 430 (6th Cir.2008). Supplemental documents attached to the motion to dismiss do not convert the motion into one which seeks the entry of a summary judgment if the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria,* 985 F.2d 840, 842 (6th Cir.1993) (citing *Watters v. Pelican Int'l, Inc.,* 706 F.Supp. 1452, 1457 n. 1 (D.Colo.1989)).

**\*3** The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses ...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.,* 620 F.Supp.2d 816, 819 (E.D.Mich.2009) (citing *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 560 (6th Cir.2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991); *see also Anderson,* 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

## III.

The Court first addresses the Defendants' argument that the Plaintiff's response brief should not be accepted because it was untimely filed and no request for an extension was made. She subsequently filed a motion for an extension of time to file.

The Defendants' dispositive motion was filed on May 31, 2012. Pursuant to E.D. Mich. LR 7.1(e)(1)(B) ("A response to a dispositive motion must be filed within 21 days after service of the motion.") and Fed.R.Civ.P. 6(d) ("When a party may or must act within a specified time after service and service is made [by sending it by electronic means], 3 days are added after the period would otherwise expire under Rule 6(a)."), the Plaintiff's response was due on June 24, 2012. However, her response was not filed until July 6th-nearly two weeks late-with no acknowledgment of its tardiness. After the Defendants called attention to this late filing in their reply brief, the Plaintiff filed a motion for an extension of this deadline, claiming that her failure to timely file the response was the result of excusable neglect. *See* Fed.R.Civ.P. 6(b) (1) ("When an act ... must be done within a specified time, the court may, for good cause, extend the time ... (B) on [a] motion made after the time has expired if the party failed to act because of excusable neglect.").

 **\*4** In determining whether excusable neglect has been shown, courts apply a balancing test that considers the following five factors: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and the potential impact upon the judicial proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the moving party; and (5) whether the moving party acted in good faith. *Nafziger v. McDermott Int'l, Inc.,* 467 F.3d 514, 522 (6th Cir.2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs.,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

First, there is no indication that the twelve-day delay in filing the brief was prejudicial to the Defendants, all of whom were able to fully respond to its contents in their reply. Second, the length of the delay-while not insignificant-was not substantial and had no apparent potential or actual impact on the judicial proceedings. As for the third and fourth factors, the Plaintiff avers that the delay was the result of (1) several weather-related power outages that "strained abilities and capacities for efficient handling of schedules and dockets"; and (2) unexpected unavailability of staff members who are dealing with this matter. (Pl.'s Mot. to Accept Late Filed Ans. ¶ 5, ECF No. 33). While these reasons-unsupported by any specific information-do not strike the Court as especially compelling, they nevertheless do not give rise to any suggestion of bad faith. Thus, and especially in light of the lack of prejudice to the Defendants, the Court will accept the Plaintiff's tardy responsive brief.

## IV.

The Court, now turning to the substance of the Defendants' dispositive motion, will first address their argument that the Plaintiff's state-law claim is barred by res judicata and/or collateral estoppel.

The doctrine of collateral estoppel "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *S.E. C. v. Quinlan,* 373 F. App'x 581, 584–85 (6th Cir.2010) (quoting *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)). Under Michigan law, a party that seeks to preclude the relitigation of an issue under the doctrine of collateral estoppel must establish the following three elements: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.,* 469 Mich. 679, 677 N.W.2d 843, 845–46 (Mich.2004) (citation, internal quotation marks, and footnote omitted). However, mutuality of estoppel is not required when collateral estoppel is used defensively. *Id.* at 850.

Here, there can be no question that all three elements are satisfied with respect to the Plaintiff's claim of conversion by the City. The exact issue of the City's entitlement to governmental immunity under Mich. Comp. Laws §

691.1407(1) with respect to this issue has already been litigated in the Wayne Circuit. Noting that the Plaintiff did not appeal the state court order, it is abundantly clear that this judgment is final. The City and the Plaintiff were parties to both suits. Furthermore, there is no question that estoppel is mutual, although because the City is using it defensively, it need not be. Therefore, Count IV of the complaint is barred by collateral estoppel as against the City.

 **\*5** The City also argues that the bar of preclusion extends to this claim as against the individual Defendants. The Court disagrees. The individual Defendants seek immunity under a different section of the immunity statute, Mich. Comp. Laws § 691.1407(2). As this issue has not been litigated, it is clear that the first requisite for the application of collateral estoppel has not been satisfied.

The Court will next consider the effect of res judicata upon this case. Res judicata, or claim preclusion, refers to "the effect of a judgment in foreclosing of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Potts v. Hill,* 77 F. App'x 330, 333 (6th Cir.2003) (quoting *Migra v. Warren City Sch. Dist. Bd. Of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Federal courts must give preclusive effect to prior state court judgments. *Katt v. Dykhouse,* 983 F.2d 690, 693 (6th Cir.1992). "When asked to give preclusive effect to a prior state court judgment, a federal court must look to the law of the rendering state to determine whether and to what extent that prior judgment should receive preclusive effect in a federal action." *O'Leary v. Charter Township of Flint,* No. 09–13075, 2010 WL 2870400, at \*4 (E.D.Mich. July 21, 2010) (internal quotation marks omitted) (quoting *Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir.1997)). The earlier judgment in this case was issued by a Michigan court. Thus, the law of Michigan must control the preclusive effect of the prior state-court action.

"[R]es judicata requires establishing three elements: (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Adair v. State,* 470 Mich. 105, 680 N.W.2d 386, 408 (Mich.2004) (citation and internal quotation marks omitted). It also extends to "every claim arising out of the same transaction which the parties, exercising reasonable diligence, could have raised but did not." *Sprague v. Buhagiar,* 213 Mich.App. 310, 539 N.W.2d 587, 589 (Mich.Ct.App.1995); *see also Cromwell v. Cnty. of Sac,* 94 U.S. 351, 365, 24 L.Ed.

195 (1876) ("Except in special cases, the plea of res judicata applies not only to points upon which the court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of the issue, and which the parties, exercising reasonable diligence, might have brought forward at the time." (citation omitted)).

The first element is satisfied. In a Michigan state court, the municipality was granted a summary disposition. Under Michigan law, the entry of a summary disposition constitutes a final decision on the merits. *Chakan v. City of Detroit,* 998 F.Supp. 779, 783 (E.D.Mich.1998).

The second element, which requires a substantive convergence of the issues in the first and second lawsuits, has also been satisfied. "Michigan law defines res judicata broadly to bar litigation in the second action not only of those claims actually litigated in the first action, but also claims arising out of the same transaction that the parties, exercising reasonable diligence, could have litigated but did not." *Peterson Novelties, Inc. v. City of Berkley,* 259 Mich.App. 1, 672 N.W.2d 351, 358 (Mich.Ct.App.2003). "If the same facts or evidence would sustain both [lawsuits], the two actions are the same for the purpose of res judicata." *Id.* (internal quotation marks and citations omitted). Applying this principle to the instant lawsuit, it appears that the prior action and this litigation are based on the same events which surround the claimed unlawful forfeiture of the Plaintiff's vehicle. In both cases, the Plaintiff has contended that her vehicle was seized by the City of Southgate without notice. She submits that this unilateral municipal action constitutes an unlawful assumption of ownership over the vehicle.

 **\*6** The third element is satisfied as well. Inasmuch as the City of Southgate was the sole defendant in the first lawsuit, the legal ramifications of this doctrine will apply to it, as well as to its privies. In essence, the arm of res judicata will extend to the individual Defendants in this case if they are deemed to be in privity with the City of Southgate.

According to Michigan law, "a perfect identity of the parties is not required; rather, the Michigan courts require a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation." *McCoy v. Michigan,* No. 08–1641, 2010 WL 841198, at \*3 (6th Cir.2010) (internal quotation marks omitted) (citing *Adair,* 680 N.W.2d at 396, 397). Courts applying the law of Michigan have found that an employer-employee relationship

fulfills the requirements of privity, even if the employees are sued in their individual capacity. *See, e.g., id.* (test has been met where defendants have employer-employee relationship "regardless of whether the claims in the first suit were brought against the Defendants in the same capacity as the claims in the second"); *O'Leary,* 2010 WL 2870400, at \*6–8 (finding privity between employer and employee because "there is a sufficient identity of interests and a sufficient working or functional relationship"); *Motuelle v. Ruffini,* No. 244557, 2004 WL 1254304, at \*4 (Mich.Ct.App. June 8, 2004) (finding privity between employer and employee in individual capacity because "[p]laintiff's suit against defendants involves defendants' conduct while in performance of their duties as ... employees. Defendants' interests as employees were presented and protected in plaintiff's suit against the [employer], which involved the same set of facts.").

In this case, the complaint relates to an alleged unlawful forfeiture of the Plaintiff's vehicle, which also formed the foundation of the complaint that was filed in state court. Although her complaint contains additional details which pertain to the respective roles of the individual Defendants, the essential facts are the same. The individual Defendants are being sued for their alleged misconduct while working as municipal employees. Thus, under the law of Michigan, they are in privity with the City of Southgate.

In summary, and noting that all of the requisite elements have been met, the doctrine of res judicata bars the Plaintiff's state law claims against all of the Defendants. The res judicata defense was limited by the Defendants to the Plaintiff's state law claim, Def. Reply 7. As a result, the Court will not consider its application, if any, to the currently pending constitutional claims.

**B.**

In her federal claims, the Plaintiff alleges violations of the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. To establish a claim under this federal statute, a plaintiff must set forth those facts that, when construed favorably, establish "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) [that was] caused by a person acting under the color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir.2006) (citing *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)).

**\*7** The individual Defendants submit that they are entitled to qualified immunity on these § 1983 claims. The doctrine of qualified immunity generally protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Its purpose is "to shield the official from suit altogether, saving him or her from the burdens of discovery and costs of trial." *Klein v. Long,* 275 F.3d 544, 550 (6th Cir.2001) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

"Once [this doctrine has been] raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *O'Malley v. Flint,* No. 09–2037, 2011 WL 3055227, at \*2 (6th Cir. July 26, 2011) (citing *Ciminillo v. Streicher,* 434 F.3d 461, 466 (6th Cir.2006)). A defendant is entitled to qualified immunity unless the court determines that (1) the facts—when viewed in a light that is most favorable to the plaintiff—demonstrate that a constitutional right has been violated; and (2) constitutional right was clearly established at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also Pearson v. Callahan,* 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (permitting courts to consider the two prongs in any order). A constitutional right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Katz,* 533 U.S. at 201.

As an initial matter, the Plaintiff's Fourth Amendment and Fifth Amendment due process claims must be dismissed against all of the Defendants. First, she does not offer any factual allegations to support her belief that a Fourth Amendment violation has occurred. In her complaint, as well as in her response brief, the Plaintiff recites the basic principles of this Amendment. However, the Plaintiff refers thereafter almost exclusively to the alleged due process violation, about which she has complained.. "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource,* 576 F.3d 551, 560 (6th Cir.2009). Her Fifth Amendment due process claim is equally unviable because it applies only to the federal government and does not extend to state action. *See, e.g., Luckett v. Turner,* 18 F.Supp.2d 835, 838–39 (W.D.Tenn.1998) (Fifth Amendment

due process clause has not been incorporated by Fourteenth Amendment).

The Court will next consider the Plaintiff's claims against Marsh. She submits that contrary to the information contained in the notice of forfeiture documents, neither she nor her husband, Rafael Murrey, were ever served with a copy of the notice of forfeiture, in violation of the Fifth and Fourteenth Amendments. "The ... Due Process Clause entitles individuals whose property interests are at stake to 'notice and an opportunity to be heard.' " *Dusenbery v. United States,* 534 U.S. 161, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) (quoting *United States v. James Daniel Good Real Property,* 510 U.S. 43, 48, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993)); *see also Flaim v. Med. Coll. of Ohio,* 418 F.3d 629, 638 (6th Cir.2005) ("Notice ... is one of the most fundamental aspects of due process when the government seeks to deprive an individual of ... property."). "In order to establish a procedural due process claim, a plaintiff must show that (1)[she] had a life, liberty, or property interest protected by the Due Process Clause; (2)[she] was deprived of this protected interest; and (3) the state did not afford [her] adequate procedural rights prior to depriving [her] of the property interest." *O'Neill v. Louisville/Jefferson Cty. Metro Gov't,* 662 F.3d 723, 732 (6th Cir.2011) (quoting *Waeschle v. Dragovic,* 576 F.3d 539, 544 (6th Cir.2009).

 **\*8** In this case, the apparent inconsistencies which surround Marsh's service of the notice of forfeiture is sufficient to create a genuine issue of a material fact that should be evaluated by a jury. Addressing the issue relating to the service on Rafael Murrey, the Court notes that Marsh has provided testimony which, if accepted by the Court, conflicts with the available documentation. As an example, Marsh- during his deposition-asserted that he served Rafael Murrey with notice of seizure at his home on September 11, 2009. (Marsh Dep. 34:25–35:3, March 27, 2012). However, the date of signature on the notice of seizure form indicates that the Plaintiff's husband's copy was signed by Marsh three days later, on September 14, 2009. (Defs.' Summ. J. Ex. 2). This inconsistency between Marsh's testimony and the document casts doubt upon the veracity of the document.

It appears that Marsh is also unable to accurately recall whether he served notice on the Plaintiff on September 11, 2009 or September 14, 2009. During his deposition, when asked when he served the Plaintiff, he replied in the affirmative as to both dates. (Marsh Dep. 44:5–45:11). Moreover, Marsh testified that he inaccurately documented

the location of service. The incident report indicates that both Murrey and his wife were served at their home. However, Marsh stated in his deposition that she was not served at her home. In fact, he was unable to remember where she had been served or who was with him at the time of the service of the documents. Thus, Marsh admitted that the statement on the incident report regarding the location of service is factually inaccurate. Again, the inconsistency between Marsh's testimony and the documentation are sufficient to raise a question as to whether the Plaintiff was ever served with a notice of forfeiture. Examining the facts in the light most favorable to the Plaintiff, the Court concludes that (1) a reasonable jury could determine that the documents are fraudulent, and (2) Marsh knowingly failed to provide the Plaintiff with notice of the forfeiture in violation of her Fourteenth Amendment rights.

The "taking clause" within the Fifth Amendment applies to state action through the due process clause in the Fourteenth Amendment. *See, e.g., Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 481 n. 10, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). In *Bennis v. Michigan,* 516 U.S. 442, 452, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), the Supreme Court suggested by negative implication that the viability of a violation claim within the "taking clause" may hinge on whether the forfeiture proceeding violated the due process clause of the Fourteenth Amendment. *See also Bowman v. United States,* 35 Fed. Cl. 397, 406 (Fed.Cl.1996) ("[I]t is plausible that an improper *in rem* forfeiture could give rise to a taking claim."). The Court stated that if a forfeiture proceeding does not violate the Fourteenth Amendment, the property is lawfully transferred by virtue of that proceeding from the owner to the government entity. *See id.* If property is lawfully transferred to a government entity through a valid civil forfeiture procedure, no reimbursement of the owner is required. *Id.* at 452–53 (citing *United States v. Fuller,* 409 U.S. 488, 492, 93 S.Ct. 801, 35 L.Ed.2d 16 (1973)) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain.").

 **\*9** In this case, the Plaintiff has demonstrated that she had a property interest in her vehicle as shown by her Certificate of Title. (Compl.Ex.A). This interest is not contested by the Defendants. On the other hand, the Defendants submit that this claim must fail because there was an available, adequate post-deprivation remedy in Mich. Comp. Laws § 333.7523(c), which allowed her to challenge the forfeiture.

However, the Plaintiff also submits that she never received any notice that Southgate authorities had seized her car. If true, this lack of notice would negate the state law postdeprivation remedy and constitute a violation of her rights to due process under the Fourteen Amendment. Thus, a question of fact remains as to Officer Marsh's liability under the Fifth Amendment.

Next, the Plaintiff contends that Detective Sergeant Fobar and Detective Lieutenant Sukel violated her Fourteenth and Fifth Amendment rights as Marsh's supervisors and as a result of their personal involvement in the transfer and retitling of her vehicle. After careful review, the Court has determined that these allegations are without merit and the claims against Fobar and Sukel must be dismissed.

Liability for the action of subordinates only attaches to a supervisor in his individual capacity if he "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir.1999). Furthermore, "a failure of a supervisory official to supervise, control, or train the offending individual is not actionable absent a showing that the official either encouraged or in some way directly participated in [the violation]." *Hays v. Jefferson County, KY.,* 668 F.2d 869, 874 (6th Cir.1982). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir.1993) (quoting *Hays,* 668 F.2d at 874).

Fobar testified that he is not Marsh's supervisor, Fobar Dep. 4:17–18, and there is no evidence to suggest that he had personal knowledge of Marsh's actions regarding the seizure of the vehicle. He testified that when he was ordered to transfer title of the vehicle to Southgate, he read the notice of seizure and verified that the correct vehicle was listed. He also verified that any parties with an ownership claim to the vehicle were served with notice. Fobar also acknowledged that he had relied on the facial validity of the forfeiture documents and did not further investigate any additional reports regarding the seizure. The Plaintiff contends that this failure to investigate resulted in a violation of her constitutional rights. The Court disagrees. The notice is facially valid. The Sixth Circuit has held that under these circumstances, an officer is entitled to qualified immunity:

> [W]here individual police officers, acting in good faith and in reliance on the reports of other officers, have a sufficient factual basis for believing that they are in compliance with the law, qualified immunity is warranted, notwithstanding the fact that an action may be illegal when viewed under the totality of the circumstances .... Accordingly, in a case such as this where one officer's claim to qualified immunity from the consequences of a constitutional violation rests on his asserted good faith reliance on the report of other officers, we consider: (1) what information was clear or should have been clear to the individual officer at the time of the incident; and (2) what information that officer was reasonably entitled to rely on in deciding how to act, based on an objective reading of the information.

**\*10** *Humphrey v. Mabry,* 482 F.3d 840, 847–48 (6th Cir.2007). In this case, the information available to Fobar indicated that the forfeiture paperwork was valid, and his reliance upon the information contained in those documents was reasonable.

As with Fobar, there is no evidence that Sukel (1) had any personal knowledge of Marsh's actions, (2) was Marsh's supervisor or (3) ordered Marsh to seize the vehicle without proper notice. The only evidence which implicates Sukel in this alleged constitutional violation is his order to Fobar to transfer ownership from the Plaintiff's name to Southgate. However, it appears that Sukel relied on the same facially valid notice that Fobar read. As discussed above, this reliance on facially valid documentation was reasonable under the circumstances.

In addition, the Plaintiff submits that Fobar and Sukel violated the law in Michigan when they failed to notify the prosecuting attorney about the location of the vehicle. This statutory violation, she contends, resulted in a deprivation of post-seizure due process.

Mich. Comp. Laws § 333.7523(b) requires that the agency which seizes property "shall immediately notify the prosecuting attorney for the county in which the property was seized." The Court notes that this particular statutory

provision does not require post-seizure notification be given to the Plaintiff. Moreover, this statute does not vest the Plaintiff with a personal constitutional right. Furthermore, she cannot claim that the Defendants' failure to notify the prosecutor has deprived her of a right "secured by the Constitution and laws." *Jones v. Union County, TN,* 296 F.3d 417, 429 (6th Cir.2002) (citing *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1060 (6th Cir.1998)). Even if the state statute could be considered as having vested the Plaintiff with a fundamental right to have the prosecuting attorney notified, the violation of such a state-law right would not be actionable under § 1983. *Harrill v. Blount County, TN.,* 55 F.3d 1123, 1125 (6th Cir.1995) ("A state statute cannot 'create' a federal constitutional right.... The violation of a right created and recognized only under state law is not actionable under § 1983."). The claims against Fobar and Sukel must be dismissed.

The claims against Police Chief Meussner are similarly without merit. There is no evidence that Meussner possessed any personal knowledge of the actions of Marsh, Fobar, or Sukel, let alone that he implicitly authorized or approved such actions. The only link between Meussner and the Plaintiff is his announcement which indicated that her vehicle had become a part of Southgate's fleet of cars. Such an announcement does not equate to an endorsement of any alleged fraudulent activity. The claims against Meussner must be dismissed. *See, e.g., Mason v. City of Warren Police Dept.,* No. 10–CV14182, 2011 WL 5025 841, at *4 (E.D.Mich. Oct.21, 2011) (police chief is entitled to dismissal where plaintiff failed to offer any facts personally implicating him in alleged constitutional violation).

 **\*11** To establish municipal liability against the City of Southgate, the Plaintiff must show that the alleged constitutional violations were inflicted upon her pursuant to a governmental custom, policy, or practice. *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). Because a municipality cannot be held liable on the basis of vicarious liability or respondeat superior, a complainant must show that "deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of Cnty. Comm 'rs v. Brown,* 520 U.S. 397, 415, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

In her complaint, the Plaintiff alleges that the City of Southgate does not have a policy, custom, or procedure to review forfeiture actions in situations where multiple jurisdictions participated in the seizure. (*see* Compl. ¶¶ 40–43). Under this theory, she maintains that Southgate's inaction caused her to sustain a violation of her fundamental rights. "Though the Supreme Court has only addressed municipal inaction under § 1983 in the failure to train context, courts apply the same analysis to failure to establish and enforce policy claims as well." *Gailor v. Armstrong,* 187 F.Supp.2d 729 (W.D.Ky.2001) (listing cases) (citation omitted); *see also Kahlich v. City of Grosse Pointe Farms,* 120 F. App'x 580, 584–85 (6th Cir.2005) (analyzing municipal liability under failure to enact policy theory using same rubric as failure to train).

The Supreme Court has determined that (1) a municipality will be liable for inaction only in "limited circumstances," and (2) a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson,* —— U.S. ——, ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (citing *Okla. City v. Tuttle,* 471 U.S. 808, 822–23, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality op.)). To establish liability, the Plaintiff must show that Southgate's "failure to train its employees in a relevant respect [amounts] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (quoting *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Fleming ex rel. Fleming v. Fields,* No. 04–74354, 2006 WL 2571953, at *5 (E.D.Mich. Sept.5, 2006) (adopting report and recommendation which noted that "inaction only becomes a policy or custom when the failure to enact policy 'amounts to deliberate indifference to the rights of persons with whom [the corrections guards] come into contact.' " (quoting *City of Canton,* 489 U.S. at 388)). A finding of deliberate indifference "requir[es] proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown,* 520 U.S. at 410. "By itself, the wrongful conduct of a single officer without any policy-making authority [does] not establish municipal policy." *Id.* (citing *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 121, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

 **\*12** The Sixth Circuit has incorporated these requirements into a three-pronged test, which requires a plaintiff to prove that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy

was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.,* 455 F.3d 690, 700 (6th Cir.2006). In light of the authorities cited above, the Court will apply this test to the failure to enact policies analysis.

The Plaintiff contends that "[t]he City of Southgate has admitted that there is no policy or internal review of forfeiture actions, instead the policy is leave all such decisions up to the officer in charge to interpret and apply the foreiture statute in an effort to assure 'proper seizure notification' has been followed." She appears to suggest that this admission was made in a letter authored by Lieutenant Sukel. *See* Pl. Resp. 5–6; Compl. Ex. C. However, a review of this letter does not reveal any such admission. Furthermore, the Plaintiff has not proffered any other evidence upon which to support her claim that Southgate lacked a policy to assure proper seizure notification.

Finally, the Plaintiff has failed to demonstrate that the need for such a policy was "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that [Southgate] can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To the extent that it is her position that the Defendants' reliance on facially valid forfeiture documents constitutes deliberate indifference to her constitutional rights, this claim must fail. The Plaintiff has not produced any evidence which suggests that Southgate's reliance on facially valid documents has previously resulted in a constitutionally deficient seizure. *See Kahlich,* 120 F. App'x at 585. Although she points out several alleged inconsistencies or errors that arose during the course of the forfeiture process, she is unable to support her claim that these errors are a result of Southgate's deliberate indifference to its citizens' constitutional rights. *See id.*

## IV.

For the reasons that have been set forth above, (1) the Plaintiff's motion to accept her late-filed answer (ECF No. 33) is granted; and (2) the Defendants' motion for summary judgment (ECF No. 28) is granted in part and denied in part. Specifically, the Defendants' motion is granted with respect to the Plaintiff's (1) Fourth Amendment claims against all of the Defendants; (2) Fifth Amendment claims against all of the Defendants; (3) conversion claim against all of the Defendants; (4) municipal liability claim against the City of Southgate; and (5) all of the remaining claims against the Defendants Meussner, Sukel, and Fobar. The Plaintiff's motion is denied with respect to her (1) due process claim under the Fourteenth Amendment and (2) taking clause claim under the Fifth Amendment against the Defendant Marsh.

**\*13** IT IS SO ORDERED.

Footnotes

1    The heading of this Count indicates that the Plaintiff's claim was filed against "Defendants Sukel, Walsh and Meussner." However, Walsh's name does not appear anywhere in the text of Count II or anywhere else in the complaint. Instead, the Plaintiff repeatedly refers to "Defendants Sukel, Fobar and Meussner" throughout this Count II. Inasmuch as Walsh is not a named Defendant in this lawsuit, the Court assumes that (1) his name was mistakenly identified in the heading, and (2) the Plaintiff intended the accusation in Count II to have been directed to Fobar.

2    The Court notes that, contrary to the Defendants' contentions, the warrant does not list the things to be seized. In the space for the description and location of the person or property to be searched, the warrant lists only the address of the residence. In the space for the description of the property to be seized, the warrant describes the physical characteristics of the residence (e.g., "two-story, black/grey shingled roof, white brick with white exterior siding," etc.). Thus, the Court does not understand the Defendants' claim that the warrant "expressly authorized search of the premises for certain items, including vehicle, that may have been involved in narcotics dealings." (Defs.' Mot. Summ. J. 9; *see also id.* at 1 ("The warrant was for search of the residence at 6247 Bromley Court in West Bloomfield, Michigan, for evidence relating to narcotics storage, proceeds, possession, distribution, including vehicle titles and registrations.")). While it is possible that the application for the warrant and supporting materials contained the necessary information, those items have not been proffered to the Court for its consideration. Furthermore, the warrant neither incorporated them by reference nor is there any suggestion that they accompanied it during the execution of the search warrant. *See Groh v. Ramirez,* 540 U.S. 551, 557, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) ("The fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity. The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents."). Thus, on the basis of the record before the Court, it would appear that the warrant is facially invalid.

However, the Plaintiff has not raised any argument about the validity of the warrant in the instant action—which, in any case, is focused entirely on those events that took place after the search and seizure.

---

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.